# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

326 LAND COMPANY, LLC, a Michigan
limited liability company,

      Plaintiff,

v

CITY OF TRAVERSE CITY, a Michigan
Home Rule City and SHAWN WINTER, City
Planning Director,

      Defendants.

_____/

Case No. 1:22-cv-45

Honorable

**COMPLAINT**

James F. Scales (P40639)
Ross A. Leisman (P41923)
Mika Meyers PLC
Counsel for Plaintiff
900 Monroe Avenue, NW
Grand Rapids, MI 49503
(616) 632-8000
jscales@mikameyers.com
rleisman@mikameyers.com

_____/

## NATURE OF CASE

1.    This case involves the unlawful and unconstitutional taking of private property rights from the owners of property in Traverse City, Michigan.  This lawsuit was precipitated by the issuance of a Stop Work Order by the City on November 18, 2021, suspending the ongoing construction of a residential condominium building taking place in compliance with a land use permit issued by the City itself some four months prior to that time.

2.    The financial impact of this action on the owners of this property is devastating. As of November 18, 2021, the property owners had demolished a valuable existing office

03050931 2

building, excavated for footings, entered into binding contracts and accepted deposits in an amount over $3.6 million dollars for the sale of residential condominium units in the building, and expended over $1.8 million dollars on design, demolition, and site preparation.  All of this was done in good faith reliance on a land use permit which had been issued in compliance with provisions of the Traverse City Zoning Ordinance ("TCZO") regarding the measurement of building height which had been in effect and uniformly applied for many years.

3.      These vested rights were destroyed by City officials and staff (i) contrary to policy adopted by the City Commission; (ii) unilaterally, without City staff having conducted any investigation of the Project's status, (iii) without allowing any opportunity for input by the property owner and (iv) predicated on a Circuit Court decision in a case concerning an unrelated project, in which that Court specifically stated did not apply to other projects.

4.      The illegality of this action is compounded because it was based upon the application of an unlawful City Charter Amendment adopted by the voters in 2016 (known as "Proposition 3") which deprives Plaintiff of rights guaranteed by the United States Constitution. Proposition 3 (which Michigan's Attorney General opined was invalid before it was even adopted) purports to make the construction of Plaintiff's building – which is permitted as a matter of right under the TCZO – subject to a popular election.  In that election, the voters of Traverse City can act at their absolute whim and caprice, without any assurance that, or standards to judge whether, the outcome of the vote has any relationship whatsoever to the public health, safety, and welfare.  There is no administrative remedy afforded for persons aggrieved of its application.

5.      The unconstitutional lack of a rational basis for Proposition 3 is obvious:  The Charter Amendment states that its purpose is to preserve the residential and historical character

2

of the City, by requiring a vote of the electors to approve any building over 60 feet in height. Yet a 100 foot tall building would be permitted if approved by the voters, while a 61 foot tall building on the exact same site would be prohibited if rejected by the voters.

6.      The Fourteenth Amendment protects all citizens from laws which have no relation to a proper governmental purpose, by guaranteeing due process and equal protection of laws, and the Fifth Amendment protects their property rights.   The City of Traverse City, acting under color of law violated these fundamental rights which are protected by the United States constitution.  326 Land Company brings this action to redress the City's ongoing constitutional violations and seeks declaratory and injunctive relief, along with costs, attorney fees, damages and all other appropriate relief.

## PARTIES, JURISDICTION AND VENUE

7.      Plaintiff, 326 Land Company, LLC, is a Michigan limited liability company, doing business in the City of Traverse City, Michigan ("326 Land").

8.      The Plaintiff is the owner of real property commonly known as 326 E. State Street, located within the City of Traverse City, Michigan (the "Property").

9.      Defendant, the City of Traverse City (the "City"), is incorporated as a Home Rule City under Public Act 279 of 1909.

10.      Defendant Shawn Winter is the City Planning Director, the official designated by Chapter 1322 of the City Code, to issue land use permits and revoke, suspend or issue Stop Work Orders to halt construction activities proceeding under a land use permit.

11.      Mr. Winter is the official who in this capacity issued the Stop Work Order dated November 18, 2021.

12.      This Court has original federal question jurisdiction over this action pursuant to 28 USC §1331.

3

03050931 2

13.     This Complaint raises claims for deprivation of rights secured by the United States Constitution, including the Fifth and Fourteenth Amendments thereof, which are cognizable in this Court under 42 USC §1983.

14.     This Complaint further requests declaratory relief as a result of the deprivation of Plaintiff's rights as alleged in this Complaint, pursuant to 28 USC §2201.

15.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USC §1367.  The claims under state law arise out of the same acts and conduct by Defendants that give rise to Plaintiff's federal constitutional claims.

16.     The federal claims alleged herein are not dependent on the State law claims.

17.     The Property that is the subject to this action is located in, all Defendants reside in, and all events giving rising to this action occurred within the Western District of Michigan. Venue is accordingly proper in this District and Division pursuant to 28 USC §1391(b).

## GENERAL ALLEGATIONS

### *Location and Historical Zoning Regulation of the Height of Buildings on this Property*

18.     The Property fronts upon State Street, located in downtown Traverse City.  It is immediately adjacent to the Park Place Hotel, a 142 foot tall building, and the Lofts, a building 60 feet in height measured to the deck of its flat roof, with elevator housing and mechanical equipment extending above that height.

19.     The Property is currently located in the City's C-4c. Regional Center District.

20.     The Park Place Hotel abutting the Property to the west is also located in the C-4c zoning district and the Lofts were conditionally rezoned specifically to permit a building of sixty feet in height, plus mechanical equipment.

21. From 1943 to 1999, the Property was located in a zoning district which allowed buildings up to and exceeding 100 feet in height, subject to certain objective standards pertaining to building setback and design.

22. Following a comprehensive revision of the Traverse City Zoning Ordinance ("TCZO") in 1999, a building with a height of 100 feet was still permitted on the property, but subject to special approval if the building exceeded 60 feet in height, measured as provided by the TCZO.

23. According to the TCZO, the height of building is measured as the vertical distance from the grade to the highest point on a flat roof. TCZO, Section 1320.07.

24. The building approved by the City which is the subject of this suit is designed with a flat roof, and accordingly height is measured to the highest point on the roof.

25. Since at least 1999 and still today, the TCZO has permitted an additional 15 feet above the stated maximum height for "rooftop mechanical equipment or elevator shafts . . . ." ("rooftop appendages") TCZO, Sections 1368.01 and 1346.06.a

26. Buildings up to 60 feet in height measured to the surface of a flat roof with such rooftop appendages above that have been permitted as a matter of right on the Property, without any special land use or other discretionary approval on this Property since at least the 1999 TCZO revision.

27. Following the 1999 amendments, and still today, any building exceeding 60 feet in height was designated a taller building, and a building of such additional height was permitted only with special land use approval by the City Commission on recommendation of the Planning Commission.

030509312

28.     The decision whether or not to approve a taller building is based in part upon objective standards specific to "taller buildings" set forth in Sections 1364.01(b)(13) and 1364.08(13) of the TCZO.

29.     That decision is also based on subjective discretionary standards described in Section 1364.02 of the TCZO.

30.     In reliance upon nearly 80 years of zoning regulations which allowed buildings of a height of 100 feet, beginning in 2014 the Plaintiffs began preparing to construct a 10-story 100-foot tall residential condominium building at 326 State Street.

### *The Genesis and Adoption of Proposition 3 (Despite its Rejection by the Michigan Governor and Michigan Attorney General)*

31.     The City of Traverse City is a Home Rule City and has adopted a City Charter pursuant to the Home Rule City Act ("HRA"), MCL 117.1, *et seq*.

32.     Pursuant to MCL 117.21 the City Charter may be amended by an initiatory petition by the electors.

33.     Beginning in 2016, an initiatory petition regarding building height was circulated for a ballot proposal to be presented to the City electors at the November 8, 2016 General Election.

34.     That petition was prompted by certain City residents' opposition to a "taller building" proposed to be constructed on the west side of downtown at 305 Front Street, not the Plaintiff's proposed building at 326 State Street.

35.     The petition proposed that the following be added to Section 28, Chapter IV of the City Charter:

> It is hereby declared that buildings over 60 feet in height are generally inconsistent with the residential and historical character of Traverse City. Therefore, any proposal for construction of a building with a height above

6

03050931 2

60 feet, shall not be approved by the City or City Commission, until after
the proposal is submitted to and approved by a majority of the City electors
at a regular election or at a special election.

36.     The proposal, as eventually placed on the ballot, was and is generally referred to

as "Proposition 3," and will be so identified in this Complaint.

37.     Pursuant to MCL 117.21(2) and MCL 117.22, proposed city charter amendments

are to be submitted to the office of the Michigan Attorney General and the Governor before

submission to the voters at an election. In practice, the Attorney General reviews the language

for the Governor.

38.     In a letter dated April 28, 2016, the Attorney General, on behalf of the Governor,

objected to and rejected the proposed Proposition 3 language because it conflicted with state law.

The Attorney General opined that Proposition 3 conflicted with the Michigan Zoning Enabling

Act ("MZEA"), which authorizes the City Commission – not the City electors - to make special

land use and other zoning decisions (MCL 125.3502(1)), and further conflicted with the HRA

which prohibits a charter provision from conflicting with state law, i.e., the MZEA.   MCL

117.36.

39.     The Attorney General further refused to give approval for Proposition 3 because

the language of the proposed amendment failed to disclose that it conflicts with the MZEA. A

copy of the Attorney General and Governor's letters are attached as Exhibits A and B.

40.     Notwithstanding the Attorney General's and the Governor's corresponding

rejection of the proposed language, the proposition was submitted to the City electors as

mandated by MCL 117.22.

41.     At the November 8, 2016 General Election, Proposition 3 was approved by a

majority of those voting.

7

03050931 2

### *The City Commission Policy Implementing Proposition 3*

42.     On April 24, 2017, the City Commission formally adopted an "Implementation Policy for Charter §28 Building Height Restriction" (the "Proposition 3 Implementation Policy"), attached as Exhibit C, which implemented the voter election requirement of Proposition 3 for buildings over 60 feet in height.   The stated purpose of the policy was "to ensure consistency and predictability in the administration of approvals related to building height as required by" Proposition 3.

43.     Section 3.c. of the Proposition 3 Implementation Policy provided that an election would be required only if the building proposed required special land use or planned unit development approval under the TCZO.

44.     In the case of a taller building requiring special land use approval, Section 3.c.i. provided that the election required by Proposition 3 would occur after the Planning Commission's public hearing and recommendation, but before the City Commission's public hearing and consideration of approval or denial.

45.     Section 3.a. of the Proposition 3 Implementation Policy provides the following method of measuring building height to determine if Proposition 3 is applicable:

> Measurement: For purposes of determining whether the Charter provision is triggered by a proposed building with a height above 60 feet, the methods of measuring building height contained in the Traverse City TCZO shall be applied. [Emphasis added]

46.     According to the Proposition 3 Implementation Policy, a building located in the City's C-4c. Regional Center District with a flat roof at a height of 60 feet, with rooftop appurtenances extending above that, would not be subject to an election pursuant to Proposition 3.

03050931 2

### *The Plaintiff's First Lawsuit to Challenge Proposition 3*

47.     At the time Proposition 3 was adopted, Plaintiff had already worked for several years and expended significant amounts of money for design and preparation for its 10-story building proposal for the 326 State Street property under the special land use standards in the TCZO.

48.     Because Proposition 3 would have a direct impact on the Plaintiff's proposed building project, on January 5, 2017, the Plaintiff filed a Complaint For Declaratory Ruling and Order for Superintending Control in Grand Traverse County Circuit Court, challenging the legality of Proposition 3.

49.     On August 3, 2017, the Circuit Court issued an Order dismissing the Plaintiff's Complaint as not ripe for review without prejudice, requiring the Plaintiff to first seek voter approval under Proposition 3.

50.     The Plaintiff appealed that decision to the Michigan Court of Appeals, and on September 27, 2017, that Court issued an unpublished per curiam Opinion that affirmed the Circuit Court's decision that the prior Plaintiff's Complaint was not ripe before submitting its 10-story building to the voters for approval under Proposition 3.

### *The City Planning Staff and City Planning Commission Recommend Approval of 326 Land's 10-Story Structure*

51.     Following the Court proceedings described immediately above, the Plaintiff continued its effort to obtain approval of its 10-story project by following the Proposition 3 Implementation Policy which required a Planning Commission public hearing and recommendation before the 10-story building would be submitted to the voters under Proposition 3.

52.     Under Chapter 1364 of the City's Code, the City Planning Commission is responsible for issuing a recommendation in favor of or against approval of a special land use permit for a building over 60 feet in height.

53.     On October 3, 2017, following public hearing, the City Planning Commission recommended approval of the Plaintiff's 10-story project.

### The Voters Did Not Approve Plaintiff's 10-Story Building Proposal

54.     Following the Planning Commission's recommendation for approval, and as required by the Proposition 3 Implementation Policy, the Plaintiff requested that its proposal for a 10-story building to be located at 326 State Street go before the Traverse City voters for approval at the November 6, 2018 regular election.

55.     At the November 6, 2018 regular election, the City voters did not approve the building with 4,977 "No" votes opposed to 3,242 "Yes" votes in favor.

### The Plaintiff's Second Circuit Court Lawsuit

56.     When the City voters did not approve the 10-story building, the issue of the validity of Proposition 3 under State law became ripe and Plaintiff filed a lawsuit in the Circuit Court on December 12, 2018.   That lawsuit sought an Order declaring that a special land use application for a building exceeding 60 feet in height was to be decided solely by the City Commission, as provided by the MZEA.

57.     In response to several competing motions for summary disposition, the Circuit Judge dismissed the Plaintiff's Lawsuit, holding that an approving vote under Proposition 3 was required before the City Council could consider special land use approval for a building exceeding 60 feet in height.

10

03050931 2

***The Plaintiff Made Significant Physical Improvements to the Site and Substantial
Expenditures in Reliance on the Proposition 3 Implementation Policy***

58.     Thereafter, Plaintiff made a decision to design and construct a five-story building
which would not require special land use approval.

59.     In reliance upon the Proposition 3 Implementation Policy, in reliance upon the
foregoing sections of the TCZO, and in reliance upon the widespread adopted City policy of
measuring building height in such a manner to allow rooftop appendages above the maximum
stated height, the Plaintiff proceeded to design a five-story building known as Peninsula Place
with a flat roof at a height of not more than 60 feet, which included rooftop appendages above 60
feet on top of the fifth story.

60.     These rooftop appendages included two stairway exit enclosures leading to a patio
on the roof, an enclosed structure housing elevator machinery, and an enclosure for mechanical
and electrical equipment.

61.     The rooftop appendages described in the previous allegation occupy an area of
approximately 489 square feet of the approximately 17,807 square feet of the total rooftop area,
or less than 2.75% of the rooftop area.

62.     The placement of the rooftop appendages above a height of 60 feet pursuant to the
Proposition 3 Implementation Policy allowed a building with a flat roof at 60 feet in height
above grade, thus permitting the building to contain five stories, including four stories for
residential condominium units above ground level parking.

63.     If the rooftop appendages were not allowed above a height of 60 feet, it would
result in the loss of one of the four residential floors from the building which was approved by
the July LUP.

03050931 2

64.    The Plaintiff had already relied on the rooftop appendages placement above a height of 60 feet in 2017 when it entered into a contract with a neighboring property to the immediate east (where the five-story Lofts apartment building was ultimately constructed) to extend its foundation 25 feet onto the Plaintiff's property and where a larger foundation was constructed to support both the Plaintiff's proposed building and the neighboring building.

65.    The Plaintiff relied on the rooftop appendages placement above 60 feet when it designed the five-story building, paying its architects Alexander V. Bogaerts & Associates $460,882.50 between November 2020 and September 2021.

66.    The Plaintiff relied on the rooftop appendages placement above 60 feet by paying engineering and structural costs in the amount of $104,360.07 between February 2021 and November 1, 2021.

67.    In July 2020 Plaintiff put the project out for bid by three competing construction contractors and awarded the bid to REI Construction Consultants in October 2020.

68.    The Plaintiff relied on the rooftop appendages placement above 60 feet when it paid its construction contractor $518,855.04 between April 2021 and November 18, 2021.

69.    The Plaintiff relied on the rooftop appendages placement above 60 feet when it paid down a building loan in the amount of $518,855.04 to its lender TCF National Bank on May 25, 2021, in order to obtain a consent needed to commence construction.

70.    The Plaintiff relied on the rooftop appendages placement above 60 feet when it paid $240,926.84 for other costs related to the project.

***The Plaintiff Relied to its Detriment on the Rooftop Appendages Placement above the Fifth Story when it Entered into Purchase Contracts with Owners of Condominium Units in the Project Building***

71.    The Plaintiff's Building Project consists of 42 individual residential condominium units within the five-story building.

12

72.     If the rooftop appendages were not allowed above a height of 60 feet, it would effectively reduce the building from four to three stories for residential condominium units.

73.     Due to the view of Grand Traverse Bay from the upper floors of Peninsula Place, the units on those floors could be sold for an estimated 50% to 300% more than comparable units on the second and third floors.

74.     The Plaintiff has financed the initial design and construction of the Project building by requiring the buyers of the residential condominium units to provide deposits over the construction period as part of the buyers' purchase contracts.

75.     By December 13, 2021, the Plaintiff had entered into building contracts to sell 21 condominium units, with a total purchase price of over $9.7 million.

76.     By November 18, 2021, Plaintiff had received deposits from these purchasers in the amount of $3,649,037.60.

77.     The Plaintiff has already utilized these deposits to fund over $1.8 million of costs to demolish an existing structure, perform site preparation work, design and construct the building project with respect to the costs and expenses identified in this Complaint.

### *The Plaintiff Initiates Construction of its Project Building*

78.     On July 20, 2021 the Plaintiff obtained Land Use Permit PLU21-0112 ("July LUP") which was based upon the City's review of a detailed set of site plans and architectural drawings with a revised date as late July 2, 2021 identified as "Project No. 2015-113" prepared by Alexander V. Bogaerts + Associates, P.C. ("Project Drawings").

79.     The project architects were in regular contact with City planning and building staff during the entire design process to assure that the Peninsula Place building, as designed, would comply with the TCZO and Proposition 3 Implementation Policy and would not trigger the requirements of a vote under Proposition 3.

13

80.     The Project Drawings showed a five-story building with a height of 60 feet with several appendages on the roof top - such as mechanical equipment, elevator shafts, and stairway exits - exceeding 60 feet.

81.     The Project Drawings reflected the Plaintiff's reliance on the rooftop appendages placement above 60 feet.

82.     The Plaintiff's property at 326 State Street had been occupied by the law office of Running, Wise & Ford, PLC ("RWF") for over 60 years. Two of the three principals of the Plaintiff are members of the RWF law firm and were the owners of the company which owned the former law office building property.

83.     The law office building had a floor area of 5,120 square feet and was rated as 100% functional by the City's assessment records.  According to the assessment records, the building and land improvements were valued at approximately $350,000, not including land value.

84.     The Plaintiff relied on the July LUP allowing rooftop appendages to extend above 60 feet (and therefore allowing a five-story residential building) when it abated asbestos and tore down this valuable building on August 2, 2021 at a cost of approximately $120,000, and moved the law office tenant to a new location.

85.     The Plaintiff relied on the rooftop appendages placement above 60 feet and the July LUP when it contracted with the firm of REI Construction Consultants to construct the foundation of the Project Building.

86.     As of November 3, 2021 the Plaintiff had made non-refundable payments in the amount of $478,759 to its construction contractor for demolition, excavation, and other physical changes which had been made to the site.

14

87.     The Plaintiff incurred $49,511.00 in building permit fees for permits issued by the City pursuant to the July LUP.

88.     Prior to November 18, 2021, the site was measured and excavated specifically in preparation for installation of auger cast piles to provide a structural foundation designed for the five-story building.

### *Height Order Resulting from Other Lawsuit*

89.     While Plaintiff's Project was proceeding, Innovo TC Hall, LLC ("Innovo") applied for a land use permit to construct a five-story building in northwest downtown Traverse City.  The height of the Innovo building was subject to provisions of the TCZO which allowed rooftop appendages above the maximum height of 60 feet in the zoning district in which that building was located.

90.     Save Our Downtown ("SOD"), a public advocacy group that had originally supported Proposition 3, filed a lawsuit in the Grand Traverse County Circuit Court to prevent final zoning approval from being granted to Innovo's building ("Innovo Lawsuit").

91.     That lawsuit did not name 326 Land as a party, nor challenge 326 Land's project or permits.

92.     SOD claimed that allowing rooftop appendages above a height of 60 feet without a vote of the City electors violated Proposition 3's 60-foot height limitation.

93.     Following a hearing on November 10, 2021, the Circuit Court entered a Judgment Order dated November 18, 2021, which held that the rooftop appendages on Innovo's building were to be included in measuring building height for purposes of Proposition 3.

94.     According to the transcript of the hearing on November 10, 2021, (pages 74-75) the Judge issued the following ruling regarding other projects:

03050931 2

> Well, I guess it's alleged that there was -- could have been others -- specifically 4front, that were approved in violation of the 60-foot limit -- now, one of the things requested in the complaint is directing the City to <u>reverse any prior grant of approval and/or permit for construction of a building in excess of 60 feet</u>. <u>To the extent we're talking about anybody else's building, those people have not been part of this case and I don't think we can grant -- there's lots of reasons to -- because, like, for example, the building's already built;</u> that that might not be proper, but <u>we can't do that without them being part of the case</u>. Add an injunction prohibiting the City from approving buildings in excess of 60 feet without a vote of the public -- I'll grant that. [Emphases added]

95.     The Circuit Court's ruling applied prospectively to new projects, but it did not apply to prior grants of approval or permits for construction of buildings of 60 feet in height as measured under the terms of the Proposition 3 Implementation Policy.

### *Stop Work Order Issued Against the Plaintiff's Building Project*

96.     On November 18, 2021, the same day that the Judgment Order was issued from the Innovo lawsuit, the City's Planning Director, citing the Innovo Judgment Order, issued to the Plaintiff a letter ("Stop Work Order") stating in part:

> This letter is to inform you the approved residential development located at 326 E. State St. is no longer allowed to proceed as permitted. . .
>
> The building in your development does in fact include such items that exceed a height of 60 feet and has not been approved by a vote of the electorate. Therefore, the structural and foundation work approved under Land use Permit PLU21-0112 is no longer valid and all associated work under that permit must cease and desist immediately.

(Exhibit D).

97.     Prior to the issuance of the Stop Work Order, no City official contacted the Plaintiff and/or its representatives to make any inquiry into the facts alleged above with respect to the Plaintiff's Project and with respect to the Plaintiff's expenditures made, and physical construction performed in reliance upon the July LUP, the Proposition 3 Implementation Policy, the foregoing TCZO provisions cross-referenced by the Proposition 3 Implementation Policy,

03050931 2

and the City's long-standing zoning practice of allowing rooftop appendages to extend above the standard height limitation (60 feet or otherwise).

98.     The City's Stop Work Order did not comply with the Circuit Court's directives in the Innovo Lawsuit, that it did not apply to any permit already issued.

### *The Plaintiff's Efforts to Mitigate its Damages*

99.     Because of a pre-existing arrangement with a specialized foundation contractor, and other immediate commitments made prior to the Stop Work Order, 326 Land did submit an alternate plan drawing for the Project and received LUP PLU21-0173 on November 29, 2021.

100.     The plans for the building submitted after the Stop Work Order were modified on an emergency basis to receive alternate land use approval to allow construction to continue while making efforts to have the Stop Work Order rescinded.

101.     These actions were taken by Plaintiff only to mitigate the Plaintiff's damages associated with the Stop Work Order so that the construction work by contractors on site at that time could continue.

102.     The building depicted on that substitute plan is not economically feasible and differs from the building in which condominium units have already been sold.

### COUNT I

### *Destruction of Vested Rights without Due Process or Compensation:*
### *5th Amendment and 14th Amendment, Section 1 of U.S. Constitution; 42 USC §1983*

103.     326 Land hereby incorporates by reference all foregoing allegations of this Complaint.

104.     The due process clause of the 14th Amendment of the United States Constitution provides that no person shall be deprived of property without the due process of law.

03050931 2

105.    Without regard to the validity of Proposition 3, or the Circuit Court decision in the *Innovo* case, 326 Land justifiably relied in good faith on the TCZO, the Proposition 3 Implementation Policy and the July LUP issued by the City, which permitted a building with rooftop appendages placement above 60 feet in height.

106.    As alleged above, 326 Land undertook demolition and construction, made expenditures, and entered into contracts with contractors and condominium owners in good faith reliance on the TCZO pertaining to measurement of building height, the Proposition 3 Implementation Policy, and the July LUP.

107.    326 Land thereby acquired a vested and protected property interest in constructing the building as proposed, including rooftop appendages above a height of 60 feet.

108.    The City is estopped from issuing the Stop Work Order for construction as approved by the July LUP.

109.    The due process clause of the 14th Amendment protects against the deprivation of a property interest without notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

110.    The July LUP was revoked without prior notice or opportunity for 326 Land to present the reasons why it had acquired protected property interests in reliance on the July LUP.

111.    Because Proposition 3 is not part of the TCZO or building codes, there is no provision made for appeal to the Zoning Board of Appeals, Construction Board of Appeals, or other *quasi-judicial* administrative body.

112.    The City Planning Director, Shawn Winter, was acting under color of law according to authority granted to the Planning Director by Chapter 1322 of the TCZO.

03050931 2

113.    The City of Traverse City is acting under color of law by virtue of its authorization to adopt and enforce its TCZO pursuant to the Michigan Zoning Enabling Act, and the Charter amendment approved by its citizens.

114.    The City of Traverse City and its Planning Director are each "persons" within the meaning of 42 USC §1983.

115.    The City Planning Director violated 326 Land's right to procedural due process.

116.    The Fifth Amendment protects against the deprivation of property without compensation.

117.    The revocation of the July LUP deprives 326 Land of these valuable vested rights, without payment of just compensation.

118.    This violation of the due process clause of the 14th Amendment and just compensation clause of the 5th Amendment are actionable under 42 USC §1983.

119.    326 Land is entitled to declaratory and injunctive relief, damages, costs and attorney fees as provided by 42 USC 1988(b) and all other appropriate relief.

## COUNT II

***Substantive Due Process – Deprivation of Property Rights by Procedure not Related to Public Health, Safety and Welfare***

120.    326 Land hereby incorporates by reference all foregoing allegations of this Complaint.

121.    The due process clause of the 14th Amendment protects against the deprivation of a property interest by an action under color of state law which has no rational basis in the promotion of the public health, safety and welfare, or which advances such an interest but in a manner which is unreasonable.

03050931 2

122.    As previously alleged, the TCZO permits, by right in this zoning district, construction of a building as proposed by 326 Land and approved by the July LUP which has a height of 60 feet, not including rooftop appendages which may extend 15 feet above that elevation.

123.    The right to construct such a building is a property interest protected by the due process clause.

124.    Proposition 3 was adopted under color of state law pursuant to the procedures of Michigan's Home Rule Cities Act with the approval of the voters of the City of Traverse City.

125.    The effect of Proposition 3 is that a building of a height which is otherwise permitted by right by the TCZO without special land use approval will nevertheless be prohibited if not approved by the voters, who are free to vote for or against such a proposal for any reason whatsoever and are in no way bound to exercise their vote in a manner which bears a rational relationship to the public health, safety and welfare.

126.    The facial irrationality of Proposition 3 is demonstrated by the fact that a 100 foot tall building might be permitted if approved by the voters, while a 61 foot tall building on the exact same site would be prohibited if rejected by the voters.

127.    Requiring that a building which is otherwise permitted by right by the TCZO to be subject to approval at the whim and caprice of the electors is *per se* a violation of 326 Land's substantive and procedural due process rights.

128.    Proposition 3 violates substantive due process as applied to Plaintiff's building in consideration of the minimal extent of the structures extending above the flat roof.

129.    This violation of the due process clause is actionable under 42 USC §1983.

03050931 2

130.   326 Land is entitled to declaratory and injunctive relief, costs and attorney fees as allowed by 42 USC §1988(b) and all other appropriate relief.

## COUNT III

### *Violation of Equal Protection -- No Rational Basis for Disparate Treatment*
### *42 USC §1983; Mich. Const. 1963 Art I, §2*

131.   326 Land hereby incorporates by reference all foregoing allegations of this Complaint.

132.   The equal protection clause of the 14th Amendment of the United States Constitution provides that no person shall be deprived of the equal protection of the laws.

133.   The equal protection clause of the United States Constitution protects persons similarly situated from differential treatment by the government that has no rational basis.

134.   There are already existing in Traverse City buildings, including the adjacent Park Place Hotel, Munson Hospital and Riverview Terrace, which exceed 100 feet in height, and which have not been subject to Proposition 3.

135.   In addition to these buildings, upon information and belief, there already exist in Traverse City other buildings in the same or other zoning districts which exceed 60 feet in height, including rooftop appendages at a level above 60 feet, and which have not been subject to Proposition 3.

136.   326 Land has been denied the right to construct a building of a height identical to or less than those existing in the City of Traverse City, unless approved by an election held pursuant to Proposition 3.

137.   The effect of Proposition 3 is that identical proposed buildings exceeding 60 feet in height might be approved or disapproved depending upon the results of a popular election.

03050931 2

138.     Basing disparate treatment of identical or nearly identical buildings on the results of an election does not satisfy the equal protection requirement of a rational basis for distinguishing between similarly situated persons or properties.

139.     This violation of the equal protection clause is actionable under 42 USC §1983.

140.     326 Land is entitled to declaratory and injunctive relief, costs and attorney fees as provided by 42 USC §1988(b) and all other appropriate relief.

## COUNT IV

### *Due Process – Deprivation of Property Rights by Unauthorized Revocation of July Land Use Permit*

141.     326 Land hereby incorporates by reference all foregoing allegations of this Complaint.

142.     The due process clause of the 14th Amendment protects citizens against the deprivation of a property interest by an action taken under color of state law that is unauthorized by law.

143.     On April 24, 2017, the Traverse City Commission adopted the Proposition 3 Implementation Policy by formal vote.

144.     The Proposition 3 Implementation Policy has not been revoked or amended by the City Commission.

145.     Proposition 3 did not specify the manner in which building height is to be measured for purposes of subjecting a building to a vote, so the Proposition 3 Implementation Policy directed that the height of buildings for purposes of Proposition 3 was to be measured as provided by the TCZO.

146.     The Planning Director is bound to follow the Proposition 3 Implementation Policy.

147.    The July LUP for the 326 Building was issued in compliance with the Proposition 3 Implementation Policy.

148.    The Proposition 3 Implementation Policy does not authorize revocation of a land use permit issued in accordance with the Policy.

149.    As previously alleged, in his decision in the *Innovo* case Judge Power specifically declined to make his injunction applicable to existing buildings or approvals.

150.    The Planning Director's Stop Work Order was accordingly illegal and unauthorized.

151.    This unauthorized and illegal revocation in violation of the due process clause of the 14th Amendment and is actionable under 42 USC §1983.

152.    326 Land is entitled to declaratory and injunctive relief, costs and attorney fees as allowed by 42 USC §1988(b) and all other appropriate relief.

### COUNT V

*Violation of Due process rights by Enforcement of Charter Provision which is Invalid under State Law*

153.    326 Land hereby incorporates by reference all foregoing allegations of this Complaint.

154.    Proposition 3, as applied by the City to the building proposed by 326 Land, has the effect of nullifying the provisions of the TCZO which permits such a building as a matter of right, without the need for special land use or other approval.

155.    The City of Traverse City is a creation of State law incorporated under the Home Rule City Act ("HRA").   According to Section 36 of the HRA:  "No provision of any City charter shall conflict with or contravene the provisions of any general law of the State."  MCL 117.36.

156.    Section 4.i(c) of the HRA provides the City the authority to adopt the TCZO, regulating the height and other characteristics of structures.  MCL 117.4i(c).

157.    The City lacks authority to regulate the height of structures through a means other than adoption and enforcement of the TCZO.

158.    Proposition 3 as applied to a building permitted by right without special land use approval is unlawful and invalid because it is contrary to State law.

159.    Proposition 3 was adopted and is being enforced under color of law.

160.    The action of the City and its Planning Director in revoking the July LUP in reliance on this invalid Charter provision is a violation of 326 Land's constitutional due process rights.

161.    326 Land is entitled to declaratory and injunctive relief, costs and attorney fees as provided by 42 USC §1988(b) and all other appropriate relief.

### COUNT VI

*Taking of Property in Violation of the 5th Amendment to the United States Constitution*

162.    326 Land hereby incorporates by reference all foregoing allegations of this Complaint.

163.    A building with a flat roof surface height of approximately 60 feet, with an additional allowance of 15 feet above that for rooftop appurtenances, could include four residential stories, plus heating, ventilation, air conditioning and other equipment which is customarily mounted on the roofs of such buildings.

164.    If Plaintiff is prohibited from installing on its building any structure housing, elevator equipment, stairways, HVAC equipment or similar necessary appurtenances above an elevation of 60 feet, this will require re-design of the building to include only three residential stories.

03050931 2

165.    As applied to the 326 Land building, this would result in the loss of ten condominium units on the top floor of the building, which are estimated to have a total sales price for those ten units in excess of $11 million.  Net of construction costs for that top story, this would result in damages in excess of $7 million.

166.    In addition, a building re-designed to comply with the TCZO and Charter, as now interpreted by the City, would be substantially different from the building for which purchase reservations and deposits were received, potentially allowing those purchasers to seek to revoke their purchase agreements, causing further financial loss.

167.    As applied to 326 Land, the application of Proposition 3 deprives 326 Land of any reasonable investment-backed expectation for use of its property.

168.    As a result of that deprivation, 326 Land has suffered damages in an amount of $7 million or more.

## RELIEF REQUESTED

THEREFORE, 326 Land Company, LLC respectfully requests this Court order and award of the following relief:

A.    A declaration that the expenditures and actions taken by 326 Land in good faith in reliance on the July LUP conferred upon it vested rights which entitle it to complete its building in accordance with the plans approved by the July LUP.

B.    A declaration that the City Planning Director revoked the July LUP without legal authorization to do so, in violation of the due process and vested property rights of 326 Land.

C.    An injunction ordering the Traverse City Planning Director to vacate the Stop Work Order and permit the construction of the building in accordance with the plans for which the July LUP had been issued.

03050931 2

D.     A declaration that Proposition 3 unconstitutionally deprives 326 Land of its property rights without due process of law, and is invalid and unenforceable.

E.     A declaration that Proposition 3 unconstitutionally deprives 326 Land of its right to equal protection of the laws, and is invalid and unenforceable.

F.     Damages for the unconstitutional taking of its property.

G.     Costs and attorney fees as provided by 42 USC §1988(b).

Respectfully submitted,

MIKA MEYERS PLC
Counsel for Plaintiff

Dated: January 18, 2022          By: _____

James F. Scales (P40639)
Ross A. Leisman (P41923)
900 Monroe Avenue, NW
Grand Rapids, MI 49503

26

03050931 2