UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| 326 LAND COMPANY, LLC, ) | |
| Plaintiff, ) | |
| ) | No. 1:22-cv-45 |
| -v- ) | |
| ) | Honorable Paul L. Maloney |
| CITY OF TRAVERSE CITY and ) | |
| SHAWN WINTER, ) | |
| Defendants. ) | |

## OPINION AND ORDER DENYING MOTION TO INTERVENE

In July 2021, 326 Land Company obtained a land use permit from Traverse City for the construction of a five-floor residential condominium building. The architecture drawings showed that the building would be 60 feet high, not including appendages on the roof. On November 18, 2021, the City issued a stop work order that halted the construction project. Plaintiff filed this lawsuit. Plaintiff raises two sets of claims. One group of claims arise from the permit. A second group of claims arise from an amendment to the City Charter ("Proposition 3"), which requires a majority of electors to approve the construction of any building over 60 feet in height before the City can approve the construction plan. The dispute turns, in large part, on whether the appendages on the roof should be counted as part of the height of the building.

Albert Quick and Save Our Downtown (SOD) filed a motion to intervene. (ECF No. 10.) Plaintiff opposes the motion. (ECF No. 14.) The City does not oppose the motion. (ECF No. 13.) The Court concludes the proposed intervenors do not have any legal interest in the pending lawsuit and will deny the motion.

Relevant to this lawsuit, the Court briefly mentions other lawsuits arising from Proposition 3. At least two lawsuits have been filed in the state courts. Following the enactment of Proposition 3, 326 Land Company filed a lawsuit against Traverse City seeking to invalidate the ordinance. *See 326 Land Co. v. City of Traverse City*, No. 339755, 2018 WL 4653932 (Mich. Ct. App. Sept. 27, 2018). SOD sought to intervene and the trial court granted the motion. *Id.* at *1. The trial court later dismissed the lawsuit for lack of ripeness. *Id.* at *2. SOD and Quick filed the second lawsuit against Traverse City after the City issued a construction permit to Innovo TC Hall. *See Save Our Downtown v. Traverse City*, No. 359536 (Mich. Ct. App. 2021). From what the Court gathers, Innovo's proposed building would have been 60 feet tall, not including an elevator shaft that protruded from the roof. The trial court allowed Innovo to intervene. Around November 10, 2021, the trial court ruled in favor of SOD and issued an injunction that prohibited the City from issuing permits for buildings over 60 feet in height, including appendages on the roof. Plaintiff here claims that the injunction did not apply to "projects which were underway." (ECF No. 14 at 3 PageID.235.) The City and Innovo filed an appeal, which remains pending.

I.

A.

Rule 24 of the Federal Rules of Civil Procedure governs intervention. The rule provides for intervention of right and permissive intervention. For intervention of right, the intervenor must

> claim an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter

       impair or impeded the movant's ability to protect its interest, unless existing parties adequately protect that interest.

Fed. R. Civ. P. 24(a)(2). In this circuit, courts require proposed intervenors seeking to intervene by right to meet four criteria or elements: (1) file a timely motion; (2) demonstrate a substantial legal interest in the subject matter of the case; (3) show that their ability to protect that interest may be impaired without intervention; and (4) prove that the parties already involved in the lawsuit may not adequately represent that interest. *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005). In this circuit, courts use an "expansive notion of the interest sufficient to invoke intervention of right" and the proposed intervenor "need not have the same standing necessary to initiate a lawsuit in order to intervene. . . ." *Id.* (citations omitted). The "failure to meet one of the criteria will require that the motion to intervene be denied." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005) (citation omitted).

      Quick contends he "is a resident and elector" and he "has a significant interest in protecting his right to vote on matters that impact the community in which he lives." (ECF No. 10 Mot. at 2 PageID.110 ¶ 4.) SOD describes itself as a nonprofit corporation "composed mainly of citizens of Traverse City who petitioned, raised funds, campaigned for, and/or helped adopt a Charter Amendment known as "Proposition 3, . . . ." (*Id.* ¶ 2.) Proposed intervenors argue they meet the standard for intervention of right "because they have a legitimate interest in the validation of the Charter Amendment." (*Id.* PageID.112 ¶ 11.)

The Court focuses on the second criteria, the proposed intervenors' legal interest in the dispute. Three Sixth Circuit opinions provide guidance for resolution of the nature of the proposed intervenors' legal interest. *See Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007); *Providence Baptist Church*, 425 F.3d 309; *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997).

In *Miller*, the plaintiffs sued the Michigan Secretary of State seeking an injunction against the enforcement of a provision of the Michigan Campaign Finance Act that required unions, at least once a year, to obtain consent from members utilizing automatic payroll deductions to make contributions to their union for political purposes. The Michigan Chamber of Commerce sought to intervene and the district court denied the motion. On appeal, the circuit court reversed. *Miller*, 103 F.3d at 1243. The Sixth Circuit identified four factors that weighed in favor of finding that the Chamber of Commerce had a substantial legal interest in the dispute sufficient to require intervention of right:

> the Chamber was (1) a vital participant in the political process that resulted in legislative adoption of the 1994 Amendments in the first place, (2) a repeat player in Campaign Finance Act litigation, (3) a significant party which is adverse to the challenging union in the political process surrounding Michigan state government's regulation of practical campaign financing, and (4) an entity also regulated by at least three of the four statutory provisions challenged by plaintiffs.

*Id.* at 1247.

In *Providence Baptist Church*, the circuit court reached a different conclusion concerning the appeal of the denial of a motion to intervene. Providence Baptist Church outgrew its location after more than fifty years and it sought to purchase approximately 70 acres of land on which to relocate. The Church intended to divide the property in order to

construct a worship facility and also to create a single-family home development, homes that would be offered for sale to its members and the public. Before purchasing the property, the Church petitioned the City of Euclid for rezoning. The City passed ordinances that would have allowed the Church to accomplish its goals. The Church then purchased the property. Soon thereafter, the City received petitions to place the new ordinances on the ballot of the upcoming general election. The voters rejected the ordinances, the ordinances did not become effective and the Church could not use its new property as it intended.

The Church filed its lawsuit after it purchased the property and after the petitions were filed with the City. Before the general election, the Hillandale Committee filed its motion to intervene. As the grounds for intervention, the Committee identified "its interest in opposing the rezoning, and that the right of the voters to vote on the ordinances in the November 2, 2004 election, could be threatened or nullified by a proposed settlement between Euclid and Providence." *Providence Baptist Church*, 425 F.3d at 312. The district court denied the motion and, following the election, the parties reached a settlement in which they agreed that the City's zoning code, as applied to the Church, was unconstitutional.

The Committee appealed and the Sixth Circuit focused on whether the Committee had a significant legal interest in the dispute. The court denied the appeal, holding that "any interest [the Committee] had in this case sufficient to permit intervention ended when the election took place on November 2, 2004." *Id.* at 316-17. Any interest the Committee might have in the negotiated settlement was "so generalized it will not support a claim for intervention of right." *Id.* at 317 (quoting *Athens Lumber Co., Inc. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982)).

Finally, in *Northland Family Planning Clinic*, the Sixth Circuit continued to limit the holding in *Miller*. Following a citizen initiative petition, the Michigan Legislature enacted the Legal Birth Definition Act, which prohibited partial-birth abortions by creating a protected legal status for partially-delivered fetuses. Several doctors and health care facilities sued the Michigan Attorney General. STTOP, the acronym for Standing Together to Oppose Partial-Birth-Abortion, filed a motion to intervene. STTOP was the committee created by Right to Life of Michigan and was formed to promote passage of the Act. The district court denied the motion.

STTOP filed an appeal, which the Sixth Circuit denied. Because it considered STTOP a public interest group, the court looked to the four factors outlined in *Miller*. *Northland Family Planning Clinic*, 487 F.3d at 344. The court concluded that, at best, two of the four factors weighed in STTOP's favor. STTOP was not a repeat player in the statutory provisions in dispute and was not regulated by the challenged statutory provisions. *Id.* at 344-45. The court found the fourth factor, whether the proposed intervenor was subject to the challenged regulatory provisions, to be "particularly significant." *Id.* at 345.

The court elaborated on the nature of STTOP's legal interest in the dispute as a public interest group. The court held that as a public interest group, "STTOP was created and continues to exist for the purpose of passing and upholding the Act, its legal interest can be said to be limited to the passage of the Act rather than the state's subsequent implementation and enforcement of it." *Id.* A group's interest in the general enforceability of a statute is not "cognizable as a substantial legal interest sufficient to require intervention

of right." *Id.* at 346. The court reasoned that without this sort of limit, "Rule 24 would be abused as a mechanism for the over-politicization of the judicial process." *Id.*

Proposed intervenors have not identified any legal interest, let alone a significant one, in the construction permit issued by the City to Plaintiff in July 2021. Nor have Quick or SOD established that they participated in the permitting process to oppose this construction permit.

Quick and SOD rely on their interest in Proposition 3 as the basis for intervention. The Court finds the proposed intervenors more similar to the Hillandale Committee and to STTOP than to the Chamber of Commerce. The Court separately considers the two proposed intervenors. Quick has neither alleged nor established that he was involved in the passage of Proposition 3. Quick has neither alleged nor established that he is subject to the requirements of Proposition 3 as a land developer. Based on the assertions in the motion to intervene, Quick's interest in this dispute cannot be distinguished from the interest of any other person who could cast a ballot based on Proposition 3. Quick's general interest does not provide a sufficient basis for intervention of right under *Miller*, *Providence Baptist Hospital*, and *Northland Family Planning Clinic*.

SOD's legal interest is a closer call. SOD does allege that it was involved in the effort to enact Proposition 3. SOD has participated in prior lawsuits concerning Proposition 3, making it a repeat player. And, SOD contends they are adverse to both 326 Land Company and to the City. But, SOD has not alleged that it owns or develops land and it is not subject to the requirements of Proposition 3. As the Court interprets *Northland Family Planning Clinic* SOD's legal interest is too general for it to intervene of right. *See, e.g., Coalition to*

*Defend Affirmative Action v. Granholm*, 501 F.3d 775, 780-81 (6th Cir. 2007) (involving the denial of motions to intervene by two groups that were "substantially involved" in the passage of the disputed amendment because the holding in *Northland Family Planning* "is directly on point and controls our disposition."). SOD's legal interest in Proposition 3 ended when the ordinance passed. That Proposition 3 functions as a process or procedure permitting citizens to vote on zoning questions does not alter the conclusion. *See, e.g., id.* at 782 ("Thus, the MCRI's and ACFR's cognizable legal interests extend only to suits challenging the legislative process by why Proposal 21 was approved.").

Accordingly, the Court concludes neither Quick nor SOD may intervene of right.

B.

Rule 24 also provides for permissive intervention when a court finds that the person "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). If the proposed intervenor has a claim or defendant that shares a common question of law or fact with the on-going litigation, the court must consider whether permitting intervention would "unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(3).

The proposed intervenors do not separately describe their interest in this lawsuit when addressing permissive intervention. For permissive intervention, the proposed intervenors argue they "are the only parties who will fairly and zealously represent the city voters' interests." (ECF No. 10 at 4 PageID.112 ¶ 13.)

Proposed intervenors filed their proposed answer to the complaint, along with affirmative defenses. (ECF No. ECF No. 11-1 PageID.160-218.) The Court has quickly

reviewed the fifty-plus pages of the proposed pleading and compared it to the City's answer. (*See* ECF No. 8.) The Court believes the proposed answer merely duplicates the City's answer to the complaint. The two documents substantially overlap, but that fact does not establish the requirement that the proposed intervenors have a claim or defense that shares a common question of law or fact. *See Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 757-58 (6th Cir. 2018) ("However, Saginaw cites no precedent to support the idea that pleading similar responses necessarily indicates a common question of law or fact. Indeed, if that were true, any party wishing to intervene to support one side of a lawsuit could simply reiterate the pleadings of that side and thus meet the 'common question' requirement.").

In their motion, proposed intervenors assert that the City failed to raise the affirmative defenses of standing and ripeness. (ECF No. 10 at 3 PageID.111 ¶ 9.) Proposed intervenors include standing and ripeness in their affirmative defenses. (ECF No. 11-1 PageID.215 ¶ 5.). Standing is not affirmative defenses that must pled in order to avoid forfeiture. *See Cmty. First Bank v. Nat'l Credit Union Admin.*, 41 F.3d 1050, 1053 (6th Cir. 1994). And, because standing implicates a federal court's subject matter jurisdiction, the court may raise the issue *sua sponte*. *Loren v. Blue Cross & Blue Shield of Michigan*, 505 F.3d 598, 607 (6th Cir. 2007). Ripeness too implicates a federal court's subject matter jurisdiction and may be raised by a court *sua sponte*. *See Bigelow v. Michigan Dept. of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992). Proposed intervenors' desire to question 326 Land Company's standing and the ripeness of its claims does not provide a basis for intervention because the Court may raise the issues even of the City does not. Indeed, federal courts have an "independent obligation" examine its subject matter jurisdiction over a lawsuit. *Arbaugh v. Y&H Corp.*,

9

546 U.S. 500, 514 (2006). In their motion, proposed intervenors do not identify any other claim or defense that would serve as a basis for intervention. This conclusion provides a sufficient basis for denying the motion with respect to permissive intervention.

In an abundance of caution, the Court has considered the other affirmative defenses set forth in the proposed pleading. This Court is not obligated to do so; the proposed intervenors have the burden of identifying the claim or defense that would permit intervention. An affirmative defense is one where a "defendant's assertion of facts and arguments that, if true, will defendant the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Black's Law Dictionary* (8th ed. 2004). Proposed intervenors assert the right to vote as an affirmative defense. (ECF No. 11-1 PageID.215 ¶ 3 and PageID.217 ¶ 18.) The Court is unaware of any authority supporting the conclusion that the right to vote can be used as an affirmative defense. Proposed intervenors assert that Plaintiff has not pled the elements of a Fifth Amendment takings claim. (*Id.* PageID.216 ¶ 8.) That claim or defense is simply a more specific assertion of the failure to state a claim upon which relief may be granted defense, a claim or defense already raised by the City. (ECF No. 8 PageID.102 ¶3.) As explained above, mirroring the same defenses at the existing parties does not provide a sufficient basis for permissive intervention. Proposed intervenors assert that the full faith and credit doctrine, 28 U.S.C. § 1738, precludes certain arguments and claims raised by Plaintiff. (ECF No. 11-1 PageID.217 ¶¶ 16, 17 and 19.) The City raises the same defense when it asserts that all of Plaintiff's claims are barred by res judicata or collateral estoppel (ECF No. 8 PageID.102 ¶ 1). See *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81-84 (1984); *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 476-78

(1982). Finally, proposed intervenors assert that Proposition 3 is not in dispute because the citizenry approved the proposition and the City Charter has been amended. (ECF No. 11-1 PageID.217 ¶ 20.) Plaintiff's semantic or short-hand reference notwithstanding, this is not an affirmative defense. Plaintiff requests relief from the enforcement of the amended City Charter.

II.

Proposed intervenors have not carried their burden to establish a basis for intervention. Proposed intervenors do not have a right to intervene because they have only a general interest in the provision of the City Charter requiring ballot approval before the City can issue certain construction permits. Proposed intervenors have not established a basis for permissive intervention as they have not identified a claim or defense that shares a common question of law or fact. The proposed answer to the complaint mirrors the City's answer and the additional affirmative defenses included in the proposed answer are either redundant and already part of the litigation or are simply not affirmative defenses.

## ORDER

For the reasons provided in the accompanying Opinion, the Court **DENIES** the motion to intervene. (ECF No. 10.) **IT IS SO ORDERED.**

Date:   April 6, 2022                                    /s/  Paul L. Maloney
                                                                            Paul L. Maloney
                                                                            United States District Judge