UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| 326 LAND COMPANY, | ) | |
|                Plaintiff, | ) | |
| | ) | No. 1:22-cv-45 |
| -v- | ) | |
| | ) | Honorable Paul L. Maloney |
| CITY OF TRAVERSE CITY and | ) | |
| SHAWN WINTER, | ) | |
|                Defendants. | ) | |
| | ) | |

## ORDER TO PROVIDE ADDITIONAL INFORMATION

The parties filed a stipulation and proposed order seeking to resolve this lawsuit. (ECF No. 35.) Having reviewed the document, the Court requires the parties to provide additional information.

I.

The Court provides the following summary for context. In the November 2016 general election, the voters in the City of Traverse City approved Proposition 3. The proposition amended the city charter, which now requires any proposed construction of a building with a height above 60 feet to be submitted to and approved by a majority of the electors at a regular or special election before the City or City Commission can approve the proposed construction. In April 2017, the City Commission adopted an implementation policy for Proposition 3.

Plaintiff 326 Land Company filed a lawsuit in state court in January 2017 challenging Proposition 3. In August 2017, Judge Thomas Power dismissed the lawsuit as not ripe. The Court reasoned that Plaintiff had to first seek voter approval under the amendment to the

City Charter. The Michigan Court of Appeals affirmed the decision in September 2018. *326 Land Co., LLC v. City of Traverse City*, No. 339755, 2018 WL 4658932 (Mich. Ct. App. Sept. 27, 2018) (per curiam).

During the litigation, a group of concerned citizens, Save Our Downtown (SOD), requested to intervene. SOD asserted that the Defendant City would not adequately defend Proposition 3 because the City thought Proposition 3 was unconstitutional and some of the city commissioners had campaigned against passage of the proposal. SOD presented evidence "that the city attorney may have assisted 326 in preparing this lawsuit." *326 Land*, No. 339755, at *3. Judge Power granted the motion to intervene and the Michigan Court of Appeals affirmed that decision. *Id.*

At some point, Plaintiff 326 Land asked that its proposed construction, a 10-story building, be placed on the ballot for approval by the voters. In the November 2018 general election, a majority of the City voters cast votes against the proposed construction.

On December 12, 2018, Plaintiff 326 Land Company returned to the state courts and filed a second lawsuit seeking a declaration that special land use permits for buildings over 60 feet must be decided solely by the City Commission. *326 Land Company v. City of Traverse City*, No. 2018-34701 (13th Circuit Court Grand Traverse County). SOD again intervened in the action.[1] In June 2019, Judge Power issued a dispositive order favoring the defendants.

---

[1] Grand Traverse County makes available on its website the docket sheets for civil actions filed in the 13th Circuit Court. Individual documents cannot be viewed.

On July 21, 2021, SOD filed the next lawsuit seeking an injunction against the City of Traverse City. *Save Our Downtown v. City of Traverse City*, No. 2021-35862 (13 Circuit Court Grand Traverse County). This Court infers that SOD challenged the manner in which the City calculated the height of proposed buildings when deciding whether to issue construction permits. Judge Power issued a ruling favorable to the plaintiff in November 2021 and issued an injunction. The defendants filed a notice of appeal and the matter remains pending with the Michigan Court of Appeals. *See Save Our Downtown v. City of Traverse City*, No. 359536 (Mich. Ct. App.)

## II.

Plaintiff filed this lawsuit in January 2022. Plaintiff alleges the construction project underlying this lawsuit involves a 60-foot tall, five-story building, with appendages rising above 60 feet. Plaintiff alleges it obtained a land use permit for the project on July 20, 2021. Plaintiff asserts that the 2021 lawsuit filed by SOD involved a similar building where the rooftop appendages exceeded 60 feet in height. As a result, following Judge Power's order in November 2021, Traverse City issued a stop-work order for Plaintiff's project.

In the complaint, Plaintiff alleges six claims or counts. For some of the claims, Plaintiff alleges an injury arising from the stop-work order. For other claims, Plaintiff alleges an injury arising from Proposition 3.

SOD and Albert Quick (Intervenors) filed a motion to intervene (ECF No. 10), which Plaintiff opposed. Intervenors argued that Defendant would not adequately defend the voting rights of the people in Traverse City. The Court denied the motion because Intervenors had not established a significant legal interest in the lawsuit. (ECF No. 19.)

III.

The parties filed a stipulation in which they seek to resolve the lawsuit. The parties request the Court sign a proposed order and declaration memorializing the manner in which they agreed to resolve the claims. The parties agree that, central to Plaintiff's due process claim, is whether Plaintiff "acquired vested rights to complete its project as permitted by the City of Traverse City's Land Use Permit" issued on June 20, 2021. (PageID.306.) The parties further agree that as a result of discovery, "each party has come to recognize that the other party has good faith arguments in support of its position on the question of detrimental reliance and vested rights . . . ." (PageID.306-07.) Finally, the parties agree that Plaintiff acquired vested rights in the project and has the right to immediately resume work on the project. (*Id.* PageID.307.) In exchange, Plaintiff agrees to dismiss the remaining claims with prejudice and without costs. (*Id.*) The parties submitted a proposed order which declares, among other things, that "Plaintiff 326 Land Company has acquired vested rights to complete its project as permitted by the City of Traverse City's Land Use Permit . . . ." (PageID.309.)

Functionally, the parties seek court approval of a consent decree, one that allows Plaintiff to commence a construction project without a vote as required by Proposition 3.

> "A consent decree has attributes of both a contract and of a judicial act." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). "Consent decrees are entered into by parties to a case after careful negotiation has produced an agreement on their precise terms." *United States v. Armor & Co.*, 402 U.S. 673, 681 (1971). . . . The consent decree is a judicial act because it "places the power and prestige of the court behind the compromise struck by the parties." *Williams*, 720 F.2d at 920. A court must "protect the integrity of the decree with its contempt powers." *Id.*

*Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 229 (6th Cir. 2019). Because a consent decree is a final judicial order, "[j]udicial approval, . . ., may not be obtained for an agreement which is illegal, a product of collusion, or contrary to the public interest. Once approved, the prospective provisions of the consent decree operate as an injunction." *Williams*, 720 F.2d at 920 (internal citation and citation omitted). Courts must examine proposed consent decrees to "determine whether the compromise embodied within the decree is illegal or tainted with collusion." *Id.* at 921 (collecting cases). "The court's determination should be based on its familiarity with the issues, the results of discovery, and the character of the negotiations prior to the entry of the decree." *Id.*

As the record stands, the Court will not declare that Plaintiff has a vested right. The parties have not provided the Court with any information that might support that conclusion. Typically, when the parties ask for a consent decree during the litigation, the "court has no occasion to resolve the merits of the disputed issues or the factual underpinnings of the various legal theories advanced by the parties." *Williams*, 720 F.2d at 920 (collecting cases). Under Michigan law, "the grant of a permit to build does not itself confer on the grantee 'vested rights.' Actual construction must commence. The making of preparatory plans, landscaping, and the removal of an existing structure is not sufficient." *Schubiner v. West Bloomfield Twp.*, 351 N.W.2d 214, 219 (Mich. Ct. App. 1984) (internal citations omitted). More than twenty year later, in an unpublished opinion, the Michigan Court of Appeals again reached the same conclusion.

> In Michigan, a landowner intending to build on his or her property does not acquire a protected property interest merely upon the issuance of a permit. In *City of Lansing v. Dawley*, 247 Mich. 394, 225 NW 500 (1929), the Court held

> that a landowner acquires a vested property interest if he or she acquires a building permit and does anything of a "substantial character towards construction" of the project upon which the permit was obtained. *Id.* at 396-97. While the Court did not specifically define "substantial character," it made clear that preliminary work such as the removal of old buildings, the ordering of plans, and conducting surveys of the land is not sufficient. *Id.* at 396-97. In a later case, the Court held that a landowner's expenditure of monies in preparation for building does not give rise to a vested property interest. *Bloomfield Twp. v. Beardslee*, 349 Mich. 296, 307-09; 84 NW2d 537 (1957); see also *Franchise Realty Interstate Corp. v. Detroit*, 368 Mich. 276, 279-280; 118 NW2d 258 (1962).

*Devlon Props, Inc. v. City of Boyne City*, No. 279188, 2008 WL 5273513, at *2 (Mich. Ct. App. Dec. 18, 2008) (per curiam). Plaintiff's complaint sets forth the efforts undertaken and expenses incurred in preparation for the new project. Plaintiff's complaint contains only a few facts about efforts undertaken and expenses incurred between the time Plaintiff obtained the permit and the time the City issued the stop-work order. (Compl. ¶¶ 84-88.)

The Court also has concerns that the proposed agreement violates Proposition 3. In its response to the motion to intervene, the City acknowledges that opposes Judge Power's decision concerning how a building's height should be measured. (PageID.229.) Should the Court approve the proposed consent decree, the voters in the City of Traverse City might be deprived of their right to approve or deny Plaintiff's project. The Court acknowledges that Plaintiff does not believe that its construction project must be presented to the voters. Obviously, SOD disagrees and SOD took a different party to the state courts and prevailed. The Court has not permitted SOD to intervene, but that does not mean that the Court must ignore the rights of third parties whose rights might be implicated by the manner in which Plaintiff and Defendant wish to resolve their dispute.

Finally, the Court has concerns as it evaluates potential collusion between the parties. The parties do not appear to be truly adversarial. Indeed, the Court will not participate in a friendly scrimmage under the guise of arms-length litigation. This Court fears that Plaintiff selected the federal forum because it found the state court inhospitable to its challenges. And, Plaintiff sued a party that admittedly disagrees with the manner in which Judge Power has resolved a similar dispute. By filing the lawsuit in federal court and seeking federal approval of a consent decree, the parties would insulate Plaintiff's construction project from both Proposition 3 and potential challenges in the state courts.

### III.

The Court's concerns about the consent decree must be addressed. The parties conclude Plaintiff has vested property rights. The parties must now establish a sufficient legal and factual basis for their conclusion. The parties have represented to the Court that they have engaged in discovery, including exchanging extensive documents and taking depositions. The parties must, therefore, file a joint brief to the Court in support of their proposed resolution of Plaintiff's due process claim. The brief must include the following:

1. a summary of the relevant law concerning vested property rights;
2. a summary of facts supporting the conclusion that Plaintiff has a vested right;
3. evidence supporting the summary of facts; and
4. an explanation justifying why the vested right obviates the requirement of Proposition 3.

To the extent the law and evidence might undermine the proposed resolution of claims, the Court has confidence that counsel will fulfill their duty of candor.

8

The parties must file the joint brief by Friday, July 29, 2022.  **IT IS SO ORDERED.**

Date:    June 28, 2022                                       /s/  Paul L. Maloney
                                                                     Paul L. Maloney
                                                                     United States District Judge