UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

326 LAND COMPANY, LLC,                        )
                             Plaintiff,          )
                                                )          No. 1:22-cv-45
-v-                                                              )
                                                )          Honorable Paul L. Maloney
CITY OF TRAVERSE CITY and              )
SHAWN WINTER,                                     )
                             Defendants.         )
_____)

## OPINION AND ORDER DENYING PROPOSED SETTLEMENT AGREEMENT

The parties submitted a proposed settlement of this lawsuit and seek Court approval (ECF No. 35). Concerned about possible collusion, the Court ordered the parties to provide additional information (ECF No. 36). The parties filed a lengthy brief summarizing the facts and the law (ECF No. 38 Joint Brief). The parties also discuss their motivations for settling the dispute. The parties have not persuaded the Court that the proposed settlement is fair, reasonable, adequate and in the best interest of the public. The Court declines to approve the settlement.

I.

In the November 2016 general election, the voters of the City of Traverse City approved Proposition 3, which became part of City's Charter, Chapter IV, Section 28. The amendment (Section 28) requires voter approval of any proposed construction of a building with a height above 60 feet. Only after a majority of the voters approves a proposed building can the City issue a final approval. Section 28 does not, however, provide guidelines for measuring the height of a building. In April 2017, the City Commission adopted an

Implementation Policy for § 28, which established a method for measuring the height of a building (ECF No. 38-3).

Interested parties have filed several lawsuits following voter approval of § 28.  Plaintiff 326 Land Company had plans to build a 10-story residential building and filed a lawsuit in state court in January 2017 challenging the amendment. An organization called Save Our Downtown requested to intervene arguing that Defendant City would not adequately protect its interests because the City disagreed with § 28.  Judge Thomas Power granted the motion to intervene.  Judge Power eventually dismissed the lawsuit after concluding that 326 Land Company did not have a ripe claim.

The Michigan Court of Appeals affirmed the decision permitting intervention and the decision to dismiss the lawsuit.  *See 326 Land Co., LLC v. City of Traverse City*, No. 339755, 2018 WL 4658932 (Mich. Ct. App. Sept. 27, 2018) (per curiam).  Concerning the motion to intervene, the court concluded that the record contained evidence that "supported a complete lack of adversarial tension between plaintiff and defendants[.]"  *Id.* at *3.  In particular, "city commissioners had campaigned against Prop 3 and records obtained under the Freedom of Information Act revealed that a city attorney may have assisted 326 in preparing this lawsuit."  *Id.*

326 Land Company then proceeded to follow the requirements to get its 10-story project approved.  Although the City recommended approval, the voters rejected the proposed building in the November 6, 2018, election.  326 Land Company returned to the

state court and again challenged § 28.  Judge Power resolved the dispute against 326 Land Company and upheld the amendment.[1]  326 Land Company did not file any appeal.

326 Land Company contends it next decided to revise its plans and construct a five-story residential building that did not require voter approval.  On July 20, 2021, Plaintiff obtained several permits from Defendant for its project at 326 E. State Street, including a land-use permit (ECF No. 38-11 PageID.435), a ground-water protection and storm-water runoff construction permit (ECF No. 38-12 PageID.437), and a soil erosion and sedimentation control permit (ECF No. 38-12 PageID.438).  Plaintiff also obtained from Grand Traverse County a demolition permit (ECF No. 38-13 PageID.456).  On November 12, 2021, Grand Traverse County issued 326 Land Company a commercial building permit for new construction at 326 E. State Street (ECF No. 38-14 PageID.460).[2]

Plaintiff was not the only construction company with projects in Traverse City.  In February 2021, Traverse City considered a construction proposal from Innovo TC.  The proposed building contained appendages on the roof that would exceed 60 feet.  After receiving legal advice, the City concluded that methods for measuring the height of a building set forth in the Implementation Policy allowed approval of the construction proposal and gave final approval for the project without a vote under § 28.

---

[1]      The parties have not provided the Court with Judge Power's opinion, which is not accessible through the County's website.  The Court believes the number assigned to the case is 2018-34701.  The Court accepts the parties' description of the outcome (Joint Br. at 5 PageID.324).

[2]      The land-use permit and the construction permit were issued for the same address but for different parcel numbers.  The land-use permit describes a 5-story building (PageID.435).  The building permit describes a 6-story building (PageID.459).  The parties offer no explanation for these differences.

On July 21, 2021, Save Our Downtown filed a lawsuit in the state courts challenging the City's final approval of the Innovo project.  In an oral decision, on Wednesday, November 10, 2021, Judge Power addressed cross motions for summary disposition and resolved the lawsuit in favor of Save Our Downtown.[3]  Judge Power issued a "Judgment Order" on Thursday, November 18, 2021.[4]  The next day, November 19, 2021, Traverse City emailed a stop-work order to 326 Land Company (ECF No. 38-8 PageID.417-18).  The order states, in part: "Therefore, the structural and foundation work approved under Land Use Permit PLU21-0112 is no longer valid and all associated work under that permit must cease and desist until revised building plans consistent with Section 28 and the Judgement Order has been submitted and approved" (*id.* PageID.417).  The City appealed Judge Power's decision.

326 Land Company filed this lawsuit on January 18, 2022.  Plaintiff advances six causes of action.  In Count I, Plaintiff pleads that the stop-work order violates procedural due process under the Fourteenth Amendment and violates the just compensation clause of the Fifth Amendment.  Plaintiff contends it had vested property rights in constructing the proposed building.  Count II alleges that § 28 violates substantive due process under the Fourteenth Amendment.  Count III alleges that § 28 violates the Equal Protection clause of

---

[3]     The parties' brief contains a block quote from Judge Power's ruling (Joint Br. at 6 PageID.325) in *Save Our Downtown v. City of Traverse City Planning Commission*, No. 21-35862 (13th Cir. Ct. of Mich.).  The parties did not attach any transcript or other exhibit relevant to the block quote.  The docket sheets for civil cases in the Grand Traverse Circuit Court are accessible through the County's website.  The docket sheet for the case indicates Judge Power issued an oral decision on November 10.

[4]     The parties attach as an exhibit an unsigned, undated document that appears to be Judge Power's Judgment Order (ECF No. 38-8 PageID.420-21).  The docket sheet indicates that the Judgment Order entered on November 18.

the federal and state constitutions.  Count IV alleges that the stop-work order violates the due process clause because the land-use permit was properly issued and Judge Power's order did not extend to previously issued permits.  As part of Count V, Plaintiff pleads that § 28 conflicts with provisions of the Traverse City Zoning Ordinances.  Plaintiff reasons that the stop-work order relied on an invalid provision of the Township Charter and therefore violates Plaintiff's due process rights.  Count VI alleges a takings claim.  Plaintiff reasons that § 28 deprives it of a reasonable investment-backed expectation for use of the property.

After the City filed its answer, the Magistrate Judge held a Rule 16 scheduling conference and issued a case management order (ECF Nos. 20 and 21).  The parties began discovery and noticed several depositions.  On May 26, 2022, the parties filed a stipulation to extend the deadlines for summary judgment motions from June 3 to June 17 (ECF No. 33) which was approved (ECF No. 34).

As this lawsuit progressed, Save Our Downtown (SOD) filed a motion to intervene (ECF No. 10).  SOD raised the same concerns about the City that it raised in the lawsuit before Judge Power.  SOD complained that the City would not adequately defend § 28.  The Court denied the motion after concluding that SOD did not have a legal interest in the dispute, among other things (ECF No. 19).

On June 21, 2022, the parties filed the pending stipulation and proposed settlement agreement (ECF No. 35).  The parties propose that the City will recognize 326 Land Company's vested rights in the land-use permit and will lift the stop-work order.  326 Land Company will resume work on the project and will dismiss all other causes of action in this

lawsuit with prejudice and without costs.  The parties agree that 326 Land Company may complete work on the project.  The parties submitted a proposed order (*id.* PageID.309-10).

On June 28, 2022, the Court ordered the parties to provide additional information (ECF No. 36).  The Court analogized the proposed agreement to a consent decree and expressed concern that approving the agreement would violate the rights of voters granted by § 28.  The Court also expressed concern that the parties were not truly adversarial and filed this lawsuit in federal court after finding the state courts inhospitable to similar challenges.  The Court identified the four topics that the parties needed to address: (1) the law concerning vested rights, (2) a summary of the facts supporting Plaintiff's vested right, (3) evidence supporting the summary of facts, and (4) an explanation for why vested rights obviate the voting requirement in § 28 (*id.* PageID.317).

On October 13, 2022, the Michigan Court of Appeals issued an opinion affirming in part and reversing in part Judge Power's resolution of the cross motions for summary disposition.  *Save Our Downtown v. City of Traverse City*, —N.W.2d—, 2022 WL 7724317 (Mich. Ct. App. Oct. 13, 2022).  The court concluded that Traverse City's Zoning Ordinance, § 1320.07(g), provides a method for measuring the height of a building.  The method "excludes rooftop equipment such as air conditioning units, elevator shafts, and parapet walls from the measurement."  *Id.* at *4.  The court reversed the portions of Judge Power's decision providing declaratory and injunctive relief concerning the method of measuring building height.  *Id.* at *6.

The court, however, found no error in the decision to grant summary disposition to Save Our Downtown because the building's height exceeded 60 feet.  The plaintiffs

submitted an affidavit from an engineer who attested that the top of the roof deck was 60 feet above the average grade.  *Id.* at *2.  The covering placed on top of the roof deck extended the height of the building by another 2 feet and 2 ¾ inches, which made "the height of the building 62 feet, 2 ¾ inches.  *Id.*  The court found no error Judge Power's decision that including the roof covering when measuring the height of the building "comports with the plain language of the zoning ordinance[.]"  *Id.* at *7.

Save Our Downtown filed an application for leave to appeal with the Michigan Supreme Court on November 28, 2022.  The application remains pending as of April 20, 2023.

This Court ordered the parties to file supplemental briefs after the opinion issued by the Michigan Court of Appeals.  (ECF No. 41).  The Court anticipated that the October 13 opinion rendered moot at least part of this dispute.  Plaintiff timely filed a supplemental brief (ECF No. 43).

Plaintiff argues the October 13 Opinion did not render any part of this lawsuit moot.  First, Plaintiff accurately notes that the decision does not become binding until the Michigan Supreme Court denies leave to appeal or affirms the decision.[5]  *See* Mich. R. Ct. 7.215(F)(1).  Plaintiff identifies a second problem, one that was not apparent in the prior record.  Plaintiff acknowledges that the plans for its building include a covering on top of the roof structure.

---

[5]      Plaintiff reasons that because the October 13 opinion is not effective, the effective ruling is the trial court's November 2021 decision.  But, a trial court's decision is subject to the same stay of effectiveness as an appellate court's decision.  *See* Mich. R. Ct. 7.114(C).

If the covering is included when measuring the height of the building, the building measures 61 feet and 6 inches.

With this context and background, the Court considers the proposed settlement.

## II.

## A.

First, the Court considers the nature of the proposed agreement between the parties. If the proposal is a private settlement, the parties may simply reach an agreement (without the need to disclose the terms) and dismiss the action through a Rule 41(a)(2) stipulation. If the agreement is something else, the Court would likely need to approve it. The Sixth Circuit has identified some differences between private settlements and consent decrees.

> "A consent decree is essentially a settlement agreement subject to continued judicial policing." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). Consent decrees typically have two key attributes that make them different from private settlements. First, when a court enters a consent decree, it retains jurisdiction to enforce the decree. *Id.* In contrast, the parties to a private settlement typically must bring another suit (for breach of contract) to enforce it. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994). Second, a consent decree puts "the power and prestige of the court behind the compromise struck by the parties." *Williams*, 720 F.2d at 920. The same is not true of a dismissal order that does not incorporate the parties' terms.

*Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 871 (6th Cir. 2015). Once approved, any prospective provisions of the agreement function as an injunction. *See Williams*, 720 F.2d at 920.

Before approving a consent decree, a district court must determine if the agreement is fair, adequate and reasonable. *Pedreira*, 802 F.3d at 872. A court may not approve an agreement "which is illegal, a product of collusion, or contrary to the public's interest."

*Williams*, 720 F.2d at 920.  And, "the court must allow anyone affected by the decree to 'present evidence and have its objections heard[.]"  *Pedreira*, 802 F.3d at 871 (alterations in *Pedreira*, quoting *Tennessee Ass'n of Health Maint. Orgs. v. Grier*, 262 F.3d 559, 566-67 (6th Cir. 2001)).

The Court concludes that the parties have submitted an agreement that functions as a consent decree.  The parties submitted a proposed order that includes various judicial declarations and injunctive relief in the form of future acts by the City.  In relevant part, the proposed order contains the following declarations:

> (1) Plaintiff 326 Land Company has acquired vested rights to complete its project as permitted by Land Use Permit No. PLU21-0112, issued on July 20, 2021;
> (2) the November 18, 2021 stop-work order is lifted with immediate effect;
> (3) 326 Land Company has the right to immediately resume work and to complete its project as permitted by Land Use Permit No. PLU21-0112, "including all rooftop structures depicted on the July 1, 2021 Plans;" and
> (4) "Defendants shall without unreasonable delay issue any additional approvals or permits as may reasonably be needed to effectuate the terms of this Order and that the City's Land Use Permit PLU21-0173, issued November 21, 2021 is withdrawn and of no further force and effect[.]"

(PageID.309-10).  The declarations implicate the rights of third parties.  The agreement permits Plaintiff to complete construction of its building without obtaining approval from a majority of the voters as required by § 28.  Plaintiff has acknowledged that the building that underlies this lawsuit exceeds 60 feet in height.

The Court is mindful that the parties have not filed a motion to dismiss or a motion for summary judgment.  The Court is not making factual determinations or conclusions of law.  The Court merely summarizes the information in the current record and applies that

information to the law for the purpose of deciding whether the settlement is fair, adequate, reasonable and in the public's interest.

## B.

The parties justify the proposed settlement on their conclusion that Plaintiff acquired vested rights in a land-use permit.[6]  Those vested rights serve as the property right underlying Plaintiff's constitutional claims.  Property rights and interests are typically found with reference to state law.  *See ESJ Props., LLC v. City of Toledo*, 689 F.3d 845, 855 (6th Cir. 2012).  In Michigan, vested rights ordinarily arise in situations where the use of real property does not comply with current zoning restrictions but the nonconforming use "is protected because it lawfully existed before the zoning regulation's effective date."  *Heath Twp. v. Sall*, 502 N.W.2d 627, 629 (Mich. 1993).  "Once the nonconforming use is established, a subsequently enacted zoning restriction, although reasonable, will not divest the property owner of the vested right."  *Id.* at 630.

Michigan has recognized vested property rights in building permits for nearly one hundred years.  *See City of Lansing v. Dawley*, 225 N.W. 500, 501 (Mich. 1929).  The Sixth Circuit succinctly described vested rights under Michigan law: "it is well established that possession of a valid building permit coupled with substantial reliance thereon, including actual construction, will bestow vested property rights to a non-conforming structure."  *Dorr v. City of Ecorse*, 305 F. App'x 270, 275 (6th Cir. 2008).  The facial simplicity of this century-

---

[6]    The Joint Brief contains sections setting forth facts and law with which both parties agree (*see, e.g.,* Joint Br. at § III.A. at 11-12 PageID.330-31).  The Joint Brief also contains sections that describe the position of only one of the parties (*see, e.g., id.* § III.B Plaintiff's Position on Vested Rights at 12-22 PageID.331-42; § IV.A Defendant's Position on Vested Rights at 28-34 PageID.347-53).  The Court has endeavored to identify the parties' positions when considering each argument.

old, well-established "test" is belied by the Michigan Supreme Court's acknowledgment that, for vested rights, "[w]e cannot state a comprehensive formula." *Sall*, 502 N.W.2d at 633; *Bloomfield Twp. v. Beardslee*, 84 N.W.2d 537, 542 (Mich. 1957).

> Each case must stand on its own facts. It is recognized that every zoning regulation involves some impairment of rights. Whether the rights have attained a status so sacred, so inviolate, that they rise above legislative command, i.e., that the owner has a 'vested' right in some particular use, involves a balancing of factors, a determination as to whether the owner's interest is so substantial that its destruction cannot reasonably be justified in light of the accomplishment of the objectives of the ordinance. It is not a matter susceptible to precise quantitative measurement, so many feet excavated, so many trucks ordered, or so many men hired.

*Beardslee*, 84 N.W.at 542-43.

### 1. Land-Use Permit

The well-established law in Michigan holds that a party may have vested rights in a building permit or something equivalent. *Schubiner v. West Bloomfield Twp*, 351 N.W.2d 214, 219 (Mich. 1984) ("Under all of the cases cited herein a building permit, or its counterpart, a permit to commence operations, is the *sine qua non* for obtaining a 'vested rights.' An approved site plan is not a permit to build."); *see, e.g., Dingeman Advert., Inc. v. Algoma Twp., Kent Cty.*, 223 N.W.2d 689, 692 (Mich. 1974) (involving a building permit for billboard issued on May 15, 1970); *De Mull v. City of Lowell*, 118 N.W.2d 232, (Mich. 1962) (where the township board passed a resolution directing the township building inspector to grant the plaintiff a permit to a operate a junkyard); *Sandenburgh v. Michigamme Oil Co.*, 228 N.W.707, 708 (Mich. 1930) (where the defendant obtained a "permit to construct a gasoline filling station"). The parties have not identified any legal authority where a court found that a party had vested rights in a land-use permit.

While Michigan courts have not expressly considered vested rights in a land-use permit, they have rejected the vesting of construction or use rights in pre-construction permits. Under Michigan law, a site plan "merely signifies that the proposed use complies with local ordinances and federal statutes." *Schubiner*, 351 N.W.2d at 219. The Michigan Supreme Court held that "[t]he features of reliance and estoppel which may give rise to vested rights under a building permit do not necessarily arise under an approved site plan[.]" *Id.* Quoting the holding in *Schubiner*, the Michigan Court of Appeals declined to find vested rights in a zoning permit. *Devlon Props., Inc. v. City of Boyne City*, No. 279188, 2008 WL 5273513, at *3 (Mich. Ct. App. Dec. 18, 2008) ("This passage clearly indicates that the Court was willing to entertain a reliance argument only after a landowner had acquired a building permit. Here, plaintiff never acquired a building permit. Plaintiff did not perform substantial work in utilizing the property in accordance with the zoning permits."). Plaintiff's description of a land-use permit appears analogous to a site plan and a zoning permit.[7]

Plaintiff has not offered any analysis to persuade this Court that vested rights could arise from its land-use permit. *See EJS Props.*, 698 F.3d at 859 (finding that an "early start permit" authorized by the Toledo Municipal Code could not create a property interest beyond "initial renovations" because the permit only allowed work up to the "rough-in-stage" which was "performed at the applicant's risk"). The Traverse City Ordinance Code includes a provision for land-use permits. Traverse City Ordinance § 1322.01. The City requires a

---

[7]     Plaintiff offer a short description of the differences between a land-use permit and a building permit. "The land use permits issued by the City signify compliance with zoning requirements. The building permits issued by the County signify approval for compliance with the building codes" (Joint Br. at 15-16 PageID.334-35).

land-use permit, in part, before a building or structure is built, rebuilt, converted, enlarged, demolished or structurally altered when such activity requires a building permit. *Id.* § 1322.01(a)(1). The Court makes two observations from this language. First, Plaintiff would need a land-use permit to demolish the structure that existed at the site regardless of the height of the proposed building that would replace the demolished structure. Second, a land-use permit is distinct from a permit to build because the Township requires a land-use permit only when the activity also requires a building permit.

The Court does not conclude that 326 Land Company could never prove that it obtained vested rights in its land-use permit. The Court concludes only that the combination of case law, the current record and the arguments advanced by the parties does not support the conclusion that the land-use permit issued to 326 Land Company provides a basis for finding vested rights regardless of what activities occurred after the permit issued.

## 2. Construction

Over the years, the Michigan courts have provided some guidance for the sort of construction activity necessary to acquire vested rights in a nonconforming structure. To establish vested rights, the moving party must show "work of a substantial character done by way of preparation for an actual use of the premises." *Beardslee*, 84 N.W.2d at 542. Preliminary operations such as "ordering plans, surveying the land, [and the] removal of old buildings, are not sufficient." *Id.* "Michigan case law is clear that there must be construction beyond preliminary preparation to establish a prior nonconforming use." *Sall*, 502 N.W.2d at 632.

Furthermore, not all construction activities will lead to the creation of a vested right. The construction must be for an actual use that is nonconforming, which "must be apparent and manifested by a tangible change in the land, as opposed to intended or contemplated by the property owner." *Gackler Land Co. v. Yankee Springs Twp.*, 398 N.W.2d 393, 398 (Mich. 1986). Where the construction improves a property in a manner consistent with both conforming and nonconforming uses, the construction does not create vested rights in the nonconforming use. *See Sall*, 502 N.W.2d at 630 (quoting *Gackler*, 398 N.W.2d at 399); *see, e.g., Belvidere Twp. v. Heinze*, 615 N.W.2d 250, 253 (Mich. Ct. App. 2000) (per curiam) (concluding that the construction of a manure pit and sewer system that would support a thousand pigs would be "equally useful for a lawful, conforming use, such as the operation of a hog farm that does not qualify as a concentrated livestock operation").

*Sall* and *Gacker* illustrate when construction does not create a vested right. In *Gackler*, the plaintiff platted a 20-acre tract that abutted the shore of a lake. The local township approved the plat, which included fifty-four lots. At the time, the zoning regulations permitted mobile, prefabricated, and site-built homes on the lots. Restrictions were recorded on the twelve lake-front lots to exclude mobile homes. By 1972, eleven single-wide mobile homes occupied back lots in the plat. In 1972, the township enacted a zoning ordinance that restricted mobile homes to mobile home parks. The township then amended its zoning ordinances to allow mobile homes that met the definition of "dwelling" to exist where site-built or modular single-family residences were allowed. As a result, single-wide mobile homes could not be placed on plaintiff's plat, unless the units met the definition of "dwelling."

The plaintiff alleged, in part, that it had a vested right to a nonconforming use. *Gackler*, 398 N.W.2d at 398.  The plaintiff identified several factors that weighed in favor of finding vested rights: (1) a road had been constructed, (2) the plat had been surveyed and monuments were erected, (3) grading and excavation work had been completed, and (4) eleven mobile homes had been placed on lots.  The Michigan Supreme Court held that the construction that occurred prior to change to the zoning ordinances did not establish a prior nonconforming use sufficient to vest rights.

> In this case, the improvements to the land by way of the road construction, surveying, setting of monuments, grading, and excavation work have rendered the lots in the plat equally suitable for the placement of single-wide mobile homes and conventional dwellings.  These improvements, therefore, do not constitute work of a substantial character which makes apparent an actual use of the plat as a single-wide mobile home plat.

*Id.*  "[I]t is indisputable that the improvements to the property have made the lots as suitable for 'dwellings' under the ordinance as they are for single-wide mobile homes."  *Id.*

*Sall* also involved a plat for a mobile home park.  The defendants purchased a 16-acre plot with the intention of building a mobile home park.  At the time, the zoning regulations did not permit mobile home parks where the land was located.  In October 1986, the township board approved the defendants' request to rezone the property.  The defendants then began preparing the site by obtaining a topographical survey and detailed construction plans, obtaining permits for excavating and plumbing, purchasing sewer pipe, drilling a water well, constructing a wellhouse, installing four test wells, excavating roads, removing topsoil and clearing trees.  At the same time, local residents petitioned for a referendum to return the site to its previous zoning classification.  The referendum passed.

The defendants continued to work on the site based on an oral statement by the state that the state intended to issue a mobile home license. The township notified the defendants they had to stop work and defendants refused. The township then sued.

The Michigan Supreme Court considered whether the work done on the site supported a finding of vested rights. The Court examined each activity to determine if it supported the creation of a vested right. The Court concluded that the topographical survey, clearing trees and removing topsoil all constituted preliminary preparation. *Sall*, 502 N.W.2d at 631. The four test wells were also preliminary preparation because their only purpose was to determine the direction of water flow which was necessary to identify where to place a sewage system. *Id.* On the record before the Court, the work performed for road excavation was also preparatory and was insufficiently substantial to constitute a prior nonconforming use. *Id.* at 632. None of that work was of a substantial character for an actual nonconforming use. The Court found that only the water well and wellhouse were pertinent to answering the question of whether the work was of a substantial character. *Id.* The Court then concluded that "[n]either of these activities, in light of the total construction a mobile home park requires, is sufficiently substantial to satisfy defendants' burden." *Id.*

Plaintiff sets forth the various construction activities that it has undertaken: (1) construction of the foundation, (2) delivery of specialized materials, and (3) demolition of the prior building. Plaintiff also argues that the costs incurred thus far should be considered.

### a. Foundation

Plaintiff contends that the proposed building has a unique foundation system required by the soil conditions on the site. In particular, the foundation rests on pile caps, which are

placed at precise locations based on the size, height and shape of the particular building. Excavations for the pile caps began on November 9, 2021.  Plaintiff argues that visual evidence shows that material and tangible alterations to the land have occurred.

The record establishes only that some excavation for the foundation occurred prior to the stop-work order.  Excavation for some of the pile caps had occurred at the site.  But, the "screw auger" that creates the "pile" underneath the "cap" had not yet been deployed and the holes for the piles had not been created.  (ECF No. 38-17 Laureto Dep. at 33-34 PageID.480-81; ECF No. 38-27 Moore Dep. at 11 PageID.530).  This sort of excavation might be considered "construction" within the industry.  For the purpose of vested rights, the Michigan courts consider this sort of activity to be preliminary preparations, activities that will not provide a basis for a prior nonconforming use.[8]  The Court must acknowledge that the *Sandenburgh* opinion likely provides some support for finding vested rights here.  In that opinion, the Court found vested rights and identified the construction activities as "the concrete steps of the dwelling house were removed, the private walk taken up, and excavation for the building walls started."[9]  *Sandenburgh*, 228 N.W. at 708.  The Court, however, struggles to reconcile *Sandenburgh* with the more recent opinions involving excavation efforts in which the Michigan Supreme Court declined to find vested rights.  *See Sall*, 502 N.W.2d at 632 ("Therefore, because defendants had not yet commenced the more cumbersome and conclusive stages of construction, their road excavation work was

---

[8]     In a different section of brief, Plaintiff points to other construction activities (ECF No. 38 at 20 PageID.339).  The other construction activities identified in the brief are similarly preparatory activities that do not provide a basis for finding vested rights.

insufficiently substantial to constitute a prior nonconforming use."); *Gackler*, 398 N.W.2d at 399 ("In this case, development of the plat is virtually complete save for sewer and water hookups on the back lots which have no bearing on whether the land will be used for 'dwellings' ....").

More problematic for Plaintiff, the excavation activities that occurred before the stop-work order issued did not make apparent a nonconforming use.  The record contains evidence that the foundation plans could be used for a shorter building, one that would not require a vote under § 28 (ECF No. 38-16 McIntyre Dep. at 43-44 PageID.471; ECF No. 38-17 Laureto Dep. at 58-61 PageID.487).  Because the construction activity that occurred before November 19 would be equally useful to a conforming use, the activity will not support a finding of vested rights.[10]

Defendant acknowledges both of these concerns (preparation is not construction; activity did not manifest in a nonconforming use) as potential problems for Plaintiff.[11]

### b. Specialized Materials

Plaintiff argues that the delivery of specialized materials provides a basis for finding vested rights.  After excavation, pile cap construction requires specialized equipment which must be reserved well in advance.  Plaintiff contends it paid a non-refundable deposit in excess of $130,000 for the equipment, the equipment arrived on site and ready to be used on November 18.  Plaintiff also argues that the deposit covered the cost of the rebar used to

---

[10]     Plaintiff references a foundation that was laid or reinforced in 2017 when a building on an adjoining lot was constructed (ECF No. 38 at 20 PageID.339).  Plaintiff did not obtain the land-use permit for another approximately four years.  And, the parties have not established that the foundation could not be used for a conforming structure.

[11]     Joint Brief at 31-34 PageID.350-53.

reinforce the concrete pilings. The contractor prepared the rebar to the specifications of this particular project and the rebar was on the site when the stop-work order issued.

Under these facts, the reservation and delivery of construction equipment does not establish a basis for vested rights. Reserving and delivering construction equipment falls into the category of preparatory activities that do not give rise to vested rights. *See, e.g., City of Ann Arbor, Michigan v. Northwest Park Const. Corp.*, 280 F.2d 212, 215-16 (6th Cir. 1960) (finding no vested rights after the City changed the zoning from commercial to residential where the defendant had already "removed many trees and stumps from the land in question in preparation for use as commercial property; that it demolished the foundations and retaining walls of a former greenhouse; that it secured a building permit for a construction shack on the premises and built such a shack; and that it moved construction equipment onto the property; and that it graded the land"). The same or similar specialized equipment would likely be necessary for the construction of a foundation that would support a conforming structure.

On this record, off-site preparation of rebar does not constitute the sort of work of a substantial character that would provide a basis for vested rights. Again, the foundation in which the rebar is used could also support a conforming structure. Plaintiff has not persuaded the Court that custom preparation of rebar is factually analogous to the facts in *Dingeman Advertising*. In *Dingeman*, the plaintiff obtained a permit for a billboard but before the billboard went up, the township board amended the zoning ordinance to preclude outdoor advertising. The Michigan Supreme Court found that the plaintiff had a vested right in part because the plaintiff completed "a large portion of the frame structure of the

billboard" before the township changed the ordinance.  *Id.* at 691.  Thus, the "substantial character of the preparatory construction work" was the nonconforming structure itself.  The Court does not find that preparing rebar for the foundation provides a basis for vested rights.

### c. Demolition of a Valuable Building

Plaintiff acknowledges that the demolition of old buildings cannot by itself create a vested right to new construction.  Plaintiff urges the Court to consider that a valuable and usable building was demolished as one of other factors.

Michigan law does not consider demolition of the structures on the land as a factor weighing in favor of finding vested rights.  Plaintiff obtained a building permit to demolish the building at 326 E. State Street (ECF No. 38-13 PageID.456-57).  Plaintiff completed that project without interference.  To the extent demolition of the prior structure was necessary for the new building, Michigan law considers the demolition to be preparation.  And, demolition does not establish a prior nonconforming use.  Demolition of the prior structure would be equally consistent with construction of a conforming structure.

### d.  Total Costs Incurred

Plaintiff argues it has expended considerable money, about $480,000 from the commencement of demolition through the date of the stop-work order.

The Michigan Supreme Court rejected a similar argument in *Dawley*.  The Court quoted an opinion from a state court in New York.  "Evidently the test in each case as to whether a holder of a permit has acquired vested rights is, not whether he has spent much or little in reliance upon it, but rather whether there has been any tangible change in the land itself by excavation and construction."  *Dawley*, 225 N.W. at 501 (quoting *Rice v. Van*

*Vranken*, 132 Misc. 82, 84, 229 N.Y.S. 32 (Sup. Ct. Schenectady Cty. 1928); *see. e.g., Soss v. Whiteford Twp.*, Nos. 278914 and 278915, 2007 WL 2892974, at *1-*2 (Mich. Ct. App. Oct. 4, 2007) (per curiam) (finding "numerous preparatory activities" did not establish that the work was of a substantial character for vested rights where the property owner had entered into a purchase agreement for the property, obtained financing, closed on the sale, contracted for engineering and architectural services with respect to constructing a building for retail fireworks sales: obtained a site-plan approval; entered into a contract for construction of the building; acquired various required permits; had a construction company make a prefabricated 5,000 square foot building offsite; commenced some preliminary grading, fencing, curbing and excavation work; obtained surveys and well-drilling services; and "put approximately $1.4 million into the project"). And, again, the construction work at the site that incurred these expenses did not create any nonconforming use.

### 3. Reliance

The permit itself does not create vested rights, rather the permit holder must have substantially relied on the permit before the law will recognize vested rights. *See Dingeman Advert.*, 223 N.W.2d at 691. The parties do not separately address the reliance element in the Joint Brief.

The record contains evidence that calls into question whether Plaintiff began construction in reliance on the land-use permit. Plaintiff obtained the land-use permit in July 2021. The excavation work for the foundation did not begin until November 2021 (ECF No. 38-17 Laureto Dep. at 44 PageID.483). Excavation began at that point not because of the land-use permit but in anticipation of the building permit, which Plaintiff obtained on

November 12, 2021. The parties took the deposition of Jonathan Laureto with REI Construction, the construction manager for the project. Laureto was asked about when the excavation of the pile caps began. He testified that "we knew the building permit was about to be issued. So we had them working about the same day. You can do that work prior to a permit -- a building permit being issued, so I don't remember if we had them a day or two ahead, a day or two behind the permit being issued" (*id.* at 44-45 PageID.483).

### C. Estoppel

Plaintiff argues that Defendant should be equitably estopped from requiring a § 28 vote on the building. Plaintiff contends it reasonably relied on the Implementation Policy and the permits issued by Defendant. Plaintiff argues it would be prejudiced because it has already sold units the building and because it has expended a considerable amount of money through the design and preconstruction processes. Plaintiff asserts that its efforts meet the test for exceptional circumstances. Defendant identifies a number of problems with Plaintiff's use of equitable estoppel (Joint Br. at 34-35 PageID.353-54).

Michigan courts do not recognize equitable estoppel as an independent cause of action. *New Prods. Corp. v. Harbor Shores BHBT Land Dev., LLC*, 953 N.W.2d 476, 484 (Mich. Ct. App. 2019) (quoting *Conagra, Inc. v. Farmers State Bank*, 602 N.W.2d 390, 405 (Mich. Ct. App. 1999)); *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 285 (Mich. Ct. App. 2006); *Charter Twp. of Harrison v. Calisi*, 329 N.W.2d 488, 493 (Mich. Ct. App. 1982) (citing *Dickerson v. Colgrove*, 100 U.S. 578 (1880)). Rather, the doctrine of equitable estoppel may "assist a party by precluding the opposing party from asserting or denying the

existence of a particular fact."  *Conagra, Inc.*, 602 N.W.2d at 405; *see, e.g., Hughes v. Almena Twp.*, 771 N.W.2d 453, 469-70 (Mich. Ct. App. 2009).

Many of the opinions in which Michigan courts discuss equitable estoppel in the context of a zoning dispute involve municipalities seeking to enforce an ordinance.  *See, e.g., Pittsfield Twp. v. Malcom*, 134 N.W.2d 166, 172 (Mich. 1965); *Howard Twp. Bd. of Trustees v. Waldo*, 425 N.W.2d 180, 185 (Mich. Ct. App. 1988) (per curiam); *Lyon Charter Twp. v. Petty*, 896 N.W.2d 477, 482 (Mich. Ct. App. 2016).  "In the context of property rights, 'estoppel may be invoked as an equitable defense where the plaintiff has observed the defendant dealing with his property in a manner inconsistent with his rights and makes no objection, while the defendant changes his position in reliance on the plaintiff's silence.'"  *New Prods. Corp.*, 953 N.W.2d at 485 (quoting *Thiel v. Goyings*, 939 N.W.2d 152, 172 n.37 (Mich. 2019) (Viviano, J. concurring)).

The general rule in Michigan is that municipalities will not be estopped from enforcing their zoning ordinances absent exceptional circumstances.  *See Fass v. City of Highland Park*, 39 N.W.2d 336, 340-41 (Mich. 1949) (where the plaintiff sought injunctive relief to compel the city to grant a license and sought to estop the defendant from "insist[ing] that the building ordinance does not permit the sale of live poultry at the location in question").

> Every person is presumed to know the nature and extent of the powers of municipal officers.  The rule extends when the parties labor under a mistake of fact as well as law, and has been held to apply even when the ordinance violator acts in good faith, expending money or incurring obligations, in reliance upon the official's acts.

*Grand Haven Twp. v. Brummel*, 274 N.W.2d 814, 816 (Mich. Ct. App. 1978) (all citations omitted). When a municipality files a lawsuit seeking an injunction to enforce its ordinance, a defendant can plead equitable estoppel and prove exceptional circumstances to defeat the injunctive relief sought. *See, e.g, Malcom*, 134 N.W.2d at 171-73; *Brummel*, 274 N.W.2d at 816-17.

The Court need not consider Plaintiff's equitable estoppel claim in any more detail. Defendant has not filed any counterclaim. Defendant has not sought to enforce the stop-work order in this proceeding. Plaintiff has not identified the fact that Defendant should be estopped from asserting or denying. Nor has Plaintiff connected that fact to one of its claims or an element of one of its claims. At this point, the Court need not consider whether the factual situation meets the test for exceptional circumstances.

### D. Fair, Adequate, Reasonable, and in the Public's Interest

Plaintiff offers several reasons that the proposed settlement would be in the public's interest. First, Plaintiff argues that public policy supports a presumption in favor of voluntary settlement of lawsuits. *See United States v. Lexington-Fayette Urban Cty. Gov't*, 591 F.3d 484, 490 (6th Cir. 2010). Second, Plaintiff argues that should it prevail, it could receive substantial damages and attorney fees. Third, Plaintiff has doubts that § 28 is valid and the settlement would eliminate an as-applied challenge. Finally, Plaintiff contends that "any negative public impact of the settlement is nearly negligible" (Joint Br. at 37 PageID.357).

Defendants argue that they made a reasonable choice to settle after conducting discovery and assessing the strengths and weaknesses of its legal positions. Defendants suggest that this Court could find that Plaintiff has vested rights, a decision that would have

financial consequences for Defendants.  Defendants also note that even if they prevailed on the vested rights issue, Plaintiff would still pursue its challenge to § 28, which would necessarily incur additional litigation costs.  Defendants reason that a settlement in this case would eliminate the challenge to § 28, which would support the public's interest in § 28.

The Court declines on this record to conclude that the proposed settlement is fair, adequate, reasonable and in the public's interest.

In the Court's assessment, the parties have understated the public's interest in this dispute.  A majority of the voters approved an amendment to the City's charter.  The citizenry now gets a say in the approval process for buildings that will exceed a certain height.  Also, the proposed settlement provides no mechanism for the citizens to voice their concerns about this particular agreement.  *See Pedreira*, 802 F.3d at 871.  Plaintiff may well be correct that few people would know that the roof top structures on this building exceed 60 feet.  Plaintiff's characterization mis-frames the proper inquiry.  The public's interest is the right to participate in the approval process through a vote.  At least part of Defendants' reasoning concerning § 28 is tenuous: by not enforcing § 28 for this project the City might enforce § 28 at some point in the future

The Court has no basis for evaluating Plaintiff's likelihood of success on any of its challenges to § 28.  The parties have not addressed that issue with sufficient detail.  And, the Court has no means of determining whether collateral estoppel or res judicata would apply because Judge Power's second opinion in 326 Land Company's challenge to § 28 in the state courts is not available to the Court.

The Court has reservations about whether the proposed settlement is fair.  The Court continues to have concerns about the possibility of collusion, concerns that the parties' Joint Brief does not resolve.  The Court views Defendants' willingness to settle in light of its concerns about the possibility of collusion.  Judge Power permitted third parties to intervene because of his concern that the City would not adequately defend the requirements of § 28.  This Court expressed the same concern when it ordered the parties to file additional information about this settlement.  Notably, Defendants did not file any Rule 12 motion.  Defendants of course are not required to do so, but the choice not to, in the Court's experience, is unusual.

The Court also has concerns about the reasonableness of the proposed settlement.  The Court appreciates the importance of assessing the risks involved in any lawsuit, including the costs of continued litigation and possibility of damages.  In most situations, the Court would be reluctant to interpose its own thoughts about the relative risks involved.  But, in this situation, the Court must consider those risks to determine the reasonableness of the choice to settle.  In the Court's view, based on the facts in the record and the Court's summary of state law, Defendants' position concerning vested rights appears much stronger than Plaintiff's position.  While the potential cost of losing might be high, the relative risk of losing is low.

Finally, the Court identifies several issues with the language in the proposed settlement, issues that relate to its adequacy.  First, the proposed settlement does not include any mechanism for the public to express its concerns about the manner in which the parties wish to resolve the dispute.  Because the settlement would not permit the public to vote on

the building, the public should be afforded an opportunity to weigh in on the proposed agreement.  Second, at least on the Court's review of the law and ordinances, it does not follow from the conclusion that Plaintiff has a vested right in a land-use permit that Plaintiff also has the "right to immediately resume work and to complete its project...."  Possession of a land-use permit does not allow the holder to begin construction.  Third, Plaintiff does not have a cause of action and has not requested any relief that would require Defendant City to "without unreasonable delay issue any additional approvals or permits as may reasonably be needed...."  Plaintiff challenged § 28 and the stop-work order.  Prevailing on its claims would not entitle Plaintiff to any other permit that might be necessary for the project.

## III.

The Court declines to approve the proposed settlement in this lawsuit.  The Court concludes the proposed settlement is not fair, adequate, reasonable and in the public's best interest.  In the Court's assessment of Michigan law, Plaintiff's claim to a vested right in a land-use permit will be difficult to establish.  Michigan Courts have not addressed whether a party can have a vested right in the sort of permit Plaintiff possessed.  The record suggests the excavation work at the site occurred not because of the land-use permit but in anticipation of a building permit.  The work at the site was merely preparatory.  And, the work did not amount to a non-conforming use because the foundation could be used for a conforming structure.  The proposed settlement ignores the public's interest enshrined in § 28.  The factual and legal concerns for Plaintiff's position on vested rights makes the City's decision to settle unreasonable.

## <u>ORDER</u>

For the reasons provided in the accompanying Opinion, the Court **DENIES** the proposed settlement agreement (ECF No. 35).  **IT IS SO ORDERED.**

Date:     April 21, 2023                /s/  Paul L. Maloney     
                                                                       Paul L. Maloney
                                                                       United States District Judge