**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

326 Land Company, a Michigan
limited liability company,

      Case No. 1:22-CV-45

      Plaintiff,

      Honorable Paul L. Maloney

V

City of Traverse City, a Michigan Home Rule
City, and Shawn Winter, City Planning Director,

      Defendants.

_____

Ross A. Leisman (P41923)
James F. Scales (P40639)
Mika Meyers, PLC
Attorneys for Plaintiff
900 Monroe Ave., NW
Grand Rapids, MI  49503
(616) 632-8000
jscales@mikameyers.com
rleisman@mikameyers.com

Peter B. Worden (P41899)
Garan Lucow Miller, PC
Attorneys for Defendants
3335 W. South Airport Rd., Ste. 5A
Traverse City, MI  49684
(231) 941-1611
*Direct Mail To:*
1155 Brewery Park Blvd, Suite 200
Detroit, Michigan 48207-1530
pworden@garanlucow.com

_____

**Defendants' Partial Motion for Summary Judgment as to Counts I, II, IV, V, and VI**
**of Plaintiff's Complaint, and for Plaintiff's Claims of Estoppel,**
**Pursuant to FRCP 56**

      **NOW COME** the Defendants, The City of Traverse City and Shawn Winter, by and

through their attorneys, Garan Lucow Miller, P.C., and for their Partial Motion for

Summary Judgment as to Counts I, II, IV, V, and VI brought Pursuant to FRCP 56, state

as follows:

1.      As set forth in more detail in the attached Brief in Support, Defendants are entitled to Partial Summary Judgement as to Counts, I, II, IV, V, and VI of Plaintiff's Complaint, for the reason that Plaintiff had not acquired "vested rights" to construct a building taller than 60 feet in the City of Traverse City as of the time that the City issued its Stop Work Order dated November 19, 2021.

2.      For the reasons set forth in more detail in the attached Brief in Support, Defendants are also entitled to summary judgment as to any claim Plaintiffs make for "estoppel," as equitable estoppel is only available as a defense and not as a cause of action.

3.      Concurrence in the relief sought by this motion was requested from opposing counsel and was declined, in a telephone discussion that took place on May 23, 2023.

**WHEREFORE**, the Defendants respectfully request that this Honorable Court grant this Partial Motion for Summary Judgment as to Counts I, II, IV, V, and VI, and as to Plaintiff's claims of "estoppel."

GARAN LUCOW MILLER, P.C.

Dated:  May 24, 2023                    By: _____

Peter B. Worden, Jr. (P41899)
Attorneys for Defendants

2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

326 Land Company, a Michigan
limited liability company,                    Case No. 1:22-CV-45

       Plaintiff,                    Honorable Paul L. Maloney

V

City of Traverse City, a Michigan Home Rule
City, and Shawn Winter, City Planning Director,

       Defendants.

_____

Ross A. Leisman (P41923)                    Peter B. Worden (P41899)
James F. Scales (P40639)                    Garan Lucow Miller, PC
Mika Meyers, PLC                            Attorneys for Defendants
Attorneys for Plaintiff                     3335 W. South Airport Rd., Ste. 5A
900 Monroe Ave., NW                         Traverse City, MI  49684
Grand Rapids, MI  49503                     (231) 941-1611
(616) 632-8000                              *Direct Mail To:*
jscales@mikameyers.com                      1155 Brewery Park Blvd, Suite 200
rleisman@mikameyers.com                     Detroit, Michigan 48207-1530
                                            pworden@garanlucow.com

_____

**Brief in Support of Defendants' Partial Motion for Summary Judgment as to Counts I, II, IV, V, and VI of Plaintiff's Complaint, and for Plaintiff's Claims of "Estoppel," Pursuant to FRCP 56**

**Certificate of Service**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...............................................................................ii

INDEX OF AUTHORITIES .................................................................iii, iv, v

FACTS ...................................................................................................... 1

A. General Background ............................................................................ 1

B.  Status of 326 Land's Project at the Time of the Stop Work Order ............................ 6

C.  Procedural History ............................................................................. 10

STANDARD OF REVIEW ............................................................................ 12

ARGUMENT ............................................................................................... 13

A.      Summary Judgment should be granted to Defendants as to Count I, Count II, Count IV, Count V, and Count VI of Plaintiff's Complaint, because Plaintiff lacked vested rights to a constitutionally protected property interest. .......................... 13

B.       Plaintiff has no viable claim for "estoppel." ........................................ 24

INDEX OF EXHIBITS ............................................................................ 27, 28

## <u>INDEX OF AUTHORITIES</u>

**Cases:**

*326 Land Co., LLC v City of Traverse City,* 2018 WL 4658932 (Michigan Court of Appeals No. 339755, September 27, 2018). ................................................................. 3

*Anderson v Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .................................................................................................. 12, 13

*Belvedere Twp. v Heinze,* 241 Mich App 324, 328 (2000) ........................ 20, 21, 22

*Bevan v Brandon Twp.,* 438 Mich 385, 401 (1991), citing and quoting from *Gackler v Yankee Springs Twp.,* 427 Mich 562, 573-574 (1986) ............................ 16, 20, 23

*Bisco's v Liquor Commission*, 395 Mich 706, 716 (1976) ...................................... 18

*Bloomfield Twp v Beardslee,* 349 Mich 296, 307-308 (1957) ........................... 21, 24

*Bonner v City of Brighton*, 495 Mich 209, 231 (2014), cert den 135 S.Ct. 230, 574 US 871, 190 L.Ed. 2d 134 (2014) ............................................................................... 15

*Celotex Corp. v Catrett,* 477 U.S. 317, 323, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)...................................................................................................... 13

*City of Ann Arbor, Michigan v Northwest Park Const. Corp.,* 280 F.2d 212, 215-216 (CA 6 1960) ........................................................................................................... 23

*City of Lansing v Dawley,* 247 Mich 394 (1929) ............................................ 17, 24

*Coalition for Government Procurement v Federal Prison Industries, Inc.,* 365 F.3d 435, 481 (CA 6 2004), citing *Maritrans Inc. v United States,* 342 F.3d 1344, 1352 (Fed. Cir. 2003) and quoting *Raceway Park, Inc. v Ohio,* 356 F.3d 677, 684 (CA 6 2004) ........ 14

*DeMull v City of Lowell,* 368 Mich 242 (1962) ................................................... 17

*Devlon Props., inc. v City of Boyne City,* No. 279188, 2008 WL 5273513, at *3 (Mich Ct App December 18, 2008) ............................................................................... 18

iii

*Dingeman Advertising, Inc. v Algoma Township,* 393 Mich 89 (1974) .......... 16, 17, 23

*Dorman v Township of Clinton,* 269 Mich App 638 (2006) ..................................... 15

*Dorr v City of Ecorse,* 305 Fed. Appx. 270, 275 (2008), citing *Silver v Franklin Twp. Bd. of Zoning Appeals,* 966 F. 2d 1031, 1036 (CA6 1992) ................................... 14, 16

*Edmund v Department of Corrections*, 143 Mich App 527, 533 (1985) ................... 15

*Ferencz v Hairston,* 119 F3d 1244, 1247 (CA 6 1997) ......................................... 13

*GMAC, LLC v Treasury Department*, 286 Mich App 365, 377 (2009), app den 486 Mich 961 (2010), quoting from *Cusick v Fieldpausch*, 259 Mich 349 (1932), in turn quoting *2 Cooley Constitutional Limitations*, 8 ed, p 749 ..................................................... 15

*Hamilton v Myers,* 281 F3d 520, 529 (CA 6 2002) .............................................. 13

*Hanlon v Civil Serv Comm'n,* 253 Mich App 710, 723 (2002) (citing *Williams v Hofley Mfg Co,* 430 Mich 603, 610 (1988) ......................................................................... 15

*Haye v Westfield Insurance Co.,* 194 Mich App 696, 704-705 (1992) ..................... 25

*Heath Twp v Sall,* 442 Mich 434, 440 (1993), quoting *Gackler,*   427 Mich at 574-575 ................................................................................................. 21, 22, 23

*Johnson Trust v Anderson* case, Nos 315397, 316024, 2014 WL 4087967 (Mich App 2014) ................................................................................................................ 18

*Pamela B Johnson Tr ex rel Johnson v Anderson,* No. 315397, 2014 WL 4087967, at *9 (Mich Ct App August 19, 2014) (quoting *Richardson v Twp of Brady,* 218 F3d 508, 518 (CA 6 2000) ....................................................................................................... 18

*Long v Liquor Control Commission,* 322 Mich App 60, 68 (2017) .......................... 15

*Lucas v S.C. Coastal Council,* 505 U.S. 1003, 1030, 112 S.Ct. 2886, 120 L.Ed.2d  798 (1992) ................................................................................................................ 14

iv

*Matsushita Elec. Indus. Co. v Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986, citing *First Nat. Bank of Arizona v Cities Servs. Co.,* 391 U.S. 253, 289, 88 S. Ct. 1575, 20 L.Ed.2d 569 (1968) .................................................... 12, 13

*Murphy-DuBay v Department of Licensing & Regulatory Affairs,* 311 Mich App 539, 557 (2015) ................................................................................................. 15

New York, *Rice v Van Vranken,* 132 Misc. Rep. 82, 229 N. Y. S. 32 ...................... 24

*Phillips v Wash. Legal Found,* 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (quoting *Bd. of Regents v Roth,* 408 U.S. 564, 577). ..................................... 14, 15

*Regents of State Colleges v Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ................................................................................................. 14

*Sandenburgh v Michigamme Oil Co.,* 249 Mich 372 (1930) ................................... 17

*Save Our Downtown v City of Traverse City,* -- N.W.2d --, 2022 WL 7724317 (Mich. Ct. App. No. 359536, October 13, 2022) ................................................................ 11

*Schenden v Addison Township,* 2004 WL 1908231 at *5 (Michigan Court of Appeals, August 26, 2004) .................................................................................... 16, 25

*Schubiner v West Bloomfield Twp.,* 133 Mich App 490, 500 (1984) ................. 17, 18

*Shamie v City of Pontiac*, 620 F.2d 118, 120 (CA6 1980), citing *Morse v Liquor Control Commission*, 319 Mich 52, 66 (1967) ............................................................... 18

*Tuscola Wind III v Ellington Township*, 2018 WL 3609550, (E.D. Mich, July 27, 2018) .............................................................................................................. 18

**Statutes:**

FRCP 56(a)  ............................................................................... 12, 13, 21

# I.    FACTS

## A.    General Background.

Plaintiff is the owner of property commonly known as 326 E. State Street, Traverse City, Michigan.  In 1999, the City of Traverse City enacted its current Zoning Ordinance. (Exhibit A, pertinent provisions of the Traverse City Zoning Ordinance, hereinafter referred to as "the TCZO").  It is undisputed that Plaintiff's property is classified within the City's zoning as C-4c, Regional Center District.  TCZO § 1346.06(a) provides the maximum building height for buildings in the C-4 District and states that the maximum building height is 60 feet and anything higher is only allowed by special land use permit; and that the maximum height allowed even with a special land use permit is 100 feet. (Exhibit A, TCZO § 1346.06(a)).  An additional 15 feet is allowed for rooftop mechanical equipment or elevator shafts, but not to exceed an overall height of 100 feet.  (Exhibit A, TCZO § 1368.01, ft. 5).

For purposes of the TCZO, "building, height of" and "height of building" are specifically defined by the ordinance at § 1320.07as follows:

> *Building, height of.*  See "height of building."
>
> *Height of building* means the vertical distance from the grade to the highest point on a mansard or flat roof or to the median height between the eaves and the ridge for gable. Hip and gambrel roofs.  (See Figure 1-3).

Figure 1-3 then provides drawings of examples of the method of measuring a building's height.  (Exhibit A, TCZO § 1320.07 and Figure 1-3).  The effect of this definition is that a building's height, for purposes of TCZO § 1346.06, does not include rooftop equipment

and appurtenances such as HVAC, elevator shafts, and stairwells; but a building cannot exceed an overall height of 100 feet per TCZO § 1368.01, ft. 5.

In the November 2016 general election, the voters of the City of Traverse City approved Proposition 3, which became part of the City's Charter, Chapter IV, Section 28 ("Section 28").   Section 28 requires affirmative voter approval of any proposed construction of a building with a height above 60 feet.  Section 28 does not, however, contain any language addressing how building heights should be measured.  (Exhibit B, City Charter, Chapter IV, Section 28).

On April 24, 2017, as part of a public process the City Commission adopted an Implementation Policy for Section 28.  The Implementation Policy provided:

> <u>Measurement</u>:  For purposes of determining whether the Charter Provision is triggered by a proposed building with a height above 60 feet, the methods of measuring building height contained in the Traverse City Zoning Ordinance shall be applied.

(Exhibit C, Implementation Policy).  Thus, the City announced that it would measure building heights in the same manner that it had always had under existing zoning.

Save Our Downtown (SOD), the community activist organization that had been behind the efforts to enact Section 28 and that had also been an active party participant in litigation challenging the legality of Section 28 that is described below, was very much aware of the adoption of the Implementation Policy; the City received from SOD's members and legal counsel communications which strongly endorsed the Implementation Policy.  (Exhibit D, Citizen Communications).

Further, the method of measuring building heights under the City's Zoning Ordinance and Implementation Policy were very common.  The City's Planning Director, and Defendant, Shawn Winter, testified in his deposition that the exclusion of rooftop

2

appurtenances from maximum height limitations is "pretty common practice."  (Exhibit E, Deposition Testimony of Shawn Winter, p. 8).  Subsequent to the adoption of the Implementation Policy, and prior to Plaintiff's project, three other building projects were commenced within Traverse City which each measured 60 feet in height, not including rooftop equipment and appurtenances, without a vote under Section 28.  There was no opposition or objection to these projects by SOD or anyone else.  They were all completed, or substantially completed, by the time the City issued its Stop Work Order to Plaintiff.  (Exhibit E, Winter dep., pp. 32-33; Exhibit F, Deposition Testimony of David Weston, City Planning and Zoning Administrator, pp. 10-12).

Plaintiff's original plan was to build a 10-story, 100 foot tall building on its property. Plaintiff initially challenged the legality of Section 28 in the Grand Traverse County Circuit Court, but that challenge was ultimately rejected as not being ripe before a vote was taken.  SOD had intervened in that case.  See *326 Land Co., LLC v City of Traverse City,* 2018 WL 4658932 (Michigan Court of Appeals No. 339755, September 27, 2018). Plaintiff then sought voter approval of its 100 foot tower, but the electorate rejected the project at the November 6, 2018 general election.

Next Plaintiff returned to Grand Traverse County Circuit Court and again challenged the legality of Section 28.  Plaintiff's Complaint in that action, Grand Traverse County Circuit Court Case No. 18-34701-CZ, is attached as Exhibit G.  In it, Plaintiff sought Declaratory Rulings and Relief under Due Process, alleging the following claims: (1) Request for Declaratory Judgment on the Validity of Proposition 3 on its face; (2) Violation of Due process: unauthorized charter amendment under Home Rules Cities Act; (3) Violation of Due Process: unauthorized charter amendment under Michigan Zoning

3

Enabling Act; (4) Violations of procedural due process: failure to provide notice and a meaningful hearing of property deprivation; (5) Request for Declaratory Judgment on Proposition 3 as applied to real property: unlawful downzoning; and (6) Request for declaratory judgment on proposition 3 as applied to real property: reverse spot zoning. (Exhibit G).

The City of Traverse City, joined by SOD as intervenor, successfully defended Plaintiff's challenge to Section 28. Following discovery and an exchange of dispositive motions, on June 25, 2019 Circuit Court Judge Thomas G. Power read his ruling from the bench denying Plaintiff's requests for summary disposition and granting the City's. (Exhibit H, Circuit Court's June 25, 2019 ruling). Judge Power's written order to that effect was entered on June 26, 2019 (Exhibit I). Plaintiff did not appeal this decision.

Next, Plaintiff applied for and received several permits associated with a new plan to construct a 5-story, 42-unit residential building. The permit pertinent to the present dispute is a Land Use Permit, Permit No. PLU21-0112, issued by the City on July 20, 2021 (Exhibit J). Because the new project did not involve a building measuring higher than 60 feet not including rooftop appurtenances (as called for in zoning and the Implementation Policy), neither Plaintiff nor the City considered at the time that it required an affirmative vote of the electorate. Plaintiff also eventually received a Building Permit from the County for the new construction on November 12, 2021 (Exhibit K).[1]

---

[1] In its Opinion and Order issued on April 21, 2023 (ECF No. 46), the Court noted on p.3, ft.6 that the County Building Permit referenced a 6 story building rather than the 5 stories referenced on the City Land Use Permit; and also that the two permits referred to different tax parcel numbers. The County apparently counts the planned rooftop deck of the building as a story, whereas the City does not. Also, the property has been divided into condominium units under one or more condominium master plans, resulting in different tax parcel numbers at the same location (see Exhibit L, Equalization records; Plaintiff is listed as the owner and the "Mikent, LLC" also referenced in the ownership information is Plaintiff's previous corporate name, hence "FKA"). One presumes that given space limitations on the permit forms, it wasn't possible to list all the parcel numbers and in either the applications or issuance process the

On July 21, 2021 – coincidentally, just the day after Plaintiff received its Land Use Permit from the City (Exhibit J) -- SOD filed a lawsuit in Grand Traverse County Circuit Court challenging the City's approval of the Innovo TC Hall project.  Similar to Plaintiff's new project, the Innovo TC Hall project had contemplated construction of a building measuring 60 feet in height if one did not include rooftop appurtenances.  Also similar to Plaintiff's new project, under the method of measuring building heights then in effect the City gave its approval to the Innovo TC Hall project without a vote under Section 28.

On November 10, 2021, Judge Power gave his ruling from the bench on cross-motions for summary disposition and found in favor of SOD in the Innovo TC Hall case.  (Exhibit M, transcript of Circuit Court's November 10, 2019 ruling).  Judge Power held that under the "plain language" of Section 28, rooftop equipment and appendages should be included in measuring a building's height and determining if an affirmative vote of the electorate is required (Id., pp. 69-70).  On the question of injunctive relief, Judge Power stated:

> Okay.  Well, I guess it's alleged that there was – could have been others – specifically 4front, that were approved in violation of the 60-foot limit – now, one of the things requested in the complaint is directing the City to reverse any prior grant of approval and/or permit for construction of a building in excess of 60 feet.  To the extent we're talking about anyone else's building, those people have not been part of this case and I don't think we can grant – there's lots of reasons to – because, like, for example, the building's already built; that that might not be proper, but we can't do that without them being part of the case.  Add an injunction prohibiting the City from approving buildings in excess of 60 feet without a vote of the public – I'll grant that.

(Id., pp. 74-75).

---

permits wound up referring to different available parcel numbers.  However, it is undisputed that Plaintiff owns the property and that the referenced permits were issued to Plaintiff for this property.

Judge Power's written Order in the Innovo TC Hall case was entered on November 18, 2021 (Exhibit N). The Order provides, in subparagraph B, that no part of a building – including rooftop equipment and appurtenances – is excluded in measuring building height for purposes of Section 28. Further, the Order provides at subparagraph D:

> The City, and its officials, employees and agents are enjoined from approving any proposal to construct a building with a height above 60 feet as measured herein, without first placing the proposal on the ballot and receiving the approval of the electors as required by Section 28. No building over 60 feet in height as measured herein shall be constructed, unless and until the requirements of Section 28 are complied with and satisfied.

The next day, November 19, 2021, the City issued a Stop Work Order to Plaintiff (Exhibit O). Referencing Judge Power's Order in the Innovo TC Hall case (Exhibit N), the Stop Work Order noted that Plaintiff's project also had features that exceeded 60 feet in height and that it had not been approved by a vote of the electorate. The Stop Work Order goes on to state:

> Therefore, the structural and foundation work approved under Land Use Permit PLU21-0112 [Exhibit J] is no longer valid and all associated work under that permit must cease and desist immediately until revised building plans consistent with Section 28 [Exhibit B] and the Judgment Order [Exhibit N] has been submitted and approved.

(Exhibit O; references to other Exhibits to this Brief added).

The City also appealed the Innovo TC Hall decision.

### B. Status of 326 Land's Project at the Time of the Stop Work Order.

Prior to receiving the Stop Work Order of November 18, 2021, Plaintiff had engaged in normal development preparation work such as engaging an architect and an engineer, as well as a construction manager (REI Construction). It is undisputed that Plaintiff had held a ground-breaking ceremony and had demolished an old law office building that had originally stood at the site.

6

In terms of actual tangible construction of the new building, however, Plaintiff had not completed any; Plaintiff was only at the verge of beginning the process of installing the new building foundation when the Stop Work Order was issued.

It is undisputed that due to soil conditions at the site the building was designed to be supported on several "auger cast" pilings, in engineered groupings and locations, on top of each of which would sit a concrete pad known as a "pile cap."  Each pile cap is of a specific size, location, and elevation specified by the building's engineered plans.

The first step in constructing the foundation was to excavate the holes in the dirt that would eventually be used to site the pilings and form the pile caps.  On some projects, site conditions are such that after this initial excavation a form is constructed inside the excavation (usually made of wood) in order to form the shape or mold for the poured concrete pile cap.  However, the soils at this project were firm enough that the excavations themselves could serve as the forms for the pile caps; no wooden or other man-made materials were ever used to make forms in the excavations for the pile caps (Exhibit P, Deposition Testimony of Jonathan Laureto, principal of REI Construction, p. 32; Exhibit Q, Deposition Testimony of David Moore, REI Construction project site superintendent, p. 11).

After an excavation or a series of excavations are made for the pile caps, the next step is to bring in a crane-mounted screw auger to drill a vertical shaft in the excavation to a depth that has been pre-determined by an engineer.  Re-bar is then placed in each shaft, and concrete is poured into the shafts to create the reinforced foundation pilings. At the top of the shafts, concrete is also poured into the pile cap excavations, forming a concrete "pile cap" atop each shaft or grouping of shafts.  (Exhibit P, Laureto, pp. 30-34).

7

Mr. Laureto further explained in his deposition that there wasn't enough room on the site to allow all the pile cap excavations to be done at once; so the plan was to do the excavations and create the pilings/pile caps on the perimeter of the site, then the crane would be relocated, and the remaining pile caps would be excavated and constructed. (Id., p. 31).

Tom McIntyre of 326 Land testified that these pile cap excavations have to be placed carefully in the exact locations called for by the engineer; they are verified by a surveyor as they are being created.  (Exhibit R, Deposition Testimony of Tom McIntyre, pp. 29, 33).

Mr. McIntyre thought that as of the time of the Stop Work Order only 6 pile cap excavations (out of a planned 318) had been dug.  (Id., p. 20).  REI Construction personnel likewise confirmed that only some, not all, of the pile cap excavations had been done at the time of the Stop Work Order.  (Exhibit P, Laureto, p. 33; Exhibit P, Moore, p. 10).

Mr. McIntyre claimed he did not know how many pilings had been poured by the Stop Work Order of November 18, 2021.  (Id., p. 20).  But Mr. Laureto of REI Construction remembered: **none**.  (Exhibit P, Laureto, pp. 33).  He recalled that at the time of the Stop Work Order they had dug some of the pile cap excavations and were still planning to drill and pour the first piling, but they had not yet got to the point that the first piling shaft had been drilled with the screw auger.  (Id., pp. 33, 34).  He confirmed that **no borings had been made**, and **no pilings had been created**, by the time the Stop Work Order was received.  (Id.)

8

Overall, testimony from Plaintiff's contractor established that some (but not all) of the pile cap excavations had been dug (Id., p. 33; Exhibit Q, Moore, p. 10); re-bar to be used in forming the pilings had been delivered to the site (Id.); and both Mr. Laureto and Mr. Moore recalled that components of the crane used to support the screw auger and pour the pilings and pile caps were on site, but they differed in their recollections of whether the crane had been actually set up by the time of the Stop Work Order (Exhibit P, Laureto, p. 25; Exhibit Q, Moore, p. 8).

The City's Planning and Zoning Administrator, David Westin, testified in deposition that he passed by the site several times during his regular commute.  (Exhibit F, Weston, p. 39).  He did not recall seeing any cranes present on site prior to the Stop Work Order; though he also acknowledged he wasn't saying they weren't there.  (Id., p. 40).  He did not recall seeing any excavations.  (Id., p. 41).

The City's Planning Director, Defendant Shawn Winter, testified that he went by the site approximately 3-4 times a week during his regular commute which he does on his bicycle.  Mr. Winter testified he does not remember seeing a crane or any re-bar on site around November 18, 2021.  (Exhibit E, Winter, p. 23).  He did see earth being moved around and some excavation, but conceded he would not have recognized it as work for a foundation.  (Id., p. 24).  He did not recall seeing any surveyors on site.  He did not see any activity that he would associate with the laying of a foundation, such as cement trucks. (Id., p. 25).

Years before, Plaintiff had given permission to a neighboring property owner -- coincidentally, REI Construction – to excavate on Plaintiff's property in order to put in the foundation for the neighbor's building.  The foundation actually sits partly on Plaintiff's

property and was designed to support both the neighbor's building and Plaintiff's building, when it was ultimately constructed.  This was in 2017, back when Plaintiff was still contemplating building a 100 foot tall building.  (Exhibit R, McIntyre, pp. 35-37).

This common foundation aspect was put in because there was concern that Plaintiff's project might damage the neighbor's foundation.  (Id., p. 38).  It was put in deeper than the neighbor needed because of the need to support the greater weight of Plaintiff's then-planned 100 foot building, which was much taller and which also at the time was contemplating underground parking.  (Id., p. 39).  Again, this common foundation aspect was put in in 2017, when Plaintiff was still contemplating a 100 foot tall building (a project Plaintiff ultimately abandoned).  (Id., p. 40).

### C.    Procedural History

Plaintiff filed this lawsuit on January 18, 2022 (ECF No. 1).  In Count I, Plaintiff claims that the Stop Work Order violates procedural due process under the 14th Amendment and violates the just compensation clause of the 5th Amendment.  Plaintiff contends it had vested rights in constructing the proposed building.  Count II claims that Section 28 violates substantive due process under the 14th Amendment.  Count III claims that Section 28 violates the Equal Protection Clause of the federal and state constitutions.  Count IV claims the Stop Work Order violated the due process clause.  Count V alleges a due process claim based on perceived conflicts between Section 28 and the Zoning Ordinance.  And Count VI alleges a takings claim under the 5th Amendment.  Essentially, Counts I, IV and VI challenge the Stop Work Order; Counts II and III revisit Plaintiff's previously unsuccessful effort to challenge Section 28; and Count V addresses both.

The parties submitted a Joint Status Report to this Court advising the Court that they considered the permit denial/stop work order/vested rights issues related to the Stop Work Order were of primary importance and proposing to bifurcate and focus discovery and potential settlement discussions and motions on those issues first.  (ECF No. 18, pp. 3-4).  After discussion of this proposal with the Magistrate Judge at the status conference of April 11, 2022 (ECF No. 20), the Magistrate Judge issued an Initial Case Management Order limiting discovery to those issues.  (ECF No. 21).

After conducting the initial discovery on the vested rights issue, the parties initially conferred and were able to reach a settlement agreement which called for entry of a proposed stipulated settlement order (ECF No. 35).  As the Court is aware, it ultimately declined to sign that proposed order on April 21, 2023 (ECF No. 46).

In the meantime, the Innovo TC Hall case has been working its way through the Michigan appellate courts. On October 13, 2022 the Michigan Court of Appeals issued an opinion affirming in part and reversing in part Judge Power's decisions (Exhibits M and N).  *Save Our Downtown v City of Traverse City,* -- N.W.2d --, 2022 WL 7724317 (Mich. Ct. App. No. 359536, October 13, 2022).  The Court concluded that the Zoning Ordinance, TCZO § 1320.07, provides the method for measuring the height of a building and rooftop equipment and other appurtenances are not included in the measurement.  However, the Court also found that Innovo TC Hall's building had features which were in excess of 60 feet, and which were *not* properly considered to be rooftop equipment or other appurtenances – they were a part of the actual structure.

SOD has appealed the Court of Appeals' decision in Innovo TC Hall to the Michigan Supreme Court.  That application remains pending as of the time of this writing.

As this Court is aware, it requested that these parties submit supplemental briefs addressing whether the Court of Appeals decision in Innovo TC Hall rendered this case moot (ECF No. 41).  Both parties did so (ECF No.s 42 and 43), both advising that the Court of Appeals decision does not become binding until the Michigan Supreme Court denies leave to appeal or affirms the decision, MCR 7.215(F)(1), and also that Plaintiff's proposed structure likewise has elements that exceed the 60 foot height but which aren't now considered rooftop appurtenances in light of the appellate court's decision.[2]

## II.    STANDARD OF REVIEW

Under FRCP 56(a), summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  A genuine dispute of a material fact only exists when there are "disputes over facts that might affect the outcome of the suit under the governing law."  *Anderson v Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine dispute as to any material fact.  *Matsushita Elec. Indus. Co. v Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986, citing *First Nat. Bank of Arizona v Cities Servs. Co.,* 391 U.S. 253, 289, 88 S. Ct. 1575, 20 L.Ed.2d 569 (1968).

---

[2] This Court had questioned, at ft. 5 on page 7 of its April 21, 2023 Opinion and Order (ECF No. 46), whether Judge Power's decision was effective pending completion of the appellate process due to MCR 7.114(C).  However, MCR 7.114(C) is in the section of the Michigan Court Rules that govern appeals to the circuit court from a lower court and the "judgment" it is referring to is the circuit court's judgment on appeal; see MCR 7.14(B).  MCR 7.215(F)(1) is in the section governing appeals to the Court of Appeals, and it specifically provides that the Court of Appeals ruling is not effective until the Michigan Supreme Court has addressed the case.  Both court rules must be read in connection with MCR 7.209, which specifically provides that an appeal to the Court of Appeals does *not* stay the enforceability of the order of the "trial court" absent a stay order; MCR 7.108 has a similar provision applicable to appeals to the circuit court.  There would be no reason to require a stay order if the circuit court order is not effective.  Judge Power's decision in Innovo TC Hall is therefore, at least at this time, the effective order in that case and the effective rule of law in Traverse City.

In a FRCP 56(a) motion the moving party bears the initial burden of showing the absence of any genuine issue of material fact, but if the moving party does not have the burden of proof at trial it can meet this burden by showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v Catrett,* 477 U.S. 317, 323, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The non-moving party must do more than merely show there is some "metaphysical doubt as to the material facts," and cannot simply rest on its allegations or denials, but rather must come forth with specific facts showing there is a genuine issue for trial.  *Matsushita,* 475 U.S. at 586.

In considering a FRCP 56(a) motion, the Court's role is not "to weigh the evidence and determine the truth of the matter," but rather, to determine if there is a genuine issue for trial.  *Anderson,* 477 U.S. at 249.  While all inferences should be drawn in the light most favorable to the non-moving party, *Matsushita,* 475 U.S. at 587, "the mere existence of a scintilla of evidence" in support of the nonmoving party will be insufficient to defeat the motion; if there is insufficient evidence on which a trier of fact can reasonably find in favor of the non-moving party, the motion must be granted.  *Anderson,* 477 U.S. at 252.

## III.    ARGUMENT

**A.    Summary Judgment should be granted to Defendants as to Count I, Count II, Count IV, Count V, and Count VI of Plaintiff's Complaint, because Plaintiff lacked vested rights to a constitutionally protected property interest.**

Counts I, II, IV and V of Plaintiff's complaint are all predicated on alleged violations of the due process protections provided by the 14th Amendment of the United States Constitution.  In order to successfully maintain a claim of denial of due process, Plaintiff is required to establish the existence of a protected property interest.  *Hamilton v Myers,* 281 F3d 520, 529 (CA 6 2002); *Ferencz v Hairston,* 119 F3d 1244, 1247 (CA 6 1997).  In

determining whether a property owner has established a vested property interest under due process, a federal court looks to substantive state zoning laws. *Dorr v City of Ecorse,* 305 Fed. Appx. 270, 275 (2008), citing *Silver v Franklin Twp. Bd. of Zoning Appeals,* 966 F. 2d 1031, 1036 (CA6 1992).

Counts I and VI also allege a "takings" claim under the 5th Amendment of the United States Constitution.  The first step in evaluating a "takings" claim is to examine whether the plaintiff has established a cognizable "property interest" for the purposes of the 5th Amendment's Just Compensation clause. *Coalition for Government Procurement v Federal Prison Industries, Inc.,* 365 F.3d 435, 481 (CA 6 2004), citing *Maritrans Inc. v United States,* 342 F.3d 1344, 1352 (Fed. Cir. 2003) and quoting *Raceway Park, Inc. v Ohio,* 356 F.3d 677, 684 (CA 6 2004) ("[T]here is no taking if there is no private property in the first place.")  In determining whether such a property interest exists:

> .  .  .  the Constitution neither creates nor defines the scope of property interests compensable under the Just Compensation Clause. *See Bd. of Regents of State Colleges v Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  Rather, "existing rules and understandings" and "background principles" derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking. *Lucas v S.C. Coastal Council,* 505 U.S. 1003, 1030, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

*Coalition for Government Procurement*, supra.  The Federal 6th Circuit noted in *Raceway Park,* supra: " "Because the Constitution protects rather than creates property interests, the existence of property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.' 356 F. 3d at 682, citing *Phillips v Wash. Legal Found,* 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (quoting *Bd. of Regents v Roth,* 408 U.S. 564, 577).

14

Michigan courts have long recognized that one who asserts a "takings" claim must first establish that a vested property right is affected.  *Long v Liquor Control Commission,* 322 Mich App 60, 68 (2017).  In *Dorman v Township of Clinton,* 269 Mich App 638 (2006), a developer claimed that a township's rezoning of his property constituted a "taking."  At 649-50, the Court rejected the developer's takings claim on the basis that the developer had not established a vested property interest.

Thus, for both Plaintiff's "due process" and "takings" claims, Plaintiff must establish that it had acquired a vested property interest; and we must look to state law to see if such a property interest in fact exists.

Under Michigan law, in order to obtain a "vested property interest" or right which is constitutionally protected, a person must have more than an abstract need, desire, or unilateral expectation of it; they must have a legitimate claim of entitlement to it.  *Bonner v City of Brighton*, 495 Mich 209, 231 (2014), cert den 135 S.Ct. 230, 574 US 871, 190 L.Ed. 2d 134 (2014), *Edmund v Department of Corrections*, 143 Mich App 527, 533 (1985).  See also *Roth,* 408 U.S.  at 577.  The person must likewise possess "more than a unilateral expectation" of the benefit.  *Id., Murphy-DuBay v Department of Licensing & Regulatory Affairs,* 311 Mich App 539, 557 (2015).  Rather, the individual must "have a legitimate claim of entitlement."  *Id.*; *Hanlon v Civil Serv Comm'n,* 253 Mich App 710, 723 (2002) (citing *Williams v Hofley Mfg Co,* 430 Mich 603, 610 (1988).

Expectation that the laws are not subject to change is also not a vested property interest.  As was stated in *GMAC, LLC v Treasury Department*, 286 Mich App 365, 377 (2009), app den 486 Mich 961 (2010), quoting from *Cusick v Fieldpausch*, 259 Mich 349 (1932), in turn quoting *2 Cooley Constitutional Limitations*, 8 ed, p 749:

> "[a] right cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another."

Accordingly, ". . . [a] vested right cannot be premised on an expectation that general laws will continue and certainly cannot be premised on the continuation of tax law." *Id.*

Logically, there is no reason that this same principal would not apply to an ordinance that is effectively changed by judicial decree, which is precisely what happened with Judge Power of the Grand Traverse County Circuit Court ruled in the Innovo TC Hall case that the City's long-standing method of measuring building heights under its zoning ordinance violated Section 28.

This nature of a vested property right was explained in *Bevan v Brandon Twp.,* 438 Mich 385, 401 (1991), citing and quoting from *Gackler v Yankee Springs Twp.,* 427 Mich 562, 573-574 (1986):

> "' A prior nonconforming use is a vested right to continue the lawful use of real estate in the manner it was used prior to the adoption of a zoning ordinance.'  A zoning ordinance cannot operate to oust the property owner of his vested right even though the ordinance is reasonable.  'An ordinance requiring immediate cessation of a nonconforming use may be held to be unconstitutional because it brings about a deprivation of property rights out of proportion to the public benefit obtained . . .'"

(citations omitted).

Under Michigan law, it is well established that possession of a valid building permit coupled with substantial reliance thereon, including actual construction, will bestow vested property rights to a non-conforming structure.  *Dorr, supra.,* citing *Dingeman Advertising, Inc. v Algoma Township,* 393 Mich 89 (1974), and *Schenden v Addison Township,* 2004 WL 1908231 at *5 (Michigan Court of Appeals, August 26, 2004).

16

Specifically, a property owner acquires a vested property interest in a prior nonconforming use where the property owner has (1) made substantial physical improvements to the land (2) pursuant to a validly issued permit.  *Dingeman, supra.* at 98-99, and *Schubiner v West Bloomfield Twp.,* 133 Mich App 490, 500 (1984) ("Under all the cases cited herein a building permit, or its counterpart, a permit to commence operations, is the *sine qua non* for obtaining "vested rights."  .  .  .  Furthermore, the grant of a permit to build does not in itself confer on the grantee "vested rights."  Actual construction must commence [citing *City of Lansing v Dawley,* 247 Mich 394 (1929) and *DeMull v City of Lowell,* 368 Mich 242 (1962)].  The making of preparatory plans, landscaping and the removal of an existing structure is not sufficient.  [Citing *Sandenburgh v Michigamme Oil Co.,* 249 Mich 372 (1930)])."

Although the majority opinion in *Dingeman* states that "[a]t the very least, all actions which have been undertaken and completed by the holder of the permit . . . must be considered," the specific action considered by the court as establishing vested rights was construction of the frame of a billboard off site, 393 Mich at 98-99.  Thus *Dingeman* should not be read as abrogating or minimizing the requirement of substantial physical improvements, or advocating that mere preparations and expenditures can create vested rights.  That *Dingeman* was actually consistent with the standard described above was extensively discussed and analyzed by the *Schubiner* court, 133 Mich App at 499-500).

In its Opinion and Order of April 21, 2023 (ECF No. 46), this Court noted that the parties had not identified any legal authority where a court found that a party had vested rights to a land-use permit.  There does not appear to be any prior authority on that specific question, at least in the context of this case.

But generally, it has been held that there is "no protected property interest" in the zoning application procedures themselves.  See *Pamela B Johnson Tr ex rel Johnson v Anderson,* No. 315397, 2014 WL 4087967, at \*9 (Mich Ct App August 19, 2014) (quoting *Richardson v Twp of Brady,* 218 F3d 508, 518 (CA 6 2000).  If a governmental entity has discretion in its decision making, the landowner lacks a claim of entitlement.  *Id.*

And it has been held that a liquor license applicant does not enjoy due process protection, even where there was a claimed agreement that the applicant would receive a license.  *Shamie v City of Pontiac*, 620 F.2d 118, 120 (CA6 1980), citing *Morse v Liquor Control Commission*, 319 Mich 52, 66 (1967), and *Bisco's v Liquor Commission*, 395 Mich 706, 716 (1976).

The *Johnson Trust v Anderson* case, Nos 315397, 316024, 2014 WL 4087967 (Mich App 2014) (Exhibit S) considered a SLUP and concluded that consideration of whether to issue a SLUP was entirely discretionary and therefore a property owner does not have a constitutionally protected property interest in obtaining a SLUP.  Similarly, in *Tuscola Wind III v Ellington Township*, 2018 WL 3609550, (E.D. Mich, July 27, 2018) (Exhibit T), the federal United States District Court applying Michigan law held that there is no protected property interest in the SLUP application procedures themselves.

Michigan courts have, moreover, rejected the vesting of construction or use rights in pre-construction permits.  In *Schubiner,* supra. at 50 the Michigan Court of Appeals declined to find vested rights in a site plan.  Quoting that holding, the Court of Appeals later declined to find vesting rights in a zoning permit.  *Devlon Props., inc. v City of Boyne City,* No. 279188, 2008 WL 5273513, at \*3 (Mich Ct App December 18, 2008). (Exhibit U).

18

However, even assuming *arguendo* that such vested rights in a land use permit *could* exist, logically there is no reason that they would then be analyzed any differently than they are in the case of issued building permits.

In this case, there is no disputing that 326 Land had been issued all the necessary permits allowing it to proceed with its construction.  This includes the City's Land Use Permit No. PLU21-0112, authorizing the construction of a 5-story, 42-unit residential structure and issued on July 20, 2021.  The necessary permits having been issued prior to Judge Power's ruling and the Stop Work Order of November 18, 2021, the question becomes whether there were "substantial physical improvements" made in reliance on the Land Use Permit.

Here, the evidence is clear the Plaintiff did not make *any* physical improvements in reliance on the Land Use Permit.  The Land Use Permit was issued in July of 2021, but excavation work for the foundation did not begin until November 2021.  (Exhibit P, Laureto, p. 44).  And it was done then in specific anticipation that the building permit was about to be issued by the County.  (Id., pp. 44-45).

Also, one should bear in mind that the Innovo TC Hall litigation was a public proceeding that any astute developer of a building approaching 60 feet in Traverse City would reasonably have been aware of.  Mr. McIntyre acknowledged being aware of it when it was mentioned in local media (Exhibit R, McIntyre, p. 12), though he claimed he didn't bother to follow it.  The Innovo TC Hall litigation was prominently featured in at least on article on a local internet media outlet, The Ticker, in an article dated October 12, 2021 (Exhibit V).  If Plaintiff was truly relying on the City's Land Use Permit, one would think Plaintiff would have at least noticed a related legal challenge to a similar permit.

19

Michigan law is clear that "substantial physical improvements" involves something more than just *any* construction activity.  Again, citing and quoting verbatim from *Gackler, supra.,* at 574-575, the Michigan Supreme Court stated in *Bevan, supra.*:

> "[t]o establish a nonconforming use, 'there must be work of a 'substantial character' done by way of preparation for an actual use of the premises.' The actual use which is nonconforming must be apparent and manifested by a tangible change in the land, as opposed to intended or contemplated by the property owner.  In this regard, preliminary operations such as ordering of plans, surveying the land, and the removal of old buildings are insufficient to establish a nonconforming use.  *The test in each case is not whether a little or a lot has been spent in reliance upon the past zoning classifications, but, rather, 'whether there has been any tangible change in the land itself by excavation and construction.'*"

(citations omitted, emphasis added in the original quotation).

In addition, in *Belvedere Twp. v Heinze,* 241 Mich App 324, 328 (2000) the Michigan Court of Appeals stated:

> [T]o establish a prior nonconforming use, a property owner must engage in work of a substantial character done by way of preparation for actual use of the premises.  The work of substantial character must be toward the actual use of the land for the nonconforming purpose.  The actual use that is nonconforming must be apparent and manifested by a tangible change in the land, as opposed to intended or contemplated change by the property owner.  Thus, to constitute a legally cognizable nonconforming use, work of a substantial nature beyond mere preparation must materially and objectively change the land itself.

(citations omitted).

At the same time, Michigan law is also clear that a precise, quantitative analysis of just how much construction is enough construction is not possible or required:

> [W]e cannot state a comprehensive formula.  Each case must stand on its own facts.  It is recognized that every zoning regulation involves some impairment of rights.  Whether the rights have attained a status so sacred, so inviolate, that they rise above the legislative command, i.e., that the owner has a 'vested' right in some particular use, involves a balancing of factors, a determination as to whether the owner's interest is so substantial that its destruction cannot reasonably be justified in light of the accomplishment of

20

the objectives of the ordinance.  It is not a matter susceptible to precise quantitative measurement, so many feet excavated, so many trucks ordered, or so many men hired.

*Bloomfield Twp v Beardslee,* 349 Mich 296, 307-308 (1957).

At the outset, there is an obvious question of fact as to whether Plaintiff had in fact excavated any pile cap holes at the time of the Stop Work Order.  Plaintiff's claims that they had equipment and crews on site making exacting and precisely located excavations for the pile caps is belied by the deposition testimony of City personnel, who saw no such equipment or activities even though they frequently passed by the site on their bicycles during their regular commutes.  And REI Construction's personnel could not agree on whether the crane had been set up.

But even if we assume every reasonable inference in favor of the Plaintiff, as we must in considering a motion brought under FRCP 56(a), there is no question at all on the material fact: Plaintiff had at most only excavated a few of the pile cap excavations.  No borings had been done, no concrete had been poured, and no concrete pilings or pile caps had been constructed.  In terms of actual, tangible physical construction, Plaintiff had at most dug some holes.

Not all physical construction activities can lead to a vested right.  Recall the holding in *Belvedere Twp, supra.,* requiring that '[T]he work of substantial character must be toward the actual use of the land for the nonconforming purpose.  *The actual use that is nonconforming must be apparent and manifested by a tangible change in the land . . . "* (Emphasis added).  Where the construction activities improve a property in a manner consistent with both conforming and nonconforming uses, the construction does not create vested rights in the nonconforming use.  *Heath Twp v Sall,* 442 Mich 434, 440

(1993), quoting *Gackler*, 427 Mich at 574-575.  See also *Belvedere Twp,* supra at 329-330, concluding that construction of a manure pit and sewer system that would support a thousand pigs did not create vested rights because it would be "equally useful for a lawful, conforming use, such as the operation of a hog farm that does not qualify as a concentrated livestock operation."

The terms "actual" and "apparent and manifested" means the nonconforming use has to physically exist.  An excavation, even a very precisely and carefully placed one, is not by itself an apparent and manifested tangible change in the land which constitutes an actual, nonconforming use.   An actual, apparent, and manifested nonconforming use in this case, in the form of a tangible change in the land, would have to be an actual physical construct – *i.e.*, a physical improvement – toward a building with a rooftop at 60 feet plus appendages extending above that.  And that did not exist at the time of the Stop Work Order; no part of the nonconforming structure had yet been constructed.  At most, excavations had been made in *preparation* of the construction of an actual physical improvement that would have become the nonconforming use.

Although creating the pile caps was a necessary first step in constructing a building 60 feet tall with rooftop appendages extending beyond that, both Mr. McIntyre and Mr. Laureto conceded the obvious point: *that the same work done as of the time of the Stop Work Order could also be used to support a shorter building that complied with Judge Power's ruling*.  (McIntyre deposition, p. 43; Laureto deposition, p. 58).  This reinforces that the pile caps were not, by themselves, a sufficient manifestation of the nonconforming use.  Rather, the "improvements" completed by the time of the Stop Work Order were consistent with both a conforming use (i.e., a shorter building) and the nonconforming use

22

(a taller building) – which, as explained in *Heath Twp*, 442 Mich at 440 and *Gackler*, 427 Mich at 574-575, is not sufficient to create vested rights in the nonconforming use.

The foundation that was at least partially installed in 2017 and was "shared" with a neighbor could also logically be used to support a shorter building, and as such did not create vested rights.  Also the shared foundation was not installed in reliance on the 2021 Land Use Permit; it was previously installed when the plan was to build a 100 foot tall tower, a plan the Plaintiff ultimately abandoned.  It was not installed in anticipation of the project Plaintiff received permits for in 2021.

It is expected that Plaintiff will contend it had specialty equipment on site.  Even assuming this is true, this falls into the category of preliminary or preparatory activities that do not give rise to vested rights.  See *City of Ann Arbor, Michigan v Northwest Park Const. Corp.,* 280 F.2d 212, 215-216 (CA 6 1960).

The re-bar Plaintiff alleges it had on site also, obviously, could have been used to construct a foundation for a shorter building.  *Dingeman Advertising,* supra., in particular does not stand for the proposition that gathering building materials constitutes substantial construction.  In *Dingeman,* the "substantial construction" was the actual construction of the billboard off site.

Michigan law likewise does not consider demolition of existing structures on the land to create vested rights.  *Gackler, supra.,* at 574-575.  Thus, Plaintiff's demolition of the previous law office is immaterial to this inquiry.

Finally, it is expected Plaintiff will reference its considerable financial investment in its project.  Setting aside for the moment the question of whether it was reasonable for Plaintiff to make that investment after SOD filed the Innovo TC Hall case, the same

consideration as a potential factor in creating vested rights was specifically rejected by the Michigan Supreme Court as far back as 1929 in *Dawley,* supra., 247 MIch 394.  Citing and quoting a case out of New York, *Rice v Van Vranken,* 132 Misc. Rep. 82, 229 N. Y. S. 32, the *Dawley* court concluded that what counts for vested rights is "not whether he has spent much or little in reliance upon it, but rather whether there has been any tangible change in the land itself by excavation and construction."

None of the "construction activities" Plaintiff is able to advance is sufficient to establish vested rights.  It may seem harsh that a change in the law presents a financial hardship on 326 Land, but as noted in *Bloomfield Twp,* supra. at 544, "such is often the effect of zoning ordinances.  It is a hardship that must be borne in the light of the public good."

There being no vested rights at issue in this case, Plaintiff's claims under "due process" and "takings" – Counts I, II, IV, V, and VI of Plaintiff's Complaint – must fail. There being no genuine issue of material fact on the issue of vested rights, summary judgment as to these Counts should therefore be granted to Defendants.

### B.   Plaintiff has no viable claim for "estoppel."

In prior briefing Plaintiff has frequently argued that the City was barred from issuing the Stop Work Order due to "estoppel."  It is decidedly unclear where this claim of "estoppel" fits within the claims raised by Plaintiff's complaint, because Plaintiff's complaint nowhere references a claim based on "estoppel."  (ECF No. 1).  Nonetheless, the City Defendants will address them here.

Even if Plaintiff were to properly plead a claim of "estoppel," it has no application here.  Generally, equitable estoppel is only available as a defense and not as a cause of

24

action.  *Haye v Westfield Insurance Co.,* 194 Mich App 696, 704-705 (1992); see also

*Schenden v Addison Twp.,* 2004 WL 1908231 (unpublished opinion of the Michigan Court

of Appeals dated August 26, 2004), recognizing in a zoning dispute case that equitable

estoppel is a defensive measure only.  Many of the cases in which Michigan courts

discuss equitable estoppel in the context of a zoning dispute involve municipalities

seeking to enforce an ordinance, as recognized by this Court recently in its Opinion and

Order dated April 21, 2023 (ECF No. 46, p. 23).  In this case, the City has not filed any

counterclaim and has not sought to enforce the Stop Work Order.

Even if estoppel applies, the City believes the claim cannot be maintained here.

Presumably Plaintiff would argue the City should be "estopped" from applying a method

of measuring building heights different than what was set forth in the City's

Implementation Policy and Zoning Ordinance.  However, this method of measurement

had been a part of City policy for decades.  It remained that way consistently until Judge

Power's ruling in the Innovo TC Hall case.  Judge Power's ruling changed the

measurement rule, and going forward from that point the City adopted (pending its

ongoing appeal) the new measurement rule ordered by the judge.

But the City's representations regarding the measurement rule up until Judge

Power's ruling were true, and the City's representations regarding the rule since Judge

Power's ruling have also been true.  Judge Power's ruling simply amounts to a new fact,

a change in circumstances.

If estoppel applied in these circumstances, then basically any landowner could

claim he or she is exempt from any change in zoning rules or other legal requirements,

because the municipality would always be "estopped" from enforcing the change in the law.  This would be patently absurd.

Since a claim of estoppel does not apply to these circumstances, then summary judgment should be granted to the City defendants on this claim as well, assuming the Court concludes that Plaintiff in fact plead such a claim.

GARAN LUCOW MILLER, P.C.

Date: May 24, 2023            By:_____
                                   Peter B. Worden, Jr. (P41899)
                                   Attorneys for Defendants


## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF, which will send notification of such filing to the following:  All ECF Attorney(s) of Record on this case.

GARAN LUCOW MILLER, P.C.

By:_____
      Peter B. Worden, Jr. (P41899)
      Attorneys for Defendants

26

## **INDEX OF EXHIBITS**

| **Exhibit** | **Description** |
|---|---|
| A | Pertinent provisions of the Traverse City Zoning Ordinance (TCZO) |
| B | City Charter, Chapter IV, Section 28. |
| C | Implementation Policy |
| D | Citizen Communications |
| E | Deposition Testimony of Shawn Winter |
| F | Deposition Testimony of David Weston |
| G | Plaintiff's Complaint in prior action, Grand Traverse County Circuit Court Case No. 18-34701-CZ |
| H | State Court's June 25, 2019 ruling in prior action |
| I | State Court's June 26, 2019 Order in prior action |
| J | Land Use Permit, Permit No. PLU21-0112, issued by the City on July 20, 2021 |
| K | Building Permit from the County for the new construction issued on November 12, 2021 |
| L | Equalization records |
| M | Transcript of Circuit Court's November 10, 2019 ruling |
| N | State Court's November 18, 2021 Order in the Innovo TC Hall case |
| O | Stop Work Order dated November 19, 2021 |
| P | Deposition Testimony of Jonathan Laureto |
| Q | Deposition Testimony of David Moore |
| R | Deposition Testimony of Tom McIntyre |

S        *Johnson Trust v Anderson*, Nos 315397, 316024, 2014 WL 4087967 (Mich App 2014)


T        *Tuscola Wind III v Ellington Township*, 2018 WL 3609550, (E.D. Mich, July 27, 2018)

U        *Devlon Props., inc. v City of Boyne City,* No. 279188, 2008 WL 5273513, at *3 (Mich Ct App December 18, 2008)

V        The Ticker article dated October 12, 2021