**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

326 Land Company, a Michigan
limited liability company,

      Plaintiff,

V

City of Traverse City, a Michigan Home Rule
City, and Shawn Winter, City Planning Director,

      Defendants.

Case No. 1:22-CV-45

Honorable Paul L. Maloney

_____

Ross A. Leisman (P41923)
James F. Scales (P40639)
Mika Meyers, PLC
Attorneys for Plaintiff
900 Monroe Ave., NW
Grand Rapids, MI  49503
(616) 632-8000
jscales@mikameyers.com
rleisman@mikameyers.com

Peter B. Worden (P41899)
Garan Lucow Miller, PC
Attorneys for Defendants
3335 W. South Airport Rd., Ste. 5A
Traverse City, MI  49684
(231) 941-1611
*Direct Mail To:*
1155 Brewery Park Blvd, Suite 200
Detroit, Michigan 48207-1530
pworden@garanlucow.com

_____

**Motion for Partial Summary Judgment on the Grounds of *Res Judicata* and/or *Collateral Estoppel*, Brought Pursuant to FRCP 56**

      **NOW COME** the Defendants, The City of Traverse City and Shawn Winter, by and through their attorneys, Garan Lucow Miller, P.C., and for their Motion for Partial Summary Judgment on the Grounds of *Res Judicata* and/or *Collateral Estoppel* Brought Pursuant to FRCP 56, state as follows:

1.      In 2016, the electorate of the City of Traverse City adopted an amendment to the City Charter which required an affirmative vote by the City electorate before a building taller than 60 feet can be approved, permitted and built within the City.  The Charter amendment is commonly referred to as Section 28.

2.      Plaintiff's Complaint (ECF No. 1) includes a number of constitutional challenges to the viability of Section 28.

3.      This case represents the third litigation Plaintiff 326 Land Company has filed challenging Section 28's viability.  The first was dismissed on the grounds or ripeness.  In the second, however, Plaintiff's constitutional challenges (and other challenges) to Section 28 were adjudicated on the merits, and the Grand Traverse County Circuit Court upheld Section 28's viability.  Plaintiff chose not to appeal that decision.

4.      In its present Complaint, Plaintiff has again raised constitutional challenges to Section 28 which were addressed, or which could have been addressed, in its second litigation.

5.      For the reasons set forth in the attached Brief in Support, Defendants are entitled to summary judgement on Plaintiff's renewed challenges to Section 28 on the grounds of *res judicata* and/or *collateral estoppel*.

6.      Defendants' counsel sought Plaintiff's counsel's concurrence in this Motion in a telephone conference held on May 23, 2023 and concurrence was declined.

**WHEREFORE**, the Defendants respectfully request that this Honorable Court grant this Motion for Summary Judgment and dismiss Plaintiff's challenges to Section 28

on the grounds of *res judicata* and/or *collateral estoppel*.

GARAN LUCOW MILLER, P.C.

Dated:  May 24, 2023                    By:  _____
                                             Peter B. Worden, Jr. (P41899)
                                             Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

326 Land Company, a Michigan
limited liability company,                           Case No. 1:22-CV-45

      Plaintiff,                                    Honorable Paul L. Maloney

V

City of Traverse City, a Michigan Home Rule
City, and Shawn Winter, City Planning Director,

      Defendants.

_____

Ross A. Leisman (P41923)              Peter B. Worden (P41899)
James F. Scales (P40639)              Garan Lucow Miller, PC
Mika Meyers, PLC                      Attorneys for Defendants
Attorneys for Plaintiff               3335 W. South Airport Rd., Ste. 5A
900 Monroe Ave., NW                   Traverse City, MI  49684
Grand Rapids, MI  49503               (231) 941-1611
(616) 632-8000                        *Direct Mail To:*
jscales@mikameyers.com                1155 Brewery Park Blvd, Suite 200
rleisman@mikameyers.com               Detroit, Michigan 48207-1530
                                      pworden@garanlucow.com

_____


**Brief in Support of Defendants'**
**Partial Motion for Summary Judgment on the grounds of *res judicata* and/or**
***collateral estoppel*, brought pursuant to FRCP 56**


**Certificate of Service**

i

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ..............................................................................................ii

INDEX OF AUTHORITIES ............................................................................... iii, iv

INTRODUCTION...................................................................................................... 1

FACTS ....................................................................................................................... 2

A. General Background ............................................................................................. 2

B.  Procedural History ............................................................................................. 7

STANDARD OF REVIEW ...................................................................................... 10

ARGUMENT ............................................................................................................ 11

A.      Summary Judgment should be granted to Defendants on any and all of Plaintiff's Constitutional Challenges to Section 28, on the ground of *res judicata* ............. 11

B.       Summary Judgment should be granted to Defendants on any and all of Plaintiff's Constitutional Challenges to Section 28, on the ground of *collateral estoppel*.  . 15

INDEX OF EXHIBITS ................................................................................................ 18

# INDEX OF AUTHORITIES

## Cases:

*326 Land Co., LLC v City of Traverse City,* 2018 WL 4658932 (Michigan Court of Appeals No. 339755, September 27, 2018).  ................................................................. 3

*Albuqurque Commons Partnership v City Council of City of Albuqurque,* 144 N.M. 99, 184 P.3d 441 (2008) ........................................................................................ 4

*Anderson v Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ...................................................................................................... 10, 11

*Begin v Mich Bell Tel Co*, 284 Mich App 581, 599 (2009)  ............................... 12, 14

*Celotex Corp. v Catrett,* 477 U.S. 317, 323, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)................................................................................................................ 10

*Dearborn Hgts School Dist No 7 v Wayne County MEA/NEA*, 233 Mich App 120, 124-125 (1998) .................................................................................................... 16

*Duncan v Michigan*, 300 Mich App 176, 194 (2013), *app dism* 494 Mich 879 ............ 14

*Eaton Co Bd of Co Rd Comm'rs v Schultz*, 205 Mich App 371, 375; 521 NW2d 847 (1994) ............................................................................................................ 12

*Estes v Estes*, 481 Mich 573, 585 (2008); *Adam v Bell,* 311 Mich App 528, 533 (2015)  . ...................................................................................................... 14,

I*n Re Consumers Energy Application for Rate Increase*, 291 Mich App 106, 121 (2010), *lv app den,* 490 Mich 858 .............................................................................. 14

*Matsushita Elec. Indus. Co. v Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986, citing *First Nat. Bank of Arizona v Cities Servs. Co.,* 391 U.S. 253, 289, 88 S. Ct. 1575, 20 L.Ed.2d 569 (1968) ................................................. 10, 11

*Monet v State Farm Ins. Co.*, 469 Mich 679, 677 (2004). ...................................... 16

*Montana v United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). .. 12

*Penning v Owens,* 340 Mich 355, 367 (1954). ...................................................... 5

*People v Lee*, 314 Mich App 266, 279 (2016). ................................................... 16

*Rental Properties Owner's Assn of Kent County v Kent County Treasurer*, 308 Mich App 498, 528-529 (2014), lv app den 498 Mich 853. ............................................ 15,16

*Richard v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006). ........................ 12

*Smith, Hinchman and Grylls, Associates, Inc. v Tassic,* 990 F.2d 256, 257 (CA 6 1993), citing and quoting *Migra v Warren City School District,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). ............................................................................ 11

*Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 376; 652 NW2d 474 (2002) ................................................................................................. 12

*TBCI, PC v State Farm Mutual Insurance Company*, 289 Mich App 39, 43 (2010). .... 12

*Viera v Saginaw Bd of Ed*, 91 Mich App 555, 561 (1979). ................................... 16

*Workers Compensation Agency Director v McDonald's Indus. Products, Inc.*, 305 Mich App 640, 474 (2014), *lv app den*, 497 Mich 888. ......................................... 11, 12

**Statutes:**

FRCP 56(a) ........................................................................................... 10

## I.    INTRODUCTION

In 2016, the electorate of the City of Traverse City adopted an amendment to the City Charter which requires an affirmative vote by the city electorate before a building taller than 60 feet can be approved, permitted and built within the City.  This litigation represents Plaintiff 326 Land Company's third attempt to challenge the validity of the Charter Amendment.  In the first attempt, filed in Grand Traverse County Circuit Court, 326 Land's lawsuit was ultimately dismissed because its claims were not yet ripe.  In its second attempt, which was again filed in the Grand Traverse County Circuit Court, 326 Land challenged the Charter Amendment on several grounds including multiple due process constitutional claims.  The Grand Traverse Circuit Court rejected 326 Land's challenge, including its constitutional claims, on the merits.  326 Land chose not to appeal that decision.

326 Land now has filed this action, and in its complaint for the third time again raises constitutional challenges to the validity of the Charter Amendment.   Its constitutional claims are either identical to the claims it raised in its second state court action, and which were previously rejected by the state court; or in the exercise of reasonable diligence could have been brought in the second state court action.  326 Land is attempting to re-litigate its second state court challenge to the constitutional validity of the Charter amendment.  This Court should reject this attempt by granting summary judgment to Defendants on such claims, on the grounds of *res judicata* and/or *collateral estoppel.*

1

## II.    FACTS

### A.    General Background.

Plaintiff is the owner of property commonly known as 326 E. State Street, Traverse City, Michigan.  In 1999, the City of Traverse City enacted its current Zoning Ordinance. (Exhibit A, pertinent provisions of the Traverse City Zoning Ordinance, hereinafter referred to as "the TCZO").  It is undisputed that Plaintiff's property is classified within the City's zoning as C-4c, Regional Center District.   TCZO § 1346.06(a) provides the maximum building height for buildings in the C-4 District and states that the maximum building height is 60 feet and anything higher is only allowed by special land use permit; and that the maximum height allowed even with a special land use permit is 100 feet. (Exhibit A, TCZO § 1346.06(a)).  An additional 15 feet is allowed for rooftop mechanical equipment or elevator shafts, but not to exceed an overall height of 100 feet.  (Exhibit A, TCZO § 1368.01, ft. 5).

For purposes of the TCZO, "building, height of" and "height of building" are specifically defined by the ordinance at § 1320.07as follows:

> *Building, height of.*  See "height of building."
>
> *Height of building* means the vertical distance from the grade to the highest point on a mansard or flat roof or to the median height between the eaves and the ridge for gable. Hip and gambrel roofs.  (See Figure 1-3).

Figure 1-3 then provides drawings of examples of the method of measuring a building's height.  (Exhibit A, TCZO § 1320.07 and Figure 1-3).  The effect of this definition is that a building's height, for purposes of TCZO § 1346.06, does not include rooftop equipment

and appurtenances such as HVAC, elevator shafts, and stairwells; but a building cannot exceed an overall height of 100 feet per TCZO § 1368.01, ft. 5.

In the November 2016 general election, the voters of the City of Traverse City approved Proposition 3, which became part of the City's Charter, Chapter IV, Section 28 ("Section 28").  Section 28 requires affirmative voter approval of any proposed construction of a building with a height above 60 feet.  Section 28 does not, however, contain any language addressing how building heights should be measured.  (Exhibit B, City Charter, Chapter IV, Section 28).

On April 24, 2017, as part of a public process the City Commission adopted an Implementation Policy for Section 28.  The Implementation Policy provided:

> <u>Measurement</u>:  For purposes of determining whether the Charter Provision is triggered by a proposed building with a height above 60 feet, the methods of measuring building height contained in the Traverse City Zoning Ordinance shall be applied.

(Exhibit C, Implementation Policy).  Thus, the City announced that it would measure building heights in the same manner that it had always had under existing zoning.

Plaintiff's original plan was to build a 10-story, 100 foot tall building on its property. Plaintiff initially challenged the legality of Section 28 in the Grand Traverse County Circuit Court, but that challenge was ultimately rejected as not being ripe before a vote was taken.  SOD had intervened in that case.  See *326 Land Co., LLC v City of Traverse City,* 2018 WL 4658932 (Michigan Court of Appeals No. 339755, September 27, 2018). Plaintiff then sought voter approval of its 100 foot tower, but the electorate rejected the project at the November 6, 2018 general election.

3

Next Plaintiff returned to Grand Traverse County Circuit Court and again challenged the legality of Section 28.  Plaintiff's Complaint in that action, Grand Traverse County Circuit Court Case No. 18-34701-CZ, is attached as Exhibit D.

The 2018 Complaint attached as Exhibit D begins with a lengthy recitation of the history of land use regulation in the City of Traverse City, as well as skepticism that had been voiced by Michigan's Governor and Attorney General concerning the validity of Section 28 prior to its adoption by the city electorate.  It goes on to describe the City's Implementation Policy, 326 Land's plans to build a 10-story structure, its prior lawsuit and the dismissal of that lawsuit on the grounds that it was not ripe (as well as the Court of Appeals upholding that decision, City Staff's recommended approval of the project, and the city electorate's eventual rejection of the original 10-story project at the November 6, 2018 general election.

After declaring at p. 16 that in light of the electorate's rejection of the project the question of Section 28's validity was now unquestionably ripe for adjudication, Plaintiff's 2018 complaint (Exhibit D) proceeded to make the following challenges to the Charter amendment's validity:

- Count I requested a declaratory judgment on the validity of the Charter Amendment on its face, on the grounds of due process (Exhibit D, p. 17);

- Count II alleged that the Charter amendment was unauthorized under the Home Rule Cities Act, MCLA § 117.4i(c),  and deprived 326 Land of its federal and state rights to due process of law (Exhibit D, p. 19);

- Count III alleged that the Charter amendment was unauthorized under the Michigan Zoning Enabling Act, MCLA § 125.3101, et seq., and deprived 326 Land of its federal and state rights to due process of law (Exhibit D, p. 20);

- Count IV alleged the Charter amendment violated procedural due process (Exhibit D, p. 21);

4

- Count V alleged a claim of "unlawful downzoning," which appears to be a claim based on state law[1] (though not one that has ever been considered, adopted or applied by the courts of Michigan) (Exhibit D, p. 23); and

- Count VI alleged a claim of "reverse spot zoning," also a state law claim[2] (Exhibit D, p. 27).

The City of Traverse City, joined by SOD as intervenor, successfully defended Plaintiff's challenge to Section 28 in the 2018 action.  Following discovery and an exchange of dispositive motions, on June 25, 2019 Circuit Court Judge Thomas G. Power read his ruling from the bench denying Plaintiff's requests for summary disposition and granting the City's.  (Exhibit E, Circuit Court's June 25, 2019 ruling).  Judge Power's written order to that effect was entered on June 26, 2019 (Exhibit F). Plaintiff did not appeal this decision.

Next, Plaintiff applied for and received several permits associated with a new plan to construct a 5-story, 42-unit residential building.  The permit pertinent to the present dispute is a Land Use Permit, Permit No. PLU21-0112, issued by the City on July 20, 2021 (Exhibit G).  Because the new project did not involve a building measuring higher than 60 feet not including rooftop appurtenances (as called for in zoning and the Implementation Policy), neither Plaintiff nor the City considered at the time that it required an affirmative vote of the electorate.  Plaintiff also eventually received a Building Permit from the County for the new construction on November 12, 2021 (Exhibit H).[3]

---

[1] See *Albuqurque Commons Partnership v City Council of City of Albuqurque,* 144 N.M. 99, 184 P.3d 441 (2008).
[2] See *Penning v Owens,* 340 Mich 355, 367 (1954).
[3] In its Opinion and Order issued on April 21, 2023 (ECF No. 46), the Court noted on p.3, ft.6 that the County Building Permit referenced a 6 story building rather than the 5 stories referenced on the City Land Use Permit; and also that the two permits referred to different tax parcel numbers.  The County apparently counts the planned rooftop deck of the building as a story, whereas the City does not.  Also, the property has been divided into condominium units under one or more condominium master plans, resulting in different tax parcel numbers at the same location (see Exhibit I, Equalization records; Plaintiff is listed as the owner and the "Mikent, LLC" also referenced in the ownership information is Plaintiff's

On July 21, 2021 – coincidentally, just the day after Plaintiff received its Land Use Permit from the City (Exhibit J) -- SOD filed a lawsuit in Grand Traverse County Circuit Court challenging the City's approval of the Innovo TC Hall project.  Similar to Plaintiff's new project, the Innovo TC Hall project had contemplated construction of a building measuring 60 feet in height if one did not include rooftop appurtenances.  Also similar to Plaintiff's new project, under the method of measuring building heights then in effect the City gave its approval to the Innovo TC Hall project without a vote under Section 28.

On November 10, 2021, Judge Power gave his ruling from the bench on cross-motions for summary disposition and found in favor of SOD in the Innovo TC Hall case. (Exhibit J, transcript of Circuit Court's November 10, 2019 ruling).  Judge Power held that under the "plain language" of Section 28, rooftop equipment and appendages should be included in measuring a building's height and determining if an affirmative vote of the electorate is required (Id., pp. 69-70).  On the question of injunctive relief, Judge Power stated:

> Okay.  Well, I guess it's alleged that there was – could have been others – specifically 4front, that were approved in violation of the 60-foot limit – now, one of the things requested in the complaint is directing the City to reverse any prior grant of approval and/or permit for construction of a building in excess of 60 feet.  To the extent we're talking about anyone else's building, those people have not been part of this case and I don't think we can grant – there's lots of reasons to – because, like, for example, the building's already built; that that might not be proper, but we can't do that without them being part of the case.  Add an injunction prohibiting the City from approving buildings in excess of 60 feet without a vote of the public – I'll grant that.

(Id., pp. 74-75).

---

previous corporate name, hence "FKA").  One presumes that given space limitations on the permit forms, it wasn't possible to list all the parcel numbers and in either the applications or issuance process the permits wound up referring to different available parcel numbers.  However, it is undisputed that Plaintiff owns the property and that the referenced permits were issued to Plaintiff for this property.

Judge Power's written Order in the Innovo TC Hall case was entered on November 18, 2021 (Exhibit K).  The Order provides, in subparagraph B, that no part of a building – including rooftop equipment and appurtenances – is excluded in measuring building height for purposes of Section 28.  Further, the Order provides at subparagraph D:

> The City, and its officials, employees and agents are enjoined from approving any proposal to construct a building with a height above 60 feet as measured herein, without first placing the proposal on the ballot and receiving the approval of the electors as required by Section 28.  No building over 60 feet in height as measured herein shall be constructed, unless and until the requirements of Section 28 are complied with and satisfied.

The next day, November 19, 2021, the City issued a Stop Work Order to Plaintiff (Exhibit L).  Referencing Judge Power's Order in the Innovo TC Hall case (Exhibit K), the Stop Work Order noted that Plaintiff's project also had features that exceeded 60 feet in height and that it had not been approved by a vote of the electorate.  The Stop Work Order goes on to state:

> Therefore, the structural and foundation work approved under Land Use Permit PLU21-0112 [Exhibit G] is no longer valid and all associated work under that permit must cease and desist immediately until revised building plans consistent with Section 28 [Exhibit B] and the Judgment Order [Exhibit K] has been submitted and approved.

(Exhibit L; references to other Exhibits to this Brief added).

The City also appealed the Innovo TC Hall decision.

**B.    Procedural History**

Plaintiff filed this lawsuit on January 18, 2022.  Plaintiff's Complaint (ECF No. 1) is for the convenience of the Court attached as Exhibit M.

Plaintiff's Complaint in this action (ECF No. 1, Exhibit M) raises claims based on the Stop Work Order (Exhibit L), but it also repeats Plaintiff's previous constitutional

challenges to the validity of Section 28.  The Complaint declares its intent to do so early

on, when it states in Paragraph 4 on page 2:

> 4.      The illegality of this action [the issuance of the Stop Work Order] is
> compounded because it was based upon the application of an unlawful City
> Charter Amendment adopted by the voters in 2016 (known as "Proposition
> 3") which deprives Plaintiff of rights guaranteed by the United States
> Constitution.  Proposition 3 (which Michigan's Attorney General opined was
> invalid before it was even adopted) purports to make the construction of
> Plaintiff's building – which is permitted as a matter of right under the TCZO
> – subject to a popular election.  In that election, the voters of Traverse City
> can act at their absolute whim and caprice, without any assurance that, or
> standards to judge whether, the outcome of the vote has any relationship
> whatsoever to the public health, safety, and welfare.   There is no
> administrative remedy afforded for persons aggrieved of its application.

Plaintiff's Complaint in this action then goes on to state the history of land use

regulation in the City of Traverse City – a recitation that is taken almost verbatim from the

similar recitation set forth in Plaintiff's 2018 complaint (Exhibit D).

Plaintiff's Complaint then moves on to the Charter amendment itself, and describes

the Michigan Governor's and Attorney General's skepticism of its validity – again virtually

identical to its 2018 complaint.  (Compare the discussion beginning on Exhibit D, p. 6 to

that beginning on Exhibit M, p. 6).

Plaintiff's Complaint describes the adoption of the Implementation Policy (Exhibit

C), again identical to its 2018 complaint.  (Compare Exhibit D, p. 12 to Exhibit M, p. 8).

Plaintiff's  Complaint  describes  how  its  first  lawsuit  challenging  the  Charter

amendment was rejected for lack of ripeness, how City Staff had recommended approval

of its original 10-story project, and how that project was rejected by the city electorate

(Exhibit M, pp. 9-10); again, all identical to its 2018 complaint (Exhibit D, pp. 13, 15).

Plaintiff's current complaint (ECF No. 1, Exhibit M) goes on to make the following

claims:

- Count I (p. 17) alleges a takings claim and a violation of due process under the 5th and 14th Amendments of the United States Constitution; though this Count appears to be written as a challenge exclusively to the Stop Work Order, it also includes the following oblique challenge to Section 28 on due process grounds when it states, at Paragraph 111, p. 18:

     111.   Because Proposition 3 is not part of the TCZO or building codes, there is no provision made for appeal to the Zoning Board of Appeals, Construction Board of Appeals, or other *quasi-judicial* administrative body.

- Count II (p. 19) challenges the Charter amendment on due process grounds;

- Count III (p. 21) challenges the Charter amendment on equal protection grounds;
- Count IV (p. 22) appears to challenge the Stop Work Order on due process grounds;

- Count V (p. 23) appears to challenge both the Stop Work Order and the underlying validity of the Charter amendment on due process grounds, the latter when the Complaint alleges at Paragraphs 157 and 158 on p. 24:

     157.   The City lacks authority to regulate the height of structures though a means other than adoption and enforcement of the TCZ) [Traverse City Zoning Ordinance].

     158.   Proposition 3 as applied to a building permitted by right without special land use approval is unlawful and invalid because it is contrary to State law.

- Count VI (p. 24) appears to assert a takings claim under the 5th Amendment as to both the Stop Work Order and the original Charter amendment.

To be sure, the allegations in Plaintiff's current Complaint are addressing the Stop Work Order which obviously did not exist at the time of its prior 2018 action.  However, Plaintiff's current Complaint also contains numerous challenges -- at times directly and explicitly, and at times obliquely and implicitly – to Section 28 on constitutional grounds; specifically, this occurs in Counts I, II, III, VI and VI.  The only count in Plaintiff's current

complaint that is written to refer only to the Stop Work Order is Count IV, which challenges the Stop Work Order on due process grounds.

To the extent Plaintiff's current complaint raises constitutional challenges to Section 28, primarily they are based on due process (Counts I, II, and V) – identical to the due process claims Plaintiff raised in its prior unsuccessful state court action (Exhibit D). Plaintiff's current complaint also raises claims based on equal protection (14th Amendment) and the Takings Clause (5th Amendment) that do not expressly appear in its prior complaint.  Plaintiff's current complaint also does not repeat the state law claims it raised in its prior action.

## II.    STANDARD OF REVIEW

Under FRCP 56(a), summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  A genuine dispute of a material fact only exists when there are "disputes over facts that might affect the outcome of the suit under the governing law."  *Anderson v Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine dispute as to any material fact.  *Matsushita Elec. Indus. Co. v Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986, citing *First Nat. Bank of Arizona v Cities Servs. Co.,* 391 U.S. 253, 289, 88 S. Ct. 1575, 20 L.Ed.2d 569 (1968).

In a FRCP 56(a) motion the moving party bears the initial burden of showing the absence of any genuine issue of material fact, but if the moving party does not have the burden of proof at trial it can meet this burden by showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v Catrett,* 477 U.S. 317, 323, 325,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The non-moving party must do more than merely show there is some "metaphysical doubt as to the material facts," and cannot simply rest on its allegations or denials, but rather must come forth with specific facts showing there is a genuine issue for trial.  *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

In considering a FRCP 56(a) motion, the Court's role is not "to weigh the evidence and determine the truth of the matter," but rather, to determine if there is a genuine issue for trial.  *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.  While all inferences should be drawn in the light most favorable to the non-moving party, *Matsushita,* 475 U.S. at 587, 106 S. Ct. 1348, "the mere existence of a scintilla of evidence" in support of the nonmoving party will be insufficient to defeat the motion; if there is insufficient evidence on which a trier of fact can reasonably find in favor of the non-moving party, the motion must be granted. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

### III.    ARGUMENT

**A.    Summary Judgment should be granted to Defendants on any and all of Plaintiff's Constitutional Challenges to Section 28, on the grounds of *res judicata.***

The *res judicata* effect of state court judgments in federal court is governed by the Full Faith and Credit Act, 28 USCA § 1738, which requires the federal courts to look to state court law of *res judicata*.  "It is now well settled that a Federal Court must give to a State Court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment is rendered."  *Smith, Hinchman and Grylls, Associates, Inc. v Tassic,* 990 F.2d 256, 257 (CA 6 1993), citing and quoting *Migra v Warren City School District,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

11

Michigan law clearly contemplates that a party cannot use a second proceeding to attack a tribunal's decision in a previous proceeding.  *Workers Compensation Agency Director v McDonald's Indus. Products, Inc.*, 305 Mich App 640, 474 (2014), *lv app den*, 497 Mich 888.  If Plaintiff believed Judge Power's decision in the second state court action to be in error, then Plaintiff had multiple avenues of requesting relief, including filing a motion for reconsideration under MCR 2.119(F), seeking relief from the Judge's order under MCR 2.612, or pursuing an appeal.  Plaintiff decided not to pursue any of these actions.

Moreover, the doctrine of *res judicata* contemplates:

> "The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *Id.* at 599. [*Begin v Mich Bell Tel Co*, 284 Mich App 581, 599 (2009)].  Accordingly, "[r]es judicata bars a subsequent action between the same parties when the evidence or essential facts are identical." *Eaton Co Bd of Co Rd Comm'rs v Schultz*, 205 Mich App 371, 375; 521 NW2d 847 (1994).  It is applicable when "the first action was decided on its merits, the second action was or could have been resolved in the first action, and both actions involve the same parties or their privies." *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 376; 652 NW2d 474 (2002) (citation omitted).  For the doctrine to apply, the judgment in the first case must have been final. *Richard v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006).

*TBCI, PC v State Farm Mutual Insurance Company*, 289 Mich App 39, 43 (2010).

"Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

As noted above, *res judicata* applies to bar a cause of action where (1) the first action was decided on its merits, (2) the second action was or could have been resolved

12

in the first action, and (3) both actions involve the same parties or their privies. *Solution Source, supra.* All three elements are met here.

First, 326 Land's previous constitutional challenges to Section 28 in its second state court complaint (Exhibit D) were clearly decided on the merits. The parties filed motions for summary disposition and Judge Power of the Grand Traverse County Circuit Court, after reading the motions and briefs and entertaining oral argument, gave a detailed and well-reasoned ruling from the bench which rejected Plaintiff's constitutional challenges (Exhibit E), followed by a written order granting summary disposition to the City (Exhibit F).

Although Judge Power's ruling was predicated in part on 326 Land's lack of vested rights, beginning on page 13 of his oral opinion (Exhibit E, p. 13) he tackled the due process claims directly. Judge Power went through a lengthy dissertation on the general and subjective standards that would be considered by the City in issuing a Special Land Use Permit notwithstanding any vote by the electorate, and concluded that the vote of the electorate would be no more arbitrary, capricious, and ultimately unknowable than a decision by the City in whether to issue a Special Land Use Permit -- that ultimately, the decision by either body would boil down to whether they liked the project or not, based on any number of subjective factors that would be difficult to discern and question later. (Exhibit E, pp. 13-17). Thus Section 28 did not impose any burdens on 326 Land's due process rights over and above what would be inherent in the permitting process anyway.

Second, the constitutional challenges to Section 29 that Plaintiff raises in this case were or could have been resolved in the prior actions. Plaintiff's due process arguments in this case are identical to its due process challenges in the prior action. The only

challenges it adds is a claimed violation of the Takings Clause in the 5th Amendment, and a claimed violation of equal protection under the 14th Amendment. Both claims could have been easily raised and addressed in the previous litigation. The doctrine of *res judicata* is applied broadly to bar not only claims already litigated, but also every claim arising from the same transaction that the parties exercising reasonable diligence, could have raised but did not. *Estes v Estes*, 481 Mich 573, 585 (2008); *Adam v Bell*, 311 Mich App 528, 533 (2015); I*n Re Consumers Energy Application for Rate Increase*, 291 Mich App 106, 121 (2010), *lv app den,* 490 Mich 858; and *Begin, supra*, at 599. The rule of claim preclusion applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) to present evidence or grounds or theories of the case not presented in the first action, or (2) to seek remedies or forms of relief not demanded in the first action. Restatement (2d) of Judgments, §25 (1982).

There is no reason as to why, in the exercise of reasonable diligence, 326 Land could not have challenged Section 28 on equal protection or takings grounds in the 2018 litigation.

Third, the requirement that there be a subsequent action between the same parties or their "privies" is met here. Plaintiff and the City were both parties to the previous 2018 state court action. Defendant Winter was not a party in the previous 2018 state court action, but the doctrine of *res judicata* applies not only to prior named parties, but also their "privies." For the purposes of *res judicata*, parties are so in "privity" with each other when they are so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. *Duncan v Michigan*, 300 Mich App 176, 194 (2013), *app dism* 494 Mich 879; *Begin v Mich Bell Tel Co*, 284 Mich App

581, 599-600 (2009).  Privity, in other words, requires both a substantial identity of interest and a working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation.  *Begin, supra.*

Mr. Winter is named as a defendant in this case because he issued the Stop Work Order.  He is the Planning Director for the City of Traverse City, and as Plaintiff's current complaint notes, was at all times acting in his official capacity.  His interests with respect to the constitutional validity of Section 28 are inexorably intertwined with the City's (he was not even employed by the City when Section 28 was adopted by the electorate).  As such, Mr. Winter is clearly in "privity" with the City on this issue.

Based on the foregoing, Plaintiff's renewed constitutional challenges to Section 28 must be rejected on the grounds of *res judicata* given Judge Power's previous determination in the second state court litigation.

**B.     Summary Judgment should be granted to Defendants on any and all of Plaintiff's Constitutional Challenges to Section 28, on the grounds of *collateral estoppel.***

Even if *res judicata* is not available to defeat Plaintiff's renewed constitutional challenges to Section 28, they nonetheless should be dismissed due to *collateral estoppel.*  The federal courts apply state law to determine if *collateral estoppel* is a bar to a plaintiff's claims.  *In re E. I. du Pont de Nemours and Company C-8 Personal Injury Litigation*, 54 F.4[th] 912, 921 (CA 6 2022), and *McAdoo v. Dallas Corp.,* 932 F.2d 522, 524 (CA 6 1991), citing *Migra,* supra.

Under Michigan law, *collateral estoppel* precludes re-litigation of an issue in a subsequent, different cause of action between the same parties, or their privies, where the prior proceeding culminated in a final judgment and the issue was actually and

necessarily determined in that prior proceeding; it is a flexible rule meant to relieve parties from multiple litigation, conserve judicial resources, and encourage reliance on adjudication.  *Rental Properties Owner's Assn of Kent County v Kent County Treasurer*, 308 Mich App 498, 528-529 (2014), lv app den 498 Mich 853.  It applies where (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the same parties had a full and fair opportunity to litigate the issue; and (3) there was mutuality of estoppel.  *Estes, supra*, at 586.

The doctrine of *collateral estoppel* applies not only to the original parties, but to the original parties' privies.  *Dearborn Hgts School Dist No 7 v Wayne County MEA/NEA*, 233 Mich App 120, 124-125 (1998); *Viera v Saginaw Bd of Ed*, 91 Mich App 555, 561 (1979).  Identical to *res judicata*, privity as a requirement of collateral estoppel requires both a substantial identity of interest and a working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation.  *People v Lee*, 314 Mich App 266, 279 (2016).

The requirements of *collateral estoppel* are met here.  Plaintiff's constitutional challenges were previously brought and litigated to conclusion in the second state court action.  The second state court action was conducted between the same parties, 326 Land and the City; Shawn Winter, though not a party to the previous litigation, shares an identity of interest with the City on this issue and thus stands in "privity" with the City.

There is actually an exception to the third requirement, a mutuality of estoppel, which applies to this case.  Mutuality is not required where *collateral estoppel* is used defensively.  *Monet v State Farm Ins. Co.*, 469 Mich 679, 677 (2004).  Since Defendants are using *collateral estoppel* defensively in this case, mutuality is not required.

16

In any event, "mutuality of estoppel" simply means one taking advantage of the earlier adjudication would have been bound by it, had it gone against him. *Monet, supra*, at 683-0684. That clearly would be the case here. Had the City lost in the second state court action, and had 326 Land won that action, 326 Land's constitutional challenges to Section 28 would have prevailed and the City and its staff (including Mr. Winter) would have been bound by that outcome. Therefore, even though mutuality of estoppel is not required in this case, it exists.

Based on the foregoing, Plaintiff's renewed constitutional challenges to Section 28 must be rejected on the grounds of *collateral estoppel* given Judge Power's previous determination in the second state court litigation.

GARAN LUCOW MILLER, P.C.

Date: May 24, 2023          By:_____
Peter B. Worden, Jr. (P41899)
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF, which will send notification of such filing to the following: All ECF Attorney(s) of Record on this case.

GARAN LUCOW MILLER, P.C.

By:_____
Peter B. Worden, Jr. (P41899)
Attorneys for Defendants

17

**INDEX OF EXHIBITS**

| Exhibit | Description |
|---|---|
| A | Pertinent provisions of the Traverse City Zoning Ordinance, hereinafter referred to as "the TCZO |
| B | City Charter, Chapter IV, Section 28. |
| C | Implementation Policy |
| D | Plaintiff's Complaint in that action, Grand Traverse County Circuit Court Case No. 18-34701-CZ |
| E | Circuit Court's June 25, 2019 ruling |
| F | Judge Power's written order to that effect was entered on June 26, 2019 |
| G | The permit pertinent to the present dispute is a Land Use Permit, Permit No. PLU21-0112, issued by the City on July 20, 2021 |
| H | Building Permit from the County for the new construction on November 12, 2021 |
| I. | Equalization records |
| J. | Transcript of Circuit Court's November 10, 2019 ruling |
| K. | Judge Power's written Order in the Innovo TC Hall case was entered on November 18, 2021 |
| L. | November 19, 2021, the City issued a Stop Work Order |
| M. | Plaintiff's Complaint (ECF No. 1) |

18