UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| 326 LAND COMPANY, LLC, a Michigan limited liability company, | Case No. 1:22-cv-45 |
| | Honorable Paul L. Maloney |
| Plaintiff, | |
| | Magistrate Phillip J. Green |
| v | |
| CITY OF TRAVERSE CITY, a Michigan Home Rule City, SHAWN WINTER, City Planning Director, | |
| Defendants. | |

| | |
|---|---|
| Ross A. Leisman (P41923) | Peter B. Worden (P41899) |
| James F. Scales (P40639) | Garan Lucow Miller, PC |
| Mika Meyers PLC | Attorneys for Defendants |
| Attorneys for Plaintiff | 3335 W. South Airport Road, Ste. 5A |
| 900 Monroe Avenue, NW | Traverse City, MI 49684 |
| Grand Rapids, MI 49503 | (231) 941-1611 |
| rleisman@mikameyers.com | pworden@garanlucow.com |
| jscales@mikameyers.com | |

**PLAINTIFF'S BRIEF
IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE GROUNDS OF RES JUDICATA AND/OR COLLATERAL
ESTOPPEL**

03299939 4

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.     INTRODUCTION ........................................................................................................ 1

II.    FACTS .......................................................................................................................... 2

III.   ARGUMENT ................................................................................................................ 5

      A.      The City's *Res judicata* and *collateral estoppel* arguments do not apply to the vested rights, equal protection or procedural due process claims of Counts I, II, III, IV, and VI, and are limited to the City's objection to the facial challenge of Section 28 in Count II and Count V. ........................................ 5

      B.      *Res judicata* does not apply to the constitutional challenges to Section 28 because the current challenges arise from a different cause of action. ................... 7

      C.      The challenges to Section 28 in this action are also not barred by *res judicata* because the Michigan Court of Appeals' decision in *Save Our Downtown v. City of Traverse City* case constitutes an intervening change in law. ................................................................................................................. 9

      D.      *Collateral estoppel* does not apply when the subsequent issues are not identical to the prior issues and have not been actually litigated. ......................... 11

      E.      *Collateral estoppel* also does not apply when there is an intervening change in law. ................................................................................................................. 12

      F.      Preclusion principles should not apply here because it would result in manifest injustice to 326 Land. .............................................................................. 13

Exhibit Index ............................................................................................................................ 15

03299939 4

# TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry*,
    449 U.S. 90, 94 (1980) .......................................................................................... 11

*Bradley v. Richmond Sch. Bd.*,
    416 U.S. 696, 711; 94 S. Ct. 2006 (1974) ............................................................ 12

*Buck v. Thomas M. Cooley Law Sch.*,
    597 F.3d 812, 818 (6th Cir. 2010) ......................................................................... 8

*Church J.V., L.P. v. Blasingame (In re Blasingame)*,
    920 F.3d 384, 390 (6th Cir. 2019) ..................................................................... 7, 8

*Comm'r v. Sunnen*,
    333 U.S. 591, 599 (1948) ............................................................................... 11, 12

*Creech v. Addington*,
    281 S.W.3d 363, 381 (Tenn. 2009) ........................................................................ 7

*FCA US, LLC v. Spitzer Autoworld Akron, LLC*,
    887 F.3d 278, 286 (6th Cir. 2018) ........................................................................ 12

*Mango v. Plymouth Twp. Bd. of Tr.*,
    33 Mich. App. 715; 190 N.W.2d 285 (1971) ........................................................ 7

*Montana v. United States*,
    440 U.S. 147, 153 (1979) ....................................................................................... 7

*Polk v. Yellow Freight Sys., Inc.*,
    801 F.2d 190, 194 (6th Cir. 1986) ....................................................................... 11

*Save Our Downtown v. City of Traverse City*,
    ___ Mich. App. ___, __ N.W.2d ___; 2022 Lexis 6164 (Mich. CI App. No.
    359536, October 13, 2022) ........................................................................... passim

*Sheridan Drive Ass'n v. Woodlawn Backproperty Owners Ass'n*,
    29 Mich.App. 64, 185 N.W.2d 107, 109 (1970) .................................................... 7

*Socialist Workers Party v. Secretary of State*,
    412 Mich. 571, 584; 317 N.W.2d 1( Mich. 1982) .......................................... 9, 10

*Southfield Educ. Ass'n v. Southfield Bd. of Educ.*,
    570 Fed. Appx. 485, 489 (6th Cir. 2014) ............................................................... 8

*Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Tr.*,
    410 F.3d 304, 310 (6th Cir. 2005) ................................................................. 11, 12

*State Mut. Life Assurance Co. v. Deer Creek Park*,
  612 F.2d 259, 269 n.9 (6th Cir. 1979) ................................................................................. 7

*U.S. v. LaFatch*,
  565 F.2d 81, 84 (6th Cir. 1977) ......................................................................................... 13

*U.S. v. Tohono O'Odham Nation*,
  563 U.S. 307, 315-16 (2012) ............................................................................................... 7

*W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*,
  700 Fed. Appx. 484, 490 (6th Cir. 2017).......................................................................... 11

*Young v. Detroit City Clerk*,
  389 Mich. 333; 207 N.W.2d 126 (Mich. 1973). ............................................................... 10

**Other Authorities**

Black's Law Dictionary 266 (10th ed. 2014) ................................................................................ 7

**Statutes and Court Rules**

M.C.R 7.215 (c)(2).................................................................................................................... 10

**I.      INTRODUCTION**

This case was filed based on the City of Traverse City's (the "City") unlawful and unconstitutional actions when it issued a stop work order on November 18, 2021. That action suspended the ongoing construction of the Peninsula Place residential condominium building previously approved by the City.

Section 28 of the Traverse City Charter ("Section 28")[1] purports to require an election approving a building over 60 feet in height. This action is not, as alleged by the City, a repetitive challenge to Section 28, but it is in response to unlawful and unconstitutional actions by the City to stop the Peninsula Place construction. As such, 326 Land's claims in this action are a different cause of action than the prior state court case decided by Judge Power in 2019. The two actions involve two different buildings subject to different zoning and voting requirements under Section 28.

In addition, an intervening change in law has occurred both since the 2019 litigation and Judge Power's erroneous decision which led to the wrongful issuance of the stop work order. On October 13, 2022, the Michigan Court of Appeals issued its decision in *Save Our Downtown v. City of Traverse City* regarding the measurement of building height for the purpose of Section 28. *Save Our Downtown v. City of Traverse City*, ___ Mich. App. ___, ___ N.W.2d ___; 2022 Lexis 6164 (Mich. Ct App. No. 359536, October 13, 2022) (Slip Opinion attached as **Exhibit A**.) That decision constitutes an intervening change in law which bars the application of *res judicata* and *collateral estoppel*. It is also the subject of 326 Land's Motion for Summary Judgment as to Counts IV and V filed on June 9, 2023, ECF No. 52.

---

[1] Section 28 of the Charter is sometimes referred to in the pleadings in this case as "Proposition 3", referring to its position on the ballot.

## II.     FACTS

326 Land agrees with many of the facts presented by the City in its Brief in Support of Defendants' Partial Motion for Summary Judgment on the grounds of *Res Judicata* and/or *Collateral Estoppel*, ECF No. 51 ("City's Brief") about the issues in prior litigation. 326 Land initially planned for and applied to build a 100-foot building on the site, adjacent to 125-foot Park Place Hotel.  Under the Traverse City Zoning Ordinance ("TCZO"), buildings over 60 feet in height are permitted only with special land use approval based on discretionary standards.

In 2016, while the 100-foot building was in the initial planning stages, the City Charter was amended by Proposition 3, which added the following as Section 28, Chapter IV of the City Charter:

> It is hereby declared that buildings over 60 feet in height are generally inconsistent with the residential and historical character of Traverse City. Therefore, any proposal for construction of a building with a height above 60 feet, shall not be approved by the City or City Commission, until after the proposal is submitted to and approved by a majority of the City electors at a regular election or at a special election.

Initially, 326 Land filed a complaint in Grand Traverse County Circuit Court, challenging the legality of Section 28. That first complaint was dismissed as not ripe for review because no vote had taken place.  326 Land then requested voter approval of the building, which was defeated in an election held in November 2018.

With the issue of validity of Section 28 thus becoming ripe, 326 Land filed the second action, seeking an order declaring that a special land use application for a building exceeding 60 feet in height was to be decided solely by the City Planning Commission and City Commission, as provided by the Michigan Zoning Enabling Act ("MZEA") and TCZO. In the second action concerning the 100-foot building, Judge Power ruled that Section 28 was valid and the City electors were able to lawfully override the authority of the Planning Commission and City Commission to

2

approve a special land use permit as provided by the TCZO and MZEA by voting against it. *See* City's Brief, p. 13.

What the City has missed are that the following facts, which are crucial to this Motion, were not present in the litigation over the 100-foot building.

- Under the "Implementation Policy for Charter §28 Building Height Restriction" (the "Implementation Policy"), attached as **Exhibit B**, an election would only be required in this Zoning District if the building proposed required special land use or planned unit development approval under the Traverse City Zoning Ordinance ("TCZO").

- The height measurement methodology in the Implementation Policy was not at issue in the earlier litigation because that building unquestionably exceeded the 60-foot triggering height. The methodology of height measurement is a central issue in this case involving a 60-foot-tall building.

- In accordance with the Implementation Policy and TCZO, a building located in the City's C-4c Regional Center District with a flat roof at a height of 60 feet, with rooftop appurtenances extending above that, would not be subject to voter approval pursuant to Section 28.

- After the second State Court action, 326 Land gave up the original plan and started a new project to construct a different building.

- As a 60-foot building, 326 Land's new building did not require a special land use approval and was not subject to the Section 28 voting process.

- Other 60-foot buildings were constructed after the adoption of Section 28 without a vote. Rooftop appurtenances were excluded from the measurement of building

3

03299939 4

- height for these buildings, just as was done for 326 Land's new building based on the Implementation Policy.

- No construction ever took place on the 100-foot building.  In contrast, on July 20, 2021, 326 Land obtained Land Use Permit PLU21-0112 ("July LUP") issued by the City for construction of the new 60-foot building. It also demolished the then-existing law office building valued at approximately $320,000, not including land value, at a cost of approximately $120,000 and moved the law office tenant to a new location.  It incurred significant costs constructing the new 60-foot building as detailed in 326 Land's Brief in Support of Cross Motion for Summary Judgment as to Counts I and IV filed on June 20, 2023, ECF No. 55.

- In 2021, after 326 Land obtained approval from the City, Save Our Downtown ("SOD"), a public advocacy group that had originally supported Section 28, filed a lawsuit in the Grand Traverse County Circuit Court to challenge the Innovo TC Hall project, based on the methodology of height measurement. 326 Land was not a party to this lawsuit, and had obtained approval for its building from the City before that lawsuit was filed.

- On November 18, 2021, Judge Power entered an order in the *Save Our Downtown/ Innovo* case, holding that the rooftop appurtenances on Innovo's building were to be included in measuring building height for purposes of Section 28.

- Without proper investigation and without considering the fact that 326 Land was not subject to the *Save Our Downtown* order and was not given an opportunity to be heard, on November 19, 2021, the City's Planning Director issued a stop work

- order to 326 Land, suspending the ongoing construction of Peninsula Place building.

- On October 13, 2022, the Michigan Court of Appeals released its published decision in *Save Our Downtown v. City of Traverse City*. (*Save Our Downtown v. City of Traverse City*, **Ex. A**.) This decision reversed the trial court's ruling on the measurement approach used in determination of Section 28's application and, as explained in Plaintiff's Brief in Support of Motion for Summary Judgment as to Counts IV and V filed on June 9, 2023, ECF No. 53, invalidated Section 28.

## III. ARGUMENT

### A. The City's *Res judicata* and *collateral estoppel* arguments do not apply to the vested rights, equal protection or procedural due process claims of Counts I, II, III, IV, and VI, and are limited to the City's objection to the facial challenge of Section 28 in Count II and Count V.

The City's Motion for Partial Summary Judgment on the Grounds of *Res Judicata* and *Collateral Estoppel* is based on a gross misstatement of the facts and claims at issue in the prior litigation between 326 Land and the City and in this case. In the City's Brief, it asserts that 326 Land's constitutional claims are "either identical to the claims it raised in its second state court action" or "could have been raised in its second state court action." City's Brief, p. 1. This fails to accurately present the facts at issue, the law at issue, and 326 Land's claims in Plaintiff's complaint.

Before addressing the City's assertion that *res judicata* or *collateral estoppel* bar 326 Land's challenge to Section 28, it is necessary to properly narrow the City's challenge. For example, on page 9 of the City's Brief, it seems to assert that a challenge to Section 28 has been made in all six counts of 326 Land's complaint. City's Brief, p. 9. 326 Land agrees that Section

5

28 is challenged in Count II and Count V;  however, the following claims in the Counts listed by the City as barred are not based on a direct challenge to Section 28:

- Count I (p. 18) states that the revocation of July 2021 LUP and the issuance of stop work order for construction violates the due process clause because it deprives 326 Land's vested rights. The paragraph mentioning Section 28 (111 p. 18) was to lay out the grounds for a separate claim of violation of procedural due process based on the lack of prior notice and hearing on the stop work order.

- Count II (p. 20) states that the City's application of Section 28 in measurement of building heights violates substantive due process <u>as applied</u> to the measurement of <u>this</u> building. It challenges subjecting this building to a vote of the electors based on "the minimal extent of the structures extending above the flat roof" of <u>this</u> building (128 p. 20)

- Count III (p. 21) alleges an equal protection violation on the ground that there are other buildings in the zoning district with rooftop appurtenances exceeding 60 feet in height that were not subjected to a vote of the electors. (135, p. 21)

- Count IV (pp. 22-23) challenges the City Planning Director's unauthorized failure to follow the Implementation Policy and the unauthorized revocation of the legally issued land permit as a violation of due process, regardless of the validity of Section 28.

- Count VI (p. 24) asserts the City's violation of the 5th Amendment by taking of property for which 326 Land has a right and reasonable expectation for use.

*See* Plaintiff's Complaint, ECF 1.

The claims based on vested rights, equal protection, and procedural due process arose with respect to this building and the City's action in halting its construction. These claims did not arise with respect to the planned 100-foot building and could not have been raised in the state court case. And the as applied due process challenge against Section 28 included in Count II is a different challenge to Section 28 than the one raised in the prior state lawsuit, because there is no rational basis for requiring a vote for this building based only on the rooftop appurtenances above 60 feet which have no impact on the public welfare.

**B.     *Res judicata* does not apply to the constitutional challenges to Section 28 because the current challenges arise from a different cause of action.**

In order for *res judicata* to apply, "the facts or evidence essential to maintain the subsequent cause of action must be identical to the prior suit." *State Mut. Life Assurance Co. v. Deer Creek Park*, 612 F.2d 259, 269 n.9 (6th Cir. 1979) (citing *Mango v. Plymouth Twp. Bd. of Tr.*, 33 Mich. App. 715; 190 N.W.2d 285 (1971); *Sheridan Drive Ass'n v. Woodlawn Backproperty Owners Ass'n*, 29 Mich.App. 64, 185 N.W.2d 107, 109 (1970)).

In the decision upon which the City relied in its Brief, the U.S. Supreme Court also stated the fundamental condition of application of *res judicata*, is that *res judicata* has effect on "further claims … based on the same cause of action". *Montana v. United States*, 440 U.S. 147, 153 (1979).

A change in underlying facts will give rise to a different cause of action. A "cause of action" is defined as a set of facts giving rise to one or more grounds for legal relief. *Church J.V., L.P. v. Blasingame (In re Blasingame)*, 920 F.3d 384, 390 (6th Cir. 2019) (citing *U.S. v. Tohono O'Odham Nation*, 563 U.S. 307, 315-16 (2012); *Creech v. Addington*, 281 S.W.3d 363, 381 (Tenn. 2009); Black's Law Dictionary 266 (10th ed. 2014) (defining "cause of action" as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain

a remedy in court from another person"). It is the "underlying facts, not legal theories, define cause of action". *In re Blasingame*, 920 F.3d 391.

The underlying facts fundamentally changed after Judge Power's decision in 2019. Application of *res judicata* in Michigan has preclusive effect on claims arising from the "same transaction" that "could have been raised in state court." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 Fed. Appx. 485, 489 (6th Cir. 2014). If the subsequent claim arises from facts occurred after the adjudication of the initial suit that could not be added into the initial action, the claim shall be deemed as arising from a different transaction and shall not be barred by *res judicata*. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 818 (6th Cir. 2010).

This is not the same transaction. Unlike the prior building, this building is permitted by right and without a vote according to the Implementation Policy, as affirmed in the *Save Our Downtown* decision.

As noted, 326 Land's constitutional claims in this case are based on facts that occurred after the state court decision in 2019. After that decision, 326 Land designed, applied for, had approved, sold units in and began construction of a different building. This new 60-foot building, like other post-Section 28 60-foot buildings with rooftop appurtenances, is not subject to vote requirement under Section 28. The new building was permitted by right. All 326 Land had to do was show that the building complied with the current zoning for a building 60 feet in height, which it did.

By contrast, in the earlier state court action, 326 Land sought approval for construction of a ten-story building of 100 feet in height. Construction of a 100-foot building required a special land use permit. According to the Implementation policy, it was also subject to City voters' approval under Section 28. Indeed, as the Implementation Policy was structured, the vote was not

the final step in the process. Even if the voters had approved the 100 foot building, the City Commission could have denied the project upon finding that it failed to meet the discretionary standards for special land use approval.

Simply put, although some of the parties are the same, these are different transactions, involved with two different buildings that are physically different and subject to different regulations. In the current case, 326 Land is seeking remedies and damages caused by the issuance of the illegal stop work order on an approved and under construction by right building.

In the prior state action, the lawsuit challenged the ability of the City electors to deny the construction of a different 10-story building which still required special land use approval under discretionary standards. No permits were issued, and no demolition or physical construction ever took place on the 100-foot building. There was at that time no *Save Our Downtown* case, no change in how buildings were measured for the 60-foot trigger height, and no stop work order. And no other 60-foot buildings had been constructed with rooftop appurtenances without a vote under Section 28.

In short, the two cases involve different transactions, different facts and different laws. The cause of action is not the same and therefore *res judicata* does not bar a challenge to Section 28 in this action.

> **C.     The challenges to Section 28 in this action are also not barred by *res judicata* because the Michigan Court of Appeals' decision in *Save Our Downtown v. City of Traverse City* case constitutes an intervening change in law.**

The Michigan Supreme Court has adopted the following as an exception to the doctrine of *res judicata*: "[a] new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." *Socialist Workers Party v. Secretary of State*, 412 Mich. 571, 584; 317 N.W.2d 1( Mich. 1982).

The Michigan Supreme Court recognized that *res judicata* should not be applied to preclude the claims when the applicable legal context has been changed by binding court decisions. *Id.*; see also *Young v. Detroit City Clerk*, 389 Mich. 333; 207 N.W.2d 126 (Mich. 1973). The Court's sensible rationale is that parties should not be prevented from bringing an action to challenge a prior decision based on a changed legal context, while other litigants would be free to urge that the rule should be rejected. As stated in *Socialist Workers Party v. Secretary of State*, 412 Mich. 584:

> A rule of law declared in an action between two parties should not be binding on them for all time, especially as to claims arising after the first proceeding has been concluded, when other litigants are free to urge that the rule should be rejected. Such preclusion might unduly delay needed changes in the law and might deprive a litigant of a right that the court was prepared to recognize for other litigants in the same position.

After this case was filed, the Michigan Court of Appeals released its published decision in *Save Our Downtown v. City of Traverse City*, Ex. B. The Michigan Court of Appeals ruled that the height trigger in Section 28 was to be measured according to the rules in TCZO, which excludes roof top appurtenance such as those above the 60-foot level on the 326 Land building. This decision overruled Circuit Judge Power's decision under which the 60-foot height trigger was to be measured to the highest point on the building, including the rooftop appurtenances. It made the basis relied upon by the City for the stop work order's shutdown of the construction site unlawful and it did so based on a rationale that Section 28 is invalid because it is contrary to State law.

As detailed in 326 Land's Brief in Support of Motion for Summary Judgment as to Counts IV and V, a published Court of Appeals decision is binding precedent regardless of whether an application for leave to appeal has been filed with the Michigan Supreme Court, and indeed even if leave to appeal has been granted. M.C.R 7.215 (c)(2). Therefore, the *Save Our Downtown* decision issued by the Michigan Court of Appeals constitutes a change in law which bars the application of *res judicata* in this case.

### D. *Collateral estoppel* does not apply when the subsequent issues are not identical to the prior issues and have not been actually litigated.

Under the doctrine of *collateral estoppel*, once a court has decided an issue of fact or law necessary to its judgment, such decision may preclude relitigation of the same issue in a suit involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The party asserting *collateral estoppel* bears the burden of proof by demonstrating: (1) the parties in both proceedings are the same or in privity; (2) a valid and final judgment was made in the first proceeding; (3) the same issue that is asserted to be precluded was actually litigated in the first proceeding; (4) that issue was necessary to the judgment in the first proceeding; and (5) the party against whom preclusion is asserted had a full and fair opportunity to litigate such issue. *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Tr.*, 410 F.3d 304, 310 (6th Cir. 2005).

To obtain preclusive effect under *collateral estoppel*, the issue of fact or law must be actually litigated and determined. *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 194 (6th Cir. 1986). It has been long held that *collateral estoppel* must be used "within its limitations carefully in mind so as to avoid injustice". *Comm'r v. Sunnen*, 333 U.S. 591, 599 (1948). The limitations include that (1) the matter raised in the second suit must be "identical in all respects with that was decided in the first proceeding", and (2) the controlling facts and applicable legal rules remain unchanged. *Id*. at 600; See also *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 700 Fed. Appx. 484, 490 (6th Cir. 2017). The rule of *collateral estoppel* "has no bearing on the situation" where the legal matters determined in the earlier case differ from those raised in the second case. *Sunnen,* at 600.

As detailed extensively above, the issues of law in this case are not identical, or even similar, to those adjudicated in the prior state action. The prior action was about the ability of

voters to reject a 100-foot building, which is not permitted by right under the TCZO.  By contrast, this case involves a different building, parties that are not identical, subsequent interpretations and policies implemented by the City, for similar buildings, a subsequent decision of the Michigan Court of Appeals, a project which has proceeded to a point where it received land use permits and building permits, and was under construction, reliance and damages.  Perhaps most importantly, it involved a building permitted by right, without discretionary approval.  There was never a vote in this case because it was never required for this size building until the City misapplied Judge Power's erroneous ruling.

Therefore, 326 Land's constitutional challenges in this case are not barred by *collateral estoppel*. *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Tr.*, 410 F.3d at 310.

     **E.**    ***Collateral estoppel*** **also does not apply when there is an intervening change in law.**

According to the U.S. Supreme Court "a court is to apply the law in effect at the time it renders its decision". *Bradley v. Richmond Sch. Bd.,* 416 U.S. 696, 711; 94 S. Ct. 2006 (1974). *Collateral estoppel* is rendered inapplicable when a judicial declaration intervening between the time of the first judgment and the second proceeding vitally altered the situation and "legal atmosphere". *Comm'r v. Sunnen*, at 600.  The prior determination of the issue therefore becomes non-conclusive and will not have issue preclusion effect. *Id*. This "change in law exception" to *collateral estoppel* is recognized under Michigan law. *FCA US, LLC v. Spitzer Autoworld Akron, LLC,* 887 F.3d 278, 286 (6th Cir. 2018). Changes in law will render *collateral estoppel* inapplicable, even in the situation that the facts in the subsequent action are "indistinguishable from the earlier action". *Id*.

As shown in 326 Land's Brief in Support of Motion for Summary Judgment as to Counts IV and V, the Michigan Court of Appeals' ruling in *Save Our Downtown* rejected the measurement application of Section 28 and held that the height trigger in Section 28 was to be measured according to the rules in TCZO, which excludes rooftop appurtenances such as those above the 60-foot level on the 326 Land's building. And it reached that decision using reasoning which would hold Section 28 invalid under State Law. *Id*. That ruling is a major change in law that renders both *res judicata* and *collateral estoppel* inapplicable to this case.

### F.     Preclusion principles should not apply here because it would result in manifest injustice to 326 Land.

It has also been recognized by the Sixth Circuit that there is an exception to preclusion principles when "an inflexible application would have … resulted in manifest injustice to a party". *U.S. v. LaFatch*, 565 F.2d 81, 84 (6th Cir. 1977).  326 Land did not appeal the 2019 decision in reliance on the Implementation Policy that allowed a shorter building without a vote.  326 Land wanted to build a building, not litigate endlessly.  Ironically, based on the *Save Our Downtown* decision, such an appeal likely would have been successful.

Since the 2019 decision of the state court, 326 Land has done nothing but try to comply with the ever-changing rules of the City. It has done this at tremendous cost and expense. It designed a new building five stories shorter than what it first proposed. It followed the rules and waited until it had all the approvals to start. It tried to settle. And now the Michigan Court of Appeals has ruled that 326 Land was right all along and yet still there is a stop work order shutting down construction. Based on the manifest injustice present here, *res judicata* and *collateral estoppel* do not apply.

For all these reasons, 326 Land respectfully requests this Honorable Court to deny the City's Motion for Partial Summary Judgment on the Grounds of *Res Judicata* and/or *Collateral Estoppel*.

Respectfully submitted,

MIKA MEYERS PLC
Attorneys for Plaintiff

Dated:  June 21, 2023

By: /s/ Ross A. Leisman
Ross A. Leisman (P41923)
James F. Scales (P40639)
900 Monroe Avenue, NW
Grand Rapids, MI 49503
(616) 632-8000

# EXHIBIT INDEX

Exhibit A        Court of Appeals Slip Opinion in *Save Our Downtown v City of Traverse City*

Exhibit B        Implementation Policy for Section 28

03299939 4