**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

326 Land Company, a Michigan
limited liability company,

       Plaintiff,

V

City of Traverse City, a Michigan Home Rule
City, and Shawn Winter, City Planning Director,

       Defendants.

Case No. 1:22-CV-45

Honorable Paul L. Maloney

---

Ross A. Leisman (P41923)
James F. Scales (P40639)
Mika Meyers, PLC
Attorneys for Plaintiff
900 Monroe Ave., NW
Grand Rapids, MI 49503
(616) 632-8000
jscales@mikameyers.com
rleisman@mikameyers.com

Peter B. Worden (P41899)
Garan Lucow Miller, PC
Attorneys for Defendants
3335 W. South Airport Rd., Ste. 5A
Traverse City, MI 49684
(231) 941-1611
*Direct Mail To:*
1155 Brewery Park Blvd, Suite 200
Detroit, Michigan 48207-1530
pworden@garanlucow.com

---

**Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment as to
Counts IV and V of Plaintiff's Complaint Pursuant to FRCP 12(c) and FRCP 56(a)**

**Certificate of Service**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................i

INDEX OF AUTHORITIES .......................................................................... ii, iii

ARGUMENT ................................................................................................1

I. Introduction ............................................................................................ 1

II. The Innovo TC HAll case is not binding precedent, because it did not address the underlying legality of Section 28; is also is not effective as to the City, which was a litigant in the Innovo case.............................................................................................2

A.   Innovo TC Hall did not set new precedent on the question of Section 28's legality ... 2

B.   Innovo TC Hall is not effective as to the City (a litigant in the Innovo Case) under MCR 7.215(F)(1) .............................................................................................. 9

III. Plaintiff's claims were previously adjudicated by Judge Power in the prior state court action and cannot be re-litigated by virtue of res judicata or collateral estoppel .......... 11

IV. The recent Innovo TC Hall decision does not warrant granting summary judgment to Plaintiff, because Plaintiff's building has rooftop features that are considered part of the structure and extend above 60 feet ............................................................... 15

INDEX OF EXHIBITS  .................................................................................18

# <u>INDEX OF AUTHORITIES</u>

## Cases:

*Abbott v Michigan*, 474 F.3d 324, 331 (CA 6 2007) ..................................................... 12

*Detroit v Walker*, 445 Mich 682, 689-690; 520 NW2d 135 (1994) ................................. 7

*Duncan v Michigan,* 300 Mich App 176, 194 (2013), *app dism* 494 Mich 879. ........... 13

*Growe v Emison,* 507 U.S. 25, 32, 113 S. Ct. 1075, 122 L.Ed.2d 388 (1993). ........... 11

*Kent County Prosecuting Attorney v City of Grand Rapids*, No 316422 (Mich App 2015) ................................................................................................................................. 8

*Kropf v. City of Sterling Heights*, 391 Mich 139, 188 (1974) ......................................... 8

*Mill Creek Coalition v South Branch of Mill Creek Intercounty Drain Dist*, 210 Mich App 559, 565, 534 NW2d 168 (1995) ...................................................................................... 6

*People v Lee,* 314 Mich App 266, 279 (2016) ............................................................. 14

*Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 65, 642 NW2d 663 (2002) ................ 6

*Save Our Downtown, et al v City of Traverse City, et al,* _____ Mich App _____; 2022 WL 7724317 (Michigan Court of Appeals No. 359536, October 13, 2022) ...................... 1, 2

*Solution Source, Inc. v LPR Assoc Ltd Partnership,* 252 Mich App 368, 376 (2002). . 12

*Spectrum Health Continuing Care Grp. v Anna Marie Bowling Irrevocable Tr.,* 410 F3d 304, 310 (CA 6 2005) ................................................................................................... 14

*VanderKodde v Mary Jane M. Elliott, P.C.,* 951 F. 3d 397, 402 (CA 6 2020) .............. 11

STATUTES:

MCLA §125.3101 ................................................................................................... 1, 3

MCLA §117.1 ........................................................................................................ 1

MCLA §117.4i(c) .............................................................................................. 6, 7

MCL §117.4b through MCL 117.4r ...................................................................8

MCR 7.215(F)(1) ......................................................................... 1, 9, 10, 11

MCR 7.215(C)(2) ......................................................................... 9, 10, 11

28 U.S.C. § 1237 ................................................................................... 11

## I. **Introduction**

Plaintiff's Motion should be denied for the following reasons:

First, *Save Our Downtown, et al v City of Traverse City, et al,* _____ Mich App _____;

2022 WL 7724317 (Michigan Court of Appeals No. 359536, October 13, 2022) (ECF No.

53-1)[1] *did not* set a new binding Michigan precedent that Section 28 is invalid under state

law. The *Innovo TC Hall* case dealt with the relatively isolated issue of whether Section 28

conflicted with the zoning ordinance provisions concerning the measuring of building height,

and if a conflict existed which provision should control. The *Innovo TC Hall* case did not

consider, discuss or address the underlying legality of Section 28's requirement of an

affirmative vote of the City electorate approving a building taller than 60 feet – and even

more specifically, *Innovo* did not consider whether Section 28 violates the City zoning

ordinance, the Michigan Zoning Enabling Act (MZEA), MCLA § 125.3101 et seq, or the

Home Rule City Act (HRA), MCLA § 117.1. Further, the original trial court decision in *Innovo*

remains effective as to the City by virtue of MCR 7.215(F)(1).

Second, the question of whether Section 28's requirement of voter approval

contradicts and thus violates the MZEA or the HRA *was* considered and adjudicated

between these parties by Judge Power of the Grand Traverse County Circuit Court, in Grand

Traverse County Circuit Court Case No. 18-34701-CZ. Judge Power ruled that Section 28's

requirement of voter approval did *not* violate the MZEA or the HRA, and also rejected

Plaintiff's constitutional claims challenging Section 28; as such, re-litigating this

---

[1] The City Defendants refer to this decision as *Innovo TC Hall* or simply *Innovo* throughout their briefing for convenience and to distinguish it from the numerous other litigations commenced by Save Our Downtown.

issue (especially since *Innovo TC Hall* did not address it) is barred under *res judicata* and/or *collateral estoppel*.

Third, and as Plaintiff's own Brief acknowledges (ECF No. 53, p. 10), to the extent *Innovo TC Hall* does constitute binding precedent it does not completely resolve this case because, while *Innovo TC Hall* holds that rooftop equipment and other appendages are not to be included in the measurement of a building's height, insulation tiles atop a building are part of the building structure and accordingly *should* be included. Plaintiff 326 Land's proposed building has those features which extend the top of the roof to 61.5 feet, 1-1/2 feet over the maximum, even if one does exclude rooftop equipment and other appendages. While perhaps some technical or engineering solution can be found for this, to date none has been forthcoming. It would be inappropriate to grant Plaintiff 326 Land's summary disposition on the basis of *Innovo TC Hall*, until and unless Plaintiff can also demonstrate it can bring its project into compliance with that decision.

### II.    The *Innovo TC Hall* case is not binding precedent, because it did not address the underlying legality of Section 28; it also is not effective as to the City, which was a litigant in the *Innovo* Case.

### A.    *Innovo TC Hall* Did Not Set New Precedent on the Question of Section 28's Legality.

*Innovo TC Hall* did not examine or address the underlying legality of Section 28's requirement of an affirmative vote of the City electorate approving a building taller than 60 feet.

What was at issue in *Innovo TC Hall* was a conflict between Section 28 (as it was being interpreted by Save Our Downtown, or "SOD") and the zoning ordinance provisions dictating how to measure a building's height. Specifically, SOD was attempting to argue that a plain reading of Section 28 conflicted with and superseded the zoning ordinance.

The *Innovo* Court did not agree that there was a conflict between Section 28 and the zoning ordinance. The *Innovo* Court stated at page 6 of its Decision: "It is undisputed that the [Charter] amendment does not expressly address how to measure the height of a building."

Then, at pages 7-8 of its Decision, the *Innovo* Court went on to state that even if a conflict existed between Section 28 and the zoning ordinance that would mean that Section 28 was attempting to change the ordinance. The Michigan Court of Appeals held that to the extent it did so, Section 28 was invalid because the attempted amendment of the zoning ordinance did not comply with the procedural requirements found in the Michigan Zoning Enabling Act (MZEA), MCLA § 125.3101, et seq.

SOD's interpretation of Section 28 stood in direct conflict with the provisions of the zoning ordinance concerning measurement of building height. Conversely, Section 28's requirement of an affirmative vote of the City electorate approving a building taller than 60 feet does not conflict with the zoning ordinance and the MZEA (or with the Michigan Home Rule Act, the "HRA," MCLA § 117.1, et seq.). Instead, Section 28 operates in harmony with the zoning ordinance and with both statutes.

Section 1364.02 of the Traverse City Zoning Ordinance ("TCZO") (**Exhibit A**; TCZO § 1364.02) has always required the issuance of a special land use permit as a prerequisite for building a building taller than 60 feet. The same section of the zoning ordinance has also always required that in order for a special land use permit to be issued several standards must be met, most of which are highly subjective in nature.

    (1)    The use shall be designed, constructed, operated and maintained *so as to be harmonious and compatible in appearance with the intended character of the vicinity.*

(2)     The use *shall not be hazardous nor disturbing to existing or planned uses in the vicinity.*

\* \* \*

(5)     The use shall not involve any activities, processes, materials, equipment or conditions of operation *that would be detrimental to any person or property or to the general welfare* by reason of excess production of traffic, noise, smoke, fumes, glare, odors, or water runoff.

\* \* \*

(7)     Elements shall relate the design characteristics of an individual structure or development or planned develops *in a harmonious manner,* resulting in a coherent overall development pattern and streetscape.

(8)     The use shall be *consistent with the intent and purposes of the zoning district in which it is proposed.*

(Emphasis added). TCZO § 1364.02 does not call for a weighing or balancing of these standards - it requires that *all eight standards be met* before a special land use permit can be issued.

Ultimately these subjective standards are meant to be reflective of what the *public* would like the City to look like. They refer to a community sense of itself, in terms of what development it finds compatible with the City's character and ascetics; for example, one simply cannot determine what is "harmonious and compatible in appearance with the intended character of the vicinity," without asking what character the community intends and whether a development (in this case, a tall building) comports with the community's views of the neighborhood ascetics and the intended character and appearance of the City.

The City's former planning director, Russell Soyring, wrote the TCZO. He gave in the parties' previous litigation in State Court. In that deposition, Mr. Soyring testified that

4

the requirement for a special land use permit for buildings taller than 60 feet reflect a public concern over tall buildings in Traverse City. (**Exhibit B**, Deposition transcript of Russ Soyring in Grand Traverse Circuit Court Case No. 18-34701-CZ, pp. 120-124).

Mr. Soyring further explained that the TCZO provided, even prior to Section 28, that the public would have input as to whether a special land use permit would be issued for a "tall building." *Id.*, pp. 124-125.

There is simply no conflict between these pre-existing procedures under the TCZO and Section 28's requirement of an affirmative vote of the City electorate approving a building taller than 60 feet. Section 28 does not conflict with the TCZO, because the TCZO does not prohibit a vote of the electorate. In fact, Section 28 is not even a zoning regulation. It does not take away or change any of the requirements under the TCZO. It does not reclassify any zoning regulations of certain properties. Instead it operates in tandem with, or supplements, the zoning process by allowing the electorate to have a direct voice in determining the whether a proposed building met the City's subjective aesthetics.

The Charter initiative resulting in Section 28 did not introduce public sentiment into land regulation -- that public sentiment has always been there, and City staff and planners were always required to take it into account. What Section 28 did was ensure that not only would a select group of City staff and planners consider what *they* considered the public sentiment to be (which may or may not be consistent with the actual public sentiment), the public itself would be given an opportunity to provide its own direct input.

Make no mistake, the City considers all of its staff to be well intentioned and to be always acting in good faith, but at the end of the day they can only voice their personal

subjective opinion as to whether the community standards on neighborhood aesthetics are met. Members of the community themselves frequently have different opinions. Since ultimately the standards for issuance of a special land use permit are reflective of the community's sense of neighborhood aesthetics, and those standards are inherently subjective, it makes perfect sense for the community to weigh in by direct vote rather than rely solely on City staff or elected officials -- or at least the City electorate so decided, when they enacted Section 28.

The Michigan Constitution, Art 7, § 22, grants the power and authority to the electors of each city to "adopt and amend its charter, and to amend an existing charter of the city." MCLA § 117.4i(c) of the HRA provides as follows:

> Each city **may** provide in its charter for 1 or more of the following:
>
> (c) The establishment of districts or zones within which the use of land and structures, the height, area, size, and location of buildings, the required open spaces for light and ventilation of buildings, and the density of population may be regulated by ordinance.

This statute's plain language reflects its discretionary nature; the statute states that the City *may* provide in its charter zoning regulations by ordinance. The word "shall" is generally used to designate a mandatory provision, *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 65, 642 NW2d 663 (2002), while "may" designates discretion, *People v Brown*, 249 Mich App 382, 386, 642 NW2d 382 (2002). As a general rule, "the word 'may' will not be treated as a word of command unless there is something in the context or subject matter of the act to indicate that it was used in such a sense." *Mill Creek Coalition v South Branch of Mill Creek Intercounty Drain Dist*, 210 Mich App 559, 565, 534 NW2d 168 (1995). Therefore, the Legislature's use of the word "may" signifies that it intended the section to outline a permissive, as opposed to mandatory, action by the City.

6

In other words, the City was not commanded by the HRA to regulate building heights by ordinance *only*. There is nothing in the HRA that prohibits the City from amending its charter to allow a vote by the electorate regarding a building exceeding 60 feet.

Plaintiff had argued in the prior litigation that since MCLA § 117.4i(c) does not explicitly authorize a city to adopt a charter amendment allowing the electorate to vote on whether a building should exceed 60 feet, the doctrine of *expressio unius est exclusion alterius* (the expression of one thing implies the exclusion of other similar things) precludes such an amendment.

However, as a home rule city Traverse City's electorate is empowered to form for themselves a plan of government suited to their unique needs. Plaintiff's position ignores the well settled principle that a home rule city enjoys not only those powers specifically granted, *but it may also exercise all powers not expressly denied:*

> The Michigan Constitution provides that "[t]he provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor." Const 1963, art 7, § 34. It also provides that "[n]o enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section. Const 1963, art 7, § 22.

> Accordingly, it is clear that home rule cities enjoy not only those powers specifically granted, but they may also exercise all powers not expressly denied. Home rule cities are empowered to form for themselves a plan of government suited to their unique needs and, upon local matters, exercise the treasured right of self-governance. See Const 1963, art 7, § 22.

*Detroit v Walker*, 445 Mich 682, 689-690; 520 NW2d 135 (1994). At 691, *Walker* also held that the prevailing rules of statutory construction apply to charter provisions, meaning that Section 28 must be presumed to be valid and should be deemed to have a rational

basis as long as it advances some public interest. See *Kropf v. City of Sterling Heights*, 391 Mich 139, 188 (1974).

In *Kent County Prosecuting Attorney v City of Grand Rapids*, No 316422 (Mich App 2015) (**Exhibit C**) the Michigan Court of Appeals considered whether an amendment to the Grand Rapids City Charter which created a civil infraction for the possession of marijuana was preempted by state law. The Court ultimately determined the amendment to the charter was valid notwithstanding the conflicting provisions of state law. In doing so, the Court expressly rejected the *expressio unius est exclusio alterius* argument, in light of the State Constitution's provisions at Article 7. The Court reasoned:

> However, in construing Const 1963, art 7, § 22 and Const 1963, art 7, § 34, the Michigan Supreme Court ruled that "home rule cities enjoy not only those powers specifically granted, *but they also may exercise all powers not expressly denied*." *Walker*, 445 Mich at 690. Therefore, it is clear that the doctrine of *expressio unius est exclusio alterius* simply is inapplicable to limit a home rule city's power. Consequently subsections (a) and (b) of the Charter Amendment are not preempted by MCL 117.4b through MCL 117.4r.

Likewise, the mere fact that the HRA does not specifically grant the City to adopt a city charter amendment allowing the electorate to vote on whether to allow a building to exceed 60 feet does not render the amendment invalid because "home rule cities enjoy not only those powers specifically granted, but they also may exercise all powers not expressly denied*"*.

The *Innovo TC Hall* decision addresses none of this. *Innovo* did not address the underlying legality of Section 28's requirement of an affirmative vote of the City electorate approving a building taller than 60 feet. It did not examine if the requirement of voter approval conflicted with the zoning ordinance or the state statutes. It did not discuss the doctrine of *expressio unius est exclusion alterius*. It did not examine the provisions of the

8

Michigan 1963 Constitution, specifically article 7, §§ 22 and 34, which reserves to the City and its electorate "all powers not expressly denied."

*Innovo* sets no new precedent on the question of the underlying legality of Section 28's requirement of an affirmative vote of the City electorate approving a building taller than 60 feet. It does not even examine or discuss the question. Since *Innovo TC Hall* did not establish any new precedent, it cannot form the basis of a motion for summary judgment that seeks to declare Section 28 to be invalid.

**B.      Innovo TC Hall is Not Effective As to the City (a Litigant in the Innovo Case) Under MCR 7.215(F)(1).**

The parties disagree as to which court rule governs the effect of the *Innovo TC Hall* decision. MCR 7.215(C)(2) states that "A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis." MCR 7.215(F)(1) states "the Court of Appeals judgment is effective after expiration of the time for filing an application for leave to appeal to the Supreme Court, or, if such application is filed, after the disposition of the case by the Supreme Court." SOD has filed an application for leave to appeal to the Michigan Supreme Court, which that Court has not yet acted on.[2]

Plaintiff urges this Court to follow MCR 7.215(C)(2), and apply the legal "precedent" of *Innovo* by holding Section 28 is illegal and invalid (even though, as demonstrated above, *Innovo* does not actually set any new law or precedent on the subject of Section 28's legality).

Interestingly, this was not always Plaintiff's position. Though Plaintiff now claims it was the City that "refused" to recognize *Innovo TC Hall,* in its Supplemental Brief on

---

[2] As of this writing, the Michigan Supreme Court has not yet accepted or declined SOD's application for leave.

mootness, ECF No. 43, it stated at page 3 that "the Court of Appeals' decision does not render this dispute moot for two independent reasons." The first of those reasons given by Plaintiff is that the *Innovo TC Hall* case is not effective pursuant to MCR 7.215(F)(1)(a). Plaintiff certainly could have, but did not, reference MCR 7.215(C)(2) if it considered *Innovo TC Hall* to be binding precedent.

In any event, in their own supplemental brief on mootness (ECF No. 42), the City Defendants took the position that MCR 7.215(F)(1)(a) applies over MCR 7.215(C)(2) for two reasons. Those same reasons are still valid today and call for a denial of Plaintiff's motion.

First, the City Defendants quite simply did not read *Innovo TC Hall* the way Plaintiff now claims to -- specifically, we didn't read it as establishing a new legal precedent that can be used to challenge the overall validity of Section 28. That continues to be the City Defendants' firm view. The reasons for this view have already been addressed in subsection A above.

Second, the other reason the City took the position that MCR 7.215(F)(1)(a) governs is that the City is itself is a party to the *Innovo TC Hall* case. Thus, under the court rule, Judge Power's decision is still binding and enforceable *as to the City*. This includes the following prohibition in Judge Power's Order of November 18, 2021:

> No building over 60 feet in height as measured herein shall be constructed, unless and until the requirements of Section 28 are complied with and satisfied.

(See ECF No. 51 - 11).

Thus, even if *Innovo TC Hall* set new legal precedent on the overall legality of Section 28 (which it does not) then perhaps that precedent could be enjoyed by other

parties in other cases under MCR 7.215(C)(2), but the City being a party to the *Innovo TC Hall* case does not have that luxury. Judge Power's ruling and order remains effective as to it at least until the Michigan Supreme Court acts on SOD's pending appeal in the *Innovo* case.

The fact that Judge Power's ruling and order is still effective as to the City under MCR 7.215(F)(1)(a) has consequences for this motion because this Court cannot grant Plaintiff summary judgment without effectively overturning Judge Power's November 18, 2021 order in *Innovo* – an order which as of now is effective as to the City. This would violate the Rooker-Fieldman Doctrine (barring lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1237 vests sole jurisdiction to review such claims in the Supreme Court), see *VanderKodde v Mary Jane M. Elliott, P.C.,* 951 F. 3d 397, 402 (CA 6 2020); as well as the Pullman Doctrine (requiring a federal court to abstain, i.e, defer and "stay its hands" when a constitutional issue in the federal action will be mooted or presented in a different posture following conclusion of the state court case). See *Growe v Emison,* 507 U.S. 25, 32, 113 S. Ct. 1075, 122 L.Ed.2d 388 (1993).

The City Defendants urge this Court to instead abstain and defer to the state court *Innovo* proceedings, denying Plaintiff's motion, at least until such time as the Michigan Supreme Court has addressed SOD's appeal.

### III. Plaintiff's claims were previously adjudicated by Judge Power in the prior State Court action and cannot be re-litigated by virtue of *res judicata* and/or *collateral estoppel*

Although this is a topic that the City Defendants have addressed in their own pending Motion for Partial Summary Judgement on the grounds of *res judicata* and/or

*collateral estoppel* (ECF No. 51), some further elaboration is warranted as to the specific statutory claims that Plaintiff asserts have been impacted by the *Innovo TC Hall* decision.

Plaintiff's Brief (ECF No. 53) claims at page 8 that Count V of Plaintiff's Complaint alleges that Section 28 of the City Charter is contrary to and superseded by the MZEA. Actually, a reading of Plaintiff's Complaint (ECF No. 1) reveals that in Count V they alleged it was contrary to and superseded by the HRA. In any event, in the prior litigation, Judge Power conclusively ruled that Section 28's requirement of voter approval did not contradict either statute.

In the prior state court action, Plaintiff challenged the legality of Section 28 on constitutional grounds and also argued that the Charter amendment conflicted with the zoning ordinance, the HRA, and the MZEA. (See ECF No. 51-4, Exhibit D to Defendants' Motion for Partial Summary Judgment on the grounds of *res judicata* and/or *collateral estoppel*, Plaintiff's complaint in prior state court action, Counts II and III). Judge Power ruled against Plaintiff on these claims. (See ECF No. 51-5 and 6, Exhibits E and F to Defendants' Motion on the grounds of *res judicata* and/or *collateral estoppel*).

*Res judicata* applies where (1) the prior action was decided on its merits, (2) the second action was or could have been resolved in the first action, and (3) both actions involve the same parties or their privies. *Solution Source, Inc. v LPR Assoc Ltd Partnership,* 252 Mich App 368, 376 (2002). It bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised by did not. *Abbott v Michigan,* 474 F.3d 324, 331 (CA 6 2007).

The prior action was decided on its merits. Plaintiff filed a complaint in state court which challenged Section 28 on constitutional and statutory grounds, including Plaintiff's contention that Section 28 violated the TCZO, the MZEA, and the HRA. (ECF No. 51-4). After the parties filed cross motions for summary disposition, Judge Power ruled from the bench on these issues on June 25, 2019 (ECF No. 51-5), followed by a written order ruling against Plaintiff's claims on June 26, 2019 (ECF No. 51-6).

Plaintiff's constitutional and statutory challenges to Section 28 plainly were, or could have been, addressed in the prior action. Any argument that this case presents some new "cause of action" on the basis of changes to the building or other subsequent events is absurd, as to the challenge to Section 28's legality. Nothing has happened to create a "new" cause of action; this is the same cause of action that Judge Power addressed in 2019.

Both actions involve the same parties or their privies. Both Plaintiff and the City were litigants in the previous state court action as well as this case. Mr. Winter was not a litigant in the prior case, but Mr. Winters' interests and positions in this litigation as the City's Planning Director are indistinguishable from the City's interests and positions in both litigations. "Privity" merely requires a substantial identity of interest. *Duncan v Michigan*, 300 Mich App 176, 194 (2013), *app dism* 494 Mich 879.

*Collateral estoppel* precludes re-litigation of an issue where (1) the parties in both proceedings are the same or in privity; (2) a valid and final judgment was made in the first proceeding; (3) the same issue that is asserted to be precluded was actually litigated in the first proceeding; (4) that issue was necessary to the judgment in the first proceeding; and (5) the party against whom preclusion is asserted at a full and fair opportunity to

litigate such issue. *Spectrum Health Continuing Care Grp. v Anna Marie Bowling Irrevocable Tr.,* 410 F3d 304, 310 (CA 6 2005).

This action is between the same parties or their privies. Both Plaintiff 326 Land and the City of Traverse City were parties in the previous state court action. Shawn Winter was not, but it seems absurd to suggest that Mr. Winter as the Planning Director of the City of Traverse City doesn't stand in privity with the City – "privity" as a requirement of *collateral estoppel* requires a substantial identity of interest at a working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation. *People v Lee,* 314 Mich App 266, 279 (2016). Mr. Winters' interests and positions in this litigation are indistinguishable from the City's interests and positions in both litigations. It seems absurd to argue, as Plaintiff does at ECF No. 57, p. 12, that in this case the "parties are not identical."

There is no question that a valid and final judgment was made in the prior state court proceeding.

The underlying legality of Section 28's requirement of an affirmative vote of the City electorate approving a building taller than 60 feet was actually litigated in the prior state court proceeding. Plaintiff challenged it on several constitutional and statutory grounds. The issues were ultimately resolved by the state court judge in ruling on cross motions for summary disposition.

The underlying legality of Section 28's requirement of an affirmative vote of the City electorate approving a building taller than 60 feet was certainly necessary to the judgment in the first proceeding. It was in fact the primary issue in the first proceeding.

Finally, Plaintiff 326 Land had a full and fair opportunity to litigate the legality of Section 28's voter requirement in the prior State Court proceeding. 326 Land initiated that proceeding, was represented in that proceeding by highly competent counsel, and participated in all the proceedings including the summary dispositions motions and hearings. It had the opportunity to appeal the state court's ruling, and opted not to.

### IV. The recent *Innovo TC* Hall decision does not warrant granting summary judgment to Plaintiff, because Plaintiff's building has rooftop features that are considered part of the structure and extend above 60 feet

Even if the *Innovo TC Hall* decision established binding precedent in this case; and even if *res judicata* and/or *collateral estoppel* do not apply; summary disposition in Plaintiff's favor would still be inappropriate. The reason is that Plaintiff's building has rooftop amenities which are considered part of the structure and still extend above the maximum height of 60 feet, even under the ruling adopted by *Innovo TC Hall*.

Attached as **Exhibit D** is a select portion of the plans from 326 Land's project, some of which have been blown up for legibility. Attached as **Exhibit E** is an Affidavit of David Weston, the City's Planning and Zoning Administrator. As Mr. Weston explains in his Affidavit, the plans show Plaintiff's structure as topping out at 60 feet in height. However, the detail also shows insulation, a roofing membrane, and pavers on top of the structure and shows that if one includes those items in the height measurement, the height becomes 61 feet and 6 inches.

Mr. Weston's Affidavit further indicates that prior to the *Innovo TC Hall* decision, the City did not include the insulation, roofing membrane, and pavers in measuring a building's height.

The Court of Appeal in *Innovo TC Hall* rejected this practice at pages 8 and 9 of its Opinion (ECF No. 53-1). The Court held that rooftop amenities such as roof pavers were considered part of the structure, and thus had to fit within the 60 foot height measurement. Since Innovo's building as planned exceeded 60 feet and had not been approved by a majority of the city electorate, the Court of Appeals upheld the trial court's granting of summary disposition in SOD's favor on that issue. *Id.*

In light of this, the *Innovo TC Hall* decision cannot possibly form the basis of a granting of summary disposition to the Plaintiff. Even if we were to give the ruling precedential and binding effect in this case (which, for the reasons stated above, we should not), that still doesn't warrant summary disposition in Plaintiff's favor because Plaintiff's building still is in excess of 60 feet under the new rule espoused by *Innovo TC Hall.*

It could certainly prove to be the case that the *Innovo TC Hall* decision becomes both effective and precedentially binding; a decision from the Michigan Supreme Court as to whether it is going to accept SOD's leave to appeal is expected at any time. If at some point the Michigan Supreme Court disposes of SOD's appeal, either by rejecting its application or accepting the appeal but ruling against it on the merits, the *Innovo TC Hall* case will indeed become both effective and precedentially binding on the City. At that point the only remaining bar to Plaintiff's project will be the one foot six inches of insulation, pavers, etc. at the top of its structure.

And it may also well be that a technical or engineering solution emerges to solve that last one foot and six inches. Thus far, however, none has been advanced. It would be plainly inappropriate however for this Court to grant summary disposition to Plaintiff

on the basis of *Innovo TC Hall* when by Plaintiff's own admission its building does not comply with *Innovo TC Hall.*


GARAN LUCOW MILLER, P.C.

Dated: July 5, 2023                    By: _____
                                              Peter B. Worden, Jr. (P41899)
                                              Attorneys for Defendants


## CERTIFICA\TE OF SERVICE

I hereby certify that on July 5, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF, which will send notification of such filing to the following: All ECF Attorney(s) of Record on this case.

GARAN LUCOW MILLER, P.C.

Dated: July 5, 2023                    By: _____
                                              Peter B. Worden, Jr. (P41899)
                                              Attorneys for Defendants

17

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Section 1364.02 of the Traverse City Zoning Ordinance ("TCZO") |
| B | Deposition transcript of Russ Soyring |
| C | *Kent County Prosecuting Attorney v City of Grand Rapids*, No 316422 (Mich App 2015) |
| D | Select portion of the plans from 326 Land's project |
| E | Affidavit of David Weston |

18