UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| 326 L<small>AND COMPANY</small>, LLC,              ) | |
| Plaintiff,     ) | |
| ) | No. 1:22-cv-45 |
| -v-                                                     ) | |
| ) | Honorable Paul L. Maloney |
| C<small>ITY OF</small> T<small>RAVERSE</small> C<small>ITY</small>, *et al.*,              ) | |
| Defendants.     ) | |
| ) | |

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR MOTION FOR SUMMARY JUDGMENT

In the 2016 general election, the voters in Traverse City approved an amendment to the City Charter, Proposition 3. The amendment, now found in Chapter 4, Section 28, requires any building over 60 feet in height to be approved by a majority of the voters before the City can approve the project. In July 2021, Plaintiff 326 Land Company secured a land-use permit from Traverse City for a proposed building in downtown Traverse City. At the time, the City did not think that Section 28 applied to the proposal. In November 2021, a state court issued an opinion concerning how buildings must be measured for the purpose of Section 28 and also issued an injunction. Traverse City interpreted the injunction as applying to Plaintiff's land-use permit and issued a stop-work order to Plaintiff on November 18, 2021.

Plaintiff filed this lawsuit challenging the stop-work order. The parties submitted a proposed resolution to this lawsuit that would have allowed Plaintiff to construct their proposed building. The parties concluded that Plaintiff had vested rights in the permit. The

Court interpreted the proposed resolution as a consent decree and declined to approve it. The Court questioned whether Michigan law supported the parties' conclusion that Plaintiff had rights vested in the permit. The Court also found that the public's interest, in particular the voters in Traverse City, weighed against the agreement.

A few weeks after the Court rejected the proposed settlement, the parties filed dispositive motions. Defendant Traverse City and Shawn Winter filed a motion for summary judgment on Counts I, II, IV, V and VI (ECF No. 50). Plaintiff filed a motion for summary judgment on Counts I and IV (ECF No. 54). Because Plaintiff has not established the existence of a property right, the Court will grant Defendants' motion and will deny Plaintiff's motion.

I.

This dispute relates back to a voter-approved amendment in 2016 to Traverse City's charter. In the November 2016 election, the voters approved Proposition 3, which became part of the City Charter, Chapter IV, Section 28. Section 28 requires a majority of voters to approve the construction of any building over 60 feet. In April 2017, the City Commission adopted a policy for implementing Section 28 that measured the height of buildings using the same manner as it had used in the past.

When the voters approved the new provision, Plaintiff owned property in downtown Traverse City and had plans to construct a 100-foot building there. Plaintiff revised its plan for the building and in July 2021 obtained a land-use permit from Traverse City for the foundation for a 5-story residential building. (ECF No. 50-10 PageID.959). On August 6, 2021, Plaintiff submitted an application for a construction permit to Grand Traverse County

which stated that the proposed building would be 60 feet above ground (ECF No. 55-9 PageID.1782). The county approved the permit on November 12, 2021 (ECF No. 50-11 PageID.961).

Also in the summer of 2021, a group called Save Our Downtown filed a lawsuit challenging Traverse City's approval of a different proposed building, the Innovo project. Similar to Plaintiff's proposed construction, Traverse City had determined Innovo's proposed building did not exceed 60 feet and did not require Innovo to seek approval of the proposal from the electorate. Innovo successfully intervened in the lawsuit. The City and Innovo each filed summary disposition motions. Following a hearing on November 10, 2021, Judge Powers concluded that when measuring the height of a proposed building, the measurement must include any covering on the top of the roof slab. In addition, Judge Powers found that appurtenances on top of the building must also be included when calculating the building's height.

Judge Powers denied the City's and Innovo's motions for summary disposition and granted summary judgment to the plaintiff under Michigan Rule of Court 2.116(I)(2) after concluding a lack of genuine issue of material fact that the building exceeded 60 feet in height because of the layer on top of the roof slab. As part of his ruling, Judge Powers issued an injunction against Traverse City prohibiting the City from approving any building in excess of 60 feet without a vote by the public (*id.* at 74-75 (PageID.1596-97). Judge Powers issued a written order on November 18, 2021, which included the following paragraph:

> The City ... [is] enjoined from approving any proposal to construct a building with a height above 60 feet as measured herein, without first placing the proposal on the ballot and receiving the approval of the electors as required by

> Section 28. No building over 60 feet in height as measured herein shall be constructed, unless and until the requirements of Section 28 are complied with and satisfied.

(ECF No. 51-11 PageID.1603).

The next day, on November 19, 2021, the City issued a stop-work order to Plaintiff referencing the land-use permit issued in July 2021 (ECF No. 50-16 PageID.1055).

On appeal, the Michigan Court of Appeals affirmed Judge Powers in part and reversed in part. *Save Our Downtown v. City of Traverse City*, 997 N.W.2d 498 (Mich. Ct. App. 2022). The court found that the City's zoning ordinance determined how to measure the height of a building, which excluded rooftop equipment from the measurement. *Id.* at 534-5. As a result, the court of appeals concluded that the trial court erred by granting declaratory and injunctive relief on the conclusion that the charter amendment required a method of measuring the height of a building that differed from the method found in the zoning ordinance. *Id.* at 540. The court, nevertheless, found that the trial court did not err in granting summary disposition to the plaintiff. *Id.* at 540. The court found a lack of a genuine issue of material fact that the building measured 60 feet to the top of the roof deck and that an approximately 2-foot covering lay on top of the roof deck. *Id.* at 541. Therefore, the height of the proposed building exceeded the 60-foot height limitation in Section 28. *Id.* at 547.

The plaintiff sought leave to appeal with the Michigan Supreme Court, which denied leave on August 22, 2023. *Save Our Downtown v. City of Traverse City*, 993 N.W.2d 829 (Mich. 2023).[1]

Plaintiff filed this lawsuit on January 18, 2022.

## II.

A trial court should grant a motion for summary judgment only in the absence of a genuine dispute of any material fact and when the moving party establishes it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Crop. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this burden, the moving party must identify those portions of the pleadings, depositions, answers to interrogatories, admissions, any affidavits, and other evidence in the record, which demonstrate the lack of genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). The moving party may also meet its burden by showing the absence of evidence to support an essential element of the nonmoving party's claim. *Holis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 543 (6th Cir. 2014). When faced with a motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Pittman*, 901 F.3d at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). The court must view the facts and draw all reasonable

---

[1] When the parties briefed this motion, the Michigan Supreme Court had not yet declined leave to appeal. The parties disagreed whether the Michigan Court of Appeals' opinion was binding under the Michigan Rules of Court. The denial of leave to appeal makes the court of appeal's decision the final decision.

inferences from those facts in the light most favorable to the nonmoving party. *Maben v. Thelen*, 887 F.3d 252, 263 (6th Cir. 2018) (citing *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The parties filed cross motions. For Plaintiff's motion, the Court views the evidence in the light most favorable to Defendants. For Defendants' motion, the Court views the evidence in the light most favorable to Plaintiff.

### III.

The complaint contains six counts or causes of action. For Count I, Plaintiff asserts a due process and takings claim based on the stop-work order. In Count II, Plaintiff pleads a violation of substantive due process against both Section 28 generally and as applied to its proposed building. Count III advances an equal protection claim based on the denial of a right to construct a building of the same or nearly the same height as existing buildings in downtown Traverse City. Count IV asserts a claim for deprivation of due process because Section 28 does not authorize the revocation of a land-use permit. Count V asserts a violation of due process because the City justified revocation of the land-use permit on Section 28, a provision that contradicts state law. Finally, in Count VI, Plaintiff pleads a takings claim based on its inability to construct its proposed building.

### A.

Defendants seek summary judgment on Counts I, II, IV, V and VI. Defendants argue that, as either due process claim or as a takings claim, each of these causes of action requires Plaintiff to have a protected property interest. Defendants contend that Plaintiff did not acquire a vested property interest before the stop-work order issued. In its motion, Plaintiff

6

argues that it acquired a vested right in the building permit issued by Grand Traverse County because it had already started construction at the site before Traverse City issued the stop-work order.

For constitutional claims involving property rights and property interests, those rights and interests ordinarily arise under state law. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *EJS Props, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). In Michigan, vested rights typically arise in situations where the use of real property does not comply with current zoning restrictions and the nonconforming use "is protected because it lawfully existed before the zoning regulation's effective date." *Heath Twp. v. Sall*, 507 N.W.2d 627, 629 (Mich. 1993). "Once the nonconforming use is established, a subsequently enacted zoning restriction, although reasonable, will not divest the property owner of the vested right." *Id.* at 630.

Michigan has recognized vested property rights in building permits for nearly one hundred years. *See City of Lansing v. Dawley*, 255 N.W. 500, 501 (Mich. 1929). The Sixth Circuit succinctly described vested right under Michigan law: "it is well established that possession of a valid building permit coupled with substantial reliance thereon, including actual construction, will bestow property rights to a non-conforming structure." *Dorr v. City of Ecorse*, 305 F. App'x 270, 275 (6th Cir. 2008). The facial simplicity of this century-old, well-established law is belied by the Michigan Supreme Court's acknowledgement that, for vested property rights, "[w]e cannot state a comprehensive formula." *Sall*, 502 N.W.2d at 633.

> Each case must stand on its own facts. It is recognized that every zoning regulation involves some impairment of rights. Whether the rights have attained a status so sacred, so inviolate, that they rise above legislative command, i.e., that the owner has a "vested" right in some particular use, involves a balancing of factors, a determination as to whether the owner's interest is so substantial that its destruction cannot reasonably be justified in light of the accomplishment of the objective of the ordinance. It is not a matter susceptible to precise quantitative measurement, so may feet excavated, so many trucks ordered, or so many men hired.

*Bloomfield Twp. v. Beardslee*, 84 N.W.2d 537, 542-43 (Mich. 1957).

The parties agree that the building permit issued by Grand Traverse County meets the permit element for vested rights. Michigan law recognizes that a party may have vested rights in a building permit but not in site plans. *Schubiner v. West Bloomfield Twp.*, 351 N.W.2d 214, 219 (Mich. 1984) ("Under all the cases cited herein, a building permit, or its counterpart, a permit to commence operations, is the *sine qua non* for obtaining 'vested rights.' An approved site plan is not a permit to build."). The Traverse City Ordinance Code authorizes land-use permits under § 1322.01. The ordinance requires a land-use permit before the construction of a building when that construction requires a building permit. City of Traverse City Ordinance § 1322.01(a)(1). Plaintiff obtained the land-use permit from Traverse City on July 20, 2021, and obtained a building permit for new construction from Grand Traverse County on November 12, 2021. Plaintiff contends the building permit provides a basis for finding vested rights (ECF No. 55 at 5 PageID.1724). Defendants concede that Plaintiff had obtained "all the necessary permits allowing it to proceed with construction" (ECF No. 50 at 19 PageID.663).[2]

---

[2] In the opinion rejecting the settlement agreement, this Court questioned whether Plaintiff could have vested rights in a land-use permit (ECF No. 46 at 12-13 PageID.615-16). In these

In addition to a permit, a party must show substantial reliance on that permit before its interest in the permit becomes vested. *See Lyon Dev. Co. v. Dept. of Nat. Res.*, 403 N.W.2d 78, 81 (Mich. Ct. App. 1986) (explaining that "any property rights associated with a construction permit do not vest until construction is undertaken in reliance upon the permit."). Over the years, the Michigan courts have provided some guidance for the sort of activities necessary to acquire vested rights in a nonconforming structure. The possessor of the permit must show "work of a substantial character done by way of preparation for an actual use of the premises." *Beardslee*, 84 N.W.2d at 542. Preliminary operations such as "ordering plans, surveying the land, [and the] removal of old buildings are not sufficient." *Id.* "Michigan case law is clear that there must be some construction beyond preliminary preparation to establish a prior nonconforming use." *Sall*, 502 N.W.2d at 632.

Not all construction activities contribute to the creation of a vested right. The construction activities must be for an actual use that is nonconforming, which "must be apparent and manifested by a tangible change in the land, as opposed to intended or contemplated by the property owner." *Gackler Land Co. v. Yankee Springs Twp.*, 398 N.W.2d 393, 398 (Mich. 1986). When the construction activities improve a property in a manner consistent with both conforming and nonconforming uses, the construction does not create vested rights in the nonconforming use. *See Sall*, 502 N.W.2d at 630; *see, e.g., Belvidere Twp. v. Heinze*, 615 N.W.2d 250, 253 (Mich. Ct. App. 2000) (per curiam)

---

motions, the parties do not attempt to answer that question and instead focus on the building permit issued by the County. The Court notes that the stop-work order only revoked the land-use permit, not the county-issued building permit. Because the parties do not dispute the first prong for vested rights, a valid permit, the Court will proceed as though Plaintiff has established that element.

(concluding that the construction of a manure pit and sewer system on a farm that would support a nonconforming use would be "equally useful for a lawful, conforming use, such as the operation of a hog farm that does not qualify as a concentrated livestock operation."). *Gackler* and *Sall*, two opinions considering vested rights in plats, illustrate that even extensive preparatory excavation and construction will not give rise to vested rights when the work would support a conforming use. *See Gackler*, 398 N.W.2d at 398 (finding that road construction, surveying, grading and other excavation work would support a conforming use and, the "improvements, therefore, do not constitute work of a substantial character which makes apparent the actual use of the plat as a single-wide mobile home plat."); *Sall*, 502 N.W.2d at 631-32 (obtaining a topographical survey, clearing trees, removing top soil, drilling four test wells, and conducting road excavation all constituted preparatory work and did not constitute work of a substantial character for a nonconforming use).

Plaintiff points to evidence that some work for the foundation occurred prior to the stop-work order. A photo (ECF No. 55-12 PageID.1790) purportedly taken on November 18 shows eight or more squarish holes had been excavated on the site.[3] The holes were created based on site surveys (ECF No. 50-18 McIntyre Dep. at 18-24 PageID.1165-1171). These holes would later become the location of pile caps (ECF No. 50-16 Laureto Dep. at 30-31 PageID.1090-91). Before creating a pile cap, a pile or vertical shaft must be drilled into the ground by a borer or screw auger which would later be filled with reinforced concrete (*see id.* at 27 PageID.1087; at 29-30 PageID.1089-90). When the stop-work order issued,

---

[3] Plaintiff refers the Court to plans showing the location of pile caps (*see* ECF No. 551-15 PageID.1819). The plans appear to show the need for at least thirty pile caps.

no pilings had been drilled (*id.* at 33 PageID.1093; ECF No. 50-17 Moore Dep. at 11 PageID.1137). After the pilings are created, a cap (piling cap) is created on top of the piling (McIntyre Dep at 30 PageID.1090). Because the soil on this site contains sand, these pile caps needed to be poured into a form (*id.* 32 PageID.1092). When the stop-work order issued, some of the pile-cap holes had been excavated but no forms had been constructed and no pile caps had been poured (*id.* at 31-32 PageID.1092-93). When the stop-work order issued, the only new construction or improvements that had occurred was the excavation of the pile- cap holes (Moore Dep. at 14 PageID.1140).

Plaintiff has not established that the excavation of the holes for the pile caps qualifies as work of a substantial character for the purpose of acquiring vested rights. The excavation work for the pile caps did not make the nonconforming use apparent and manifest. *See Belvidere Twp.* 615 N.W.2d at 253 ("The work of a substantial character must be toward the actual use of the land for the nonconforming purpose. The actual use that is nonconforming *must be apparent and manifested* by a tangible change in the land, as opposed to intended or contemplated change by the property owner.") (emphasis added; citations omitted). The foundation plans for the proposed building could be used as the foundation plans for a building that would not require a vote under Section 28 (McIntyre Dep. 43-44 PageID.1190-91; Laureto Dep. at 58-59 PageID.1118-19). And, Plaintiff used the same foundation plans for the revised building that is currently under construction (Laureto Dep. at 60-61 PageID.1120-21). The only construction that occurred, the excavation of holes for the less than one-third of the planned pile caps, could have been and

11

actually were used for a conforming building (one that does not exceed sixty feet and does not require a vote of approval by the public).

As other evidence to support vested rights, Plaintiff argues that specialized materials had been fabricated and delivered to the construction site. In particular, rebar had been ordered and manufactured to the specifications of this project (Laureto Dep. at 49 PageID.1109).

Plaintiff's evidence does not establish that the rebar constitutes the sort of work that will support a claim for vested rights. First, the nonconforming use would not be apparent and manifested from the rebar itself. *See, e.g., Dingeman Advert.*, 223 N.W.2d at 690-92 (noting that a large portion of the frame of a nonconforming billboard had been constructed after the building permit issued and before the county revoked the permit). Second, the same rebar could be used for a foundation for a building that would not require a vote, a building that did not exceed sixty feet. Finally, the record does not establish that Plaintiff purchased and had the rebar manufactured in reliance on the building permit. The construction company created a proposal for the foundation piles in April 2022 (ECF No. 55-17 PageID.1844-46). The company and the general contractor exchanged emails about the foundation piles in July 2021 (*id.* PageID.1843). Plaintiff did not apply for the building permit until August 2021. Plaintiff references a billing statement from the general contractor dated November 2 and points to a line in the category "deep foundations" with a charge of $138,750 (ECF No. 55-16 PageID.1839). Viewing this billing statement in the light most favorable to Plaintiff does not permit the Court to infer that the contractor manufactured the

rebar and Plaintiff purchased rebar after the building permit issued and before the stop-work order issued.

Plaintiff contends that the removal and demolition of the building that existed on the site can be considered for the purpose of vested rights. Plaintiff attempts to distinguish opinions reaching the opposite conclusion by arguing that the buildings in those opinions did not have any value.

Plaintiff's removal a useful or valuable structure from the site for its proposed building does not constitute the sort of work that would support the acquisition of vested rights. Plaintiff's argument ignores the reasoning that runs throughout the vested rights body of law. Courts consistently focus on the nature of the work performed in reliance on a building permit. See *City of Ann Arbor, Michigan v. Northwest Park Const. Corp.*, 280 F.2d 212, 216 (6th Cir. 1960) ("In *City of Lansing v. Dawley*, 247 Mich. 394, 225 N.W. 500, it was held that no vested rights can be acquired by an owner of realty in zoned property, until he has obtained a building permit, and in reliance thereon, has done work of a substantial nature toward the construction of the building, even though large expenditures of time and money might otherwise have been made."); *Schubiner v. West Bloomfield Twp.*, 351 N.W.2d 214, 219 (Mich. Ct. App. 1984) ("Further, the grant of a permit to build does not itself confer the grantee 'vested rights.' Actual construction must commence. The making of preparatory plans, landscaping and the removal of an existing structure is not sufficient.") (all citations omitted). Plaintiff did not remove the prior building in reliance on the building permit issued in November 2021. Plaintiff removed the building in advance of obtaining the building permit for which it asserts vested rights. Construction work that occurred prior to the day

the County issued the building permit could not be undertaken in reliance on the building permit. *See, e.g., Charter Twp. of West Bloomfield v. United German American Recreational Soc'y*, No. 366565, 2025 WL 511175, at *5 (Mich. Ct. App. Feb. 14, 2025) ("Further, they constructed the new cottage *before* they were purportedly given the *after-the-fact* permit, so the cottage could not have been constructed in reliance on the permit.") (italics in original). And the removal of the previous building did not make the nonconforming feature of the proposed building apparent and manifested. Removing the previous building would be consistent with construction of a new structure that conforms to the zoning laws.

In multiple places in its brief, Plaintiff identifies the amount of money it spent over the years towards construction of the proposed building. The Michigan Supreme Court rejected a similar argument in *Dawley*. The court rejected Dawley's claim for vested rights after concluding that the work performed on the new building occurred after the City revoked his permit; his "preliminary work was not sufficient to create a vested right[.]" *Dawley*, 225 N.W. 501. The Court then favorably quoted *Rice v. Van Vranken*, 229 N.Y.S. 32, an opinion issued in May 1928 from a New York court: "Evidently, the test in each case as to whether a holder of a permit has acquired vested rights thereunder is, not whether he has spent much or little in reliance on it, but rather whether there has been any tangible change in the land itself by excavation and construction." *Dawley*, 225 N.W. 501 (quoting *Rice*). The Michigan Court of Appeals also rejected a similar argument by a plaintiff who intended to develop property as a retail fireworks business. *See Soss v. Whiteford Twp.*, No. 278914 and 278915, 2007 WL 2892974 at *2 (Mich. Ct. App. Oct. 4, 2007) (per curiam). The court rejected the landowner's evidence of vested rights, activities that totaled

approximately $1.4 million. *Id.* (noting that the landowner had entered into a purchase agreement for the property, obtained financing, closed on the sale, contracted for engineering and architectural services for construction of a building for retail fireworks sales, obtained site plan approval, entered into a contract for construction of the building, acquired permits, started off-site construction of a prefabricated building, commenced grading of the site and excavation work, obtained surveys and also obtained well-drilling services).

In the Court's view, the work done in reliance on the County building permit falls well short of the substantial construction threshold necessary for vested rights in a nonconforming building. The vast majority of Plaintiff's evidence supporting its claim constitutes preparatory work conducted before Plaintiff even applied for the building permit. *See, e.g., Ogle v. Sevier Cnty. Reg'l Planning Comm'n*, 838 F. App'x 913, 920 (6th Cir. 2020) ("Even if the concept plan were approved and the Partnership began utility and road construction, it still had to obtain final plat approval prior to proceeding further. Any construction before final approval was explicitly at its own risk, just as in *EJS Properties*."). None of the construction work on the site specifically advanced the nonconforming aspect of the proposed building. All of the construction work on the site would also have been done for conforming building. The only work done in reliance on the building permit—work done after obtaining the permit—was the excavation of the pile-cap holes. When compared to the "total planned development", that excavation work falls "short of the substantial construction threshold." *D.T. Real Estate Inv., LLC v. Charter Twp. of Huron*, No. 23-10780, 2025 WL 609996, at *6 (E.D. Mich. Feb. 25, 2025).

Viewing the evidence in the light most favorable to Plaintiff does not create a genuine issue of material fact concerning the creation of vested rights. Defendants have established that Plaintiff did not substantially rely on the building permit issued by the County. Plaintiff's evidence does not establish that the work was completed after the building permit issued, or that the work made the nonconforming use apparent and manifested. When compared to the entirety of the completed project, the work done when Traverse City issued the stop-work order fell well short of substantial construction.

B.

As part of Count I, Plaintiff pleads that the City "is estopped from issuing the Stop Work Order for construction as approved by the July LUP" (ECF No. 1 Compl. ¶ 108).

Defendants seek summary judgment and dismissal of any claim for estoppel. Defendants argue that Michigan law does not recognize estoppel as a cause of action.

Under Michigan law, "[e]quitable estoppel is not an independent cause of action, but rather a doctrine that may assist a party by preventing the opposing party from asserting or denying the existence of a particular fact." *In re Berrien Cnty. Treasurer for Foreclosure*, 988 N.W.2d 816, 826 (Mich. Ct. App. 2022) (quoting *West American Ins. Co. v. Meridan Mut. Ins. Co.*, 583 N.W.2d 548, 550 (Mich. Ct. App. 1998)). In Michigan, "[t]he general rule is that zoning authorities will not be estopped from enforcing their ordinance absent exceptional circumstances." *Williamston Twp. v. Sandalwood Ranch, LLC*, 927 N.W.2d 262, 270 (Mich. Ct. App. 2018) (citation omitted). A township can be estopped from enforcing a zoning ordinance when (1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably

16

relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts. *Lyon Charter Twp. v. Petty*, 896 N.W.2d 477, 482 (Mich. Ct. App. 2016) (citation omitted).

Plaintiff has not demonstrated that it can pursue a cause of action for estoppel. Michigan does not recognize any such claim. Defendants do not seek to enforce any ordinance in this lawsuit. And Plaintiff no longer seeks to prevent Defendants from enforcing the zoning ordinance through injunctive relief (ECF No. 72 at 3 PageID.2603). Plaintiff seeks only damages (*id.* at 3-4 PageID.2603-04). As invoked and described in the complaint and in its brief (ECF No. 55), Plaintiff reliance on estoppel is moot. Plaintiff has not identified any fact (or the denial of a fact) that Defendants should be estopped from asserting.

C.

Plaintiff contends it can maintain several of its claims without first establishing vested rights in the land-use permit (ECF No. 55 at 28-31 PageID.1747-50).

1. Count I

For a procedural due process like the cause of action Plaintiff brings in Count I, a party must show (1) it had a life, liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment, (2) it was deprived of that protected interest within the meaning of the due process clause, and (3) the state did not afford adequate process before depriving the party of its protected interest. *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010).

Plaintiff contends that its situation is similar to that in *Nasierowski Brothers Investment Company v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991). The outcome in that opinion required the circuit court to find that the plaintiff had a vested right in a zoning classification. *Id.* at 896-97. The Sixth Circuit found that the property right in that case had "securely vested by Nasierowski's engagement in substantial acts taken in reliance, to his detriment, on representations from and affirmative actions by the City." *Id.* at 897.

The opinion in *Nasierowski* does not support finding vested rights or the creation of any other property right for the purpose of a due process claim. The unique facts in that case explain its anomalous outcome. Concerning vested rights, the district court found that the plaintiff had not obtained a building permit and had not commenced construction before the area was rezoned. *Nasierowski*, 949 F.2d at 893 and 897. Nevertheless, the Sixth Circuit found a basis for vested rights. The court noted "[f]irst, and perhaps foremost," that the plaintiff "expressly conditioned the purchase of the property on his obtaining a favorable zoning opinion from the City." *Id.* The Sixth Circuit concluded that acquisition of the land under these circumstances was a "*substantial* act." *Id.* (italics in original). No similar facts are present here. In addition, the plaintiff had "expended considerable money and effort" working with the City. *Id.* Following a public zoning meeting, the city council convened a closed-door session during which a council member who lived near the plaintiff's property offered an amendment to the zoning ordinance to rezone a narrow strip of land which "conveniently encompassed [the plaintiff's] property." *Id.* at 892. The amendment, which the council approved, prevented the plaintiff from using the property as he intended. No similar nefariousness occurred here. When the underlying facts in a lawsuit differ, the Sixth

18

Circuit has declined to apply the holding in *Nasierowski*. *See Seguin v. City of Sterling Heights*, 968 F.2d 584, 591 (6th Cir. 1992).

### 2. Counts II, V and VI

Plaintiff contends Count II and Count V contain facial challenges to Section 28. Plaintiff describes Count 6 as a damages claim that arises because Section 28 is invalid under state law.

Plaintiff cannot bring facial challenges to Section 28 as part of this lawsuit. Plaintiff filed a previous lawsuit in the state courts that included facial challenges to Section 28. Defendants filed a motion for summary judgment on the basis of res judicata and collateral estoppel (ECF No. 51). The Court granted that motion in part and dismissed any facial challenges to Section 28 brought as part of this lawsuit (ECF No. 76).

Plaintiff must have a protected property interest to succeed on Counts II, V and VI. Plaintiff's substantive due process claim in Count II requires it to show the deprivation of a fundamental right or liberty. *See Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019). In the context of a zoning dispute, a substantive due process claim requires the claimant to show that it had a constitutionally protected liberty or property interest. *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). In Count V, Plaintiff pleads a deprivation of due process, which requires a property interest. And, in Count VI, Plaintiff pleads a takings claim under the Fifth Amendment, which also requires the claimant to show that the government took property and did not provide just compensation. *See Horne v. Dept. of Agriculture*, 569 U.S. 513, 525-26 (2013). Plaintiff's brief addresses standing to bring a claim and does not address the elements of the causes of action. For Counts II and V, Plaintiff

has not identified what property interest it had if it did not acquire a vested interest in the permit. For Count VI, Plaintiff has not indicated what property was taken if it did not acquire a vested interest in the permit.

IV.

Plaintiff 326 Land Company did not have vested rights in a nonconforming building on November 18, 2021, which Traverse City issued a stop-work order concerning a land-use permit. The only work completed on the site in reliance on the County's building permit was the excavation of holes for some of the pile caps. That excavation did not make the nonconforming use apparent. That excavation could be used for a conforming use. When considered in context of the entire project, the excavation falls short of substantial construction. Plaintiff has not established that it can pursue its causes of action without vested rights. Accordingly, the Court grants Defendant's motion for summary judgment and dismisses Counts I, II, IV, V, and VI. The Court also denies Plaintiff's motion for summary judgment on Counts I and IV.

ORDER

For the reasons set forth in the accompanying Opinion, the Court **GRANTS** Defendants' motion for summary judgment on Counts I, II, IV, V, and VI (ECF No. 50). The Court **DENIES** Plaintiff's motion for summary judgment on Counts I and IV (ECF No. 54). **IT IS SO ORDERED.**

Date:   April 9, 2025                                             /s/  Paul L. Maloney
                                                                          Paul L. Maloney
                                                                          United States District Judge